# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED

NOV 19 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

CR 19 0621 

AHMAD ABOUAMMO;
ALI ALZABARAH; and
AHMED ALMUTAIRI,
a/k/a Ahmed Aljbreen

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General; and
18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy

A true bill.   True Bill

_____
Foreman

Filed in open court this ___19___ day of
___November 2019___

_____
Clerk
SALLIE KIM
United States Magistrate Judge

Bail, $ _____

Abouammo - no process

Alzabarah + Almutairi - no bail arrest warrant

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General; and 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 18 U.S.C. § 951– 10 yrs prison, $640,000 fine, 3 yrs supervised release, $100 special assessment; 18 U.S.C. § 1519 – 20 yrs prison, $250,000 fine, 3 yrs supervised release, $100 special assessment

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
NOV 19 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**DEFENDANT - U.S**
▶ AHMAD ABOUAMMO

DISTRICT COURT NUMBER
CR 19 0621 EMC

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

3:19-71824

Name and Office of Person Furnishing Information on this form   DAVID L. ANDERSON
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Colin Sampson, AUSA

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction   } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☒ No   } If "Yes" give date filed _____

DATE OF ARREST ▶  Month/Day/Year _____
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year _____

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount: _____
If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**FILED**
NOV 19 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 18 U.S.C. § 951– 10 yrs prison, $250,000 fine, 3 yrs supervised release, $100 special assessment

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**DEFENDANT - U.S**

▶ ALI ALZABARAH

EMC

DISTRICT COURT NUMBER
CR 19 0621

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: DAVID L. ANDERSON
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Colin Sampson, AUSA

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction  } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☒ No    If "Yes" give date filed _____

DATE OF ARREST ▶  Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

| BY: | ☐ COMPLAINT | ☐ INFORMATION | ☒ INDICTMENT | ☐ SUPERSEDING |

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**OFFENSE CHARGED**

18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General; and

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 18 U.S.C. § 951– 10 yrs prison, $250,000 fine, 3 yrs supervised release, $100 special assessment

**DEFENDANT - U.S**

▶ AHMED ALMUTAIRI, a/k/a Ahmed Aljbreen

DISTRICT COURT NUMBER
CR 19 0621

EMC

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District) ____

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction    } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution ____

Has detainer been filed?  ☐ Yes  ☒ No  } If "Yes" give date filed ____

DATE OF ARREST ▶ Month/Day/Year ____
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year ____

☐ This report amends AO 257 previously submitted

FILED
NOV 19 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court, give name of court ____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District ____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO. ____

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO. ____

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ____

Name and Office of Person Furnishing Information on this form    DAVID L. ANDERSON
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Colin Sampson, AUSA

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: ____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address: ____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: ____    Before Judge: ____

Comments:

DAVID L. ANDERSON (CABN 149604)
United States Attorney

FILED

NOV 19 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19 0621 EMC |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General; and 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy |
| AHMAD ABOUAMMO; ALI ALZABARAH; and AHMED ALMUTAIRI, a/k/a Ahmed Aljbreen, | |
| Defendants. | SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment, with all dates and times being approximate:

1. Defendant ALI ALZABARAH is a citizen of Saudi Arabia and resided in San Bruno, California, in the Northern District of California, from at least August 12, 2013, until December 3, 2015.

2. Defendant AHMAD ABOUAMMO is a United States and Lebanese dual citizen and resided in Walnut Creek, California, in the Northern District of California, from at least November 4,

2013, until May 22, 2015, and thereafter resided in Seattle, Washington.

3.  Defendant AHMED ALMUTAIRI, also known as Ahmed Aljbreen (ALMUTAIRI), is a citizen of Saudi Arabia. ALMUTAIRI was present in the United States of America between approximately August 21, 2014, until approximately May 24, 2015.

4.  Twitter, Inc. (Twitter) is a company headquartered in San Francisco, California, and owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Users of Twitter, including private individuals, journalists, and public figures, create user accounts that can be used to communicate and share information instantly through "Tweets" (i.e., 140-character messages prior to 2017) to the public at large, "tweets" to a subset of Twitter users (e.g., to the public or to certain users that "follow" a user), "retweets" by one user of another user, or direct messages (DM) that are typically visible only to the sender and recipient. Certain Twitter accounts of public interest, including official accounts for government posts and celebrities, can be "verified" with a blue check mark, which is issued by Twitter.

5.  Twitter operates its service in many languages, including English and Arabic. Many Twitter users live outside of the United States, including in Saudi Arabia. Many users are of Saudi nationality or descent, some of whom live outside of Saudi Arabia, including in the United States.

6.  The Kingdom of Saudi Arabia (KSA) is a monarchy governed by the King and his Royal Court, which is akin to a cabinet or executive office. Members of the King's Royal Family hold most of the country's governmental posts.

7.  From a time unknown to the Grand Jury but no later than May 2014, to the present, Foreign Official-1, a citizen of KSA, was the Secretary General of an organization identified here as Organization-1, founded by a member of the Saudi Royal Family (Saudi Royal Family Member-1). From a time unknown to the Grand Jury but no later than May 2015, Foreign Official-1 was the head of the private office of Saudi Royal Family Member-1.

8.  From at least May 2014 to the present, ALMUTAIRI has controlled a Saudi social media marketing company that performed work for Organization-1 and members of the Saudi Royal Family, including Royal Family Member-1.

INDICTMENT 2

9. Title 18, United States Code, Section 2702, provides that service providers of electronic communications and remote computing services, such as Twitter, may voluntarily disclose user data to a governmental entity, if the service provider, in good faith, believes than an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of data relating to the emergency. These disclosures are referred to as "emergency disclosure requests."

10. ABOUAMMO was an employee of Twitter from on or about November 4, 2013, to May 22, 2015. ABOUAMMO was a Media Partnerships Manager responsible for the Middle East and North Africa (MENA) region at Twitter. As a Media Partnerships Manager, ABOUAMMO was involved in providing assistance for notable accounts, including accounts of public interest or belonging to brands, journalists, and celebrities in the MENA region, with content and Twitter strategy, and with sharing best practices.

11. ALZABARAH was an employee of Twitter from on or about August 12, 2013, to on or about December 4, 2015. While employed at Twitter, ALZABARAH was a Site Reliability Engineer whose responsibility was maintaining Twitter's hardware and software to ensure uninterrupted service.

12. Twitter employees, including ABOUAMMO and ALZABARAH, agreed to abide by the Twitter "Playbook," which outlines the policies Twitter employees must obey as part of their employment. Twitter's 2013 employment contracts with ABOUAMMO and ALZABARAH prohibited them from engaging in outside employment or consulting "or any other business activity that would create a conflict of interest with the Company." In the 2013 version of Twitter's Employee Invention Assignment and Confidentiality Agreements, ABOUAMMO and ALZABARAH each affirmed "a relationship of confidence and trust" between themselves and Twitter "with respect to any information of a confidential or secret nature that may be disclosed to [them] by the Company or a third party that relates to the business of the Company." The Employee Invention Assignment and Confidentiality Agreement further required ABOUAMMO and ALZABARAH to "keep and hold all such Proprietary Information in strict confidence and trust," and defined "Proprietary Information" to include Twitter's "customer lists and data." In executing the agreements, ABOUAMMO and ALZABARAH affirmed that they would "not use or disclose any Proprietary Information without the

INDICTMENT                                                           3

prior written consent of the Company" or "use[] any Company information for any other business or employment."

13. Twitter's "Playbook Acknowledgement," which ABOUAMMO and ALZABARAH each signed during 2013, stated that each would read, understand, and abide by Twitter's policies, including the Security Handbook, which defined user data as confidential data and prohibited sharing confidential data with third parties without approval.

14. Twitter's "Gift Policy" during ABOUAMMO's and ALZABARAH's employment stated: "[f]or gifts exceeding $100 in value, bring the gift to the attention of both your manager and VP of HR before returning to sender."

15. ABOUAMMO and ALZABARAH had access to proprietary and confidential Twitter information, including information about Twitter users, including the user-provided names and birthdates, device identifiers, tweets, relationships, phone number, internet protocol ("IP") addresses and session IP history, among other things.

16. Neither ABOUAMMO's nor ALZABARAH's job duties included a need to access a Twitter user's private information, and doing so was a reportable violation of the Twitter Playbook policies regarding handling and protecting user data.

17. Neither ABOUAMMO nor ALZABARAH had authority from Twitter to receive, access, or produce user information pursuant to any governmental emergency disclosure request.

18. ABOUAMMO, ALZABARAH, and ALMUTAIRI have never provided notice to the Attorney General that they were acting as agents of a foreign government.

## THE SCHEME

19. ABOUAMMO and ALZABARAH fraudulently used their positions and access to information at Twitter to provide Foreign Official-1 and others related to and working for KSA and the Saudi Royal Family with nonpublic information held in the accounts of Twitter users. Using ALMUTAIRI as an intermediary, Foreign Official-1 provided ABOUAMMO and ALZABARAH with gifts, cash payments, and promises of future employment in exchange for valuable property,

INDICTMENT                                    4

including nonpublic information about Twitter users, that ABOUAMMO and ALZABARAH obtained fraudulently and provided to Foreign Official-1 and others.

20. ABOUAMMO and ALZABARAH received from Foreign Official-1 and others the names of Twitter accounts of interest to Foreign Official-1, the Saudi Arabian Royal Family, and others.

21. Using their access privileges as employees of Twitter, ABOUAMMO and ALZABARAH, beyond the scope of their job duties, accessed nonpublic account information of Twitter users who were of interest to Foreign Official-1, the Saudi Arabian Royal Family, and others in the government of KSA. Such nonpublic information included email addresses, telephone numbers, and dates of birth, and internet IP addresses, among other things. ABOUAMMO and ALZABARAH communicated such nonpublic account information to Foreign Official-1 and others in the government of KSA.

22. In exchange for accessing nonpublic account information of Twitter users, outside the scope of their job duties, and for communicating such nonpublic account information to Foreign Official-1, Foreign Official-1 rewarded ALZABARAH and ABOUAMMO including with compensation such as gifts, cash payments, and promises of future employment.

23. ALMUTAIRI acted as a go-between between Foreign Official-1 and ABOUAMMO and ALZABARAH, representing KSA's interests with respect to Twitter user information, and met with ABOUAMMO and ALZABARAH in person at the request of and to further the goals of Foreign Official-1 and the Saudi Royal Family.

24. The scheme involved the following acts, among others, which were committed or caused to be committed, in the Northern District of California and elsewhere:

    a. On or about November 15, 2014, ALMUTAIRI sent an email to ABOUAMMO requesting an "urgent meeting" in San Francisco to discuss their "mutual interest." On or about November 20, 2014, ALMUTAIRI and ABOUAMMO met in person in San Francisco, California, near the Twitter headquarters.

//

INDICTMENT 5

  b. ABOUAMMO and Foreign Official-1 communicated by telephone and by email in late November and early December 2014 to coordinate an in-person meeting in London, United Kingdom. Foreign Official-1 traveled from Paris, France to London and met with ABOUAMMO. During that meeting on or about December 5, 2014, Foreign Official-1 gave ABOUAMMO a valuable watch worth at least $20,000. ABOUAMMO did not report the receipt of the watch to Twitter.

  c. Beginning on or about December 12, 2014, ABOUAMMO began accessing without authorization through Twitter's computer system the user data of Twitter User-1, which was an account that had posted critical information about the Saudi Royal Family and Saudi Royal Family Member-1. Among other account information, ABOUAMMO accessed the email address and telephone number associated with Twitter User-1's account. ABOUAMMO accessed the account on or about December 12, 2014, January 5, 2015, January 27, 2015, February 4, 2015, February 7, 2015, February 18, 2015, and February 24, 2015.

  d. Foreign Official-1 communicated with ABOUAMMO by telephone requesting that Twitter User-1's account be removed from Twitter and requesting private user account information. On January 17, 2015, Foreign Official-1 sent an email to ABOUAMMO's Twitter employee email account with an attachment concerning Twitter User-1 and a brief message that stated, "as we discussed in london."

  e. On February 5, 2015, Foreign Official-1 sent an email to ABOUAMMO's Twitter employee email account with an attachment concerning a user identified as Twitter User-2 who Foreign Official-1 asserted was impersonating a member of the Saudi Royal Family. On February 7, 2015, ABOUAMMO accessed the account information, including the email address, of Twitter User-2.

  f. On February 13, 2015, while ABOUAMMO worked for Twitter, Foreign Official-1 deposited $100,000 into a recently-opened account in Lebanon in the name of ABOUAMMO's relative. ABOUAMMO had online access to this account and later received wire transfers from the account in Lebanon.

INDICTMENT                                      6

g.     After ABOUAMMO resigned from Twitter on or about May 22, 2015, Foreign Official-1 asked ABOUAMMO to, among other things, refer requests to Twitter related to accounts of Saudi Arabian government ministers as well as complaints related to certain accounts critical of or impersonating individuals connected to the government of Saudi Arabia or the Saudi Arabian Royal Family.  Between May 22, 2015, when ABOUAMMO left Twitter, and January 25, 2016, Foreign Official-1 paid ABOUAMMO at least $200,000.

h.     Although Twitter employees requested that ABOUAMMO direct requests from Saudi Arabian government officials directly to Twitter and not through ABOUAMMO, ABOUAMMO continued attempting to contact Twitter employees with Foreign Official-1's requests until at least March 1, 2016.

i.     On or before February 16, 2015, and prior to ABOUAMMO's resignation from Twitter, ABOUAMMO facilitated an introduction between ALZABARAH and ALMUTAIRI. ALMUTAIRI maintained contact with ALZABARAH after ABOUAMMO resigned from Twitter.

j.     During mid-May 2015, Foreign Official-1 directed ALZABARAH to travel from the Northern District of California to Fairfax, Virginia.  On May 14, 2015, while Saudi Royal Family Member-1, Foreign Official-1, and others were visiting Washington, DC on an official delegation from the Kingdom of Saudi Arabia, ALMUTAIRI and ALZABARAH met at the residence of an employee of the Saudi Arabian Embassy in Fairfax, Virginia.  Later on the same date, ALZABARAH returned to the Northern District of California.

k.     In May 2015, after ALZABARAH returned to San Francisco, California, he began to access nonpublic account information for numerous Twitter accounts and communicated such nonpublic account information about certain Twitter users to Foreign Official-1.

l.     From May 21, 2015, through November 18, 2015, ALZABARAH accessed without authorization through Twitter's computer system certain nonpublic account details about dozens of Twitter users, including Twitter accounts that had posted critical or

INDICTMENT                                          7

embarrassing information about the government of Saudi Arabia and Saudi Royal Family Member-1.

m.  On May 29, 2015, Foreign Official-1 and ALZABARAH exchanged three telephone calls and ALZABARAH accessed two Twitter accounts over the course of approximately one hour. The same day, the Kingdom of Saudi Arabia submitted emergency disclosure requests to Twitter for those same two Twitter accounts.

n.  During July 2015, while ALZABARAH was on personal leave from Twitter, ALZABARAH traveled to Saudi Arabia. While in Saudi Arabia, ALZABARAH accessed nonpublic information of hundreds of Twitter users' accounts using his Twitter credentials, including access of nonpublic information of Twitter users on July 29, 2015, a date that ALZABARAH connected his Twitter laptop to ALMUTAIRI's company's wireless local area network in Saudi Arabia.

o.  ALZABARAH accessed Twitter User-1's account information on or about May 21, 2015, June 14, 2015, July 5, 2015, August 6, 2015, August 7, 2015, August 20, 2015, September 27, 2015, September 28, 2015, and September 30, 2015. On September 28, 2015, ALZABARAH repeatedly accessed Twitter User-1's account information, the same date the account holder reported that his account had been hacked or compromised.

p.  On December 2, 2015, Twitter management confronted ALZABARAH about his unauthorized access of Twitter users' accounts and placed him on administrative leave. ALZABARAH attempted to contact ALMUTAIRI, and then contacted Foreign Official-1, who contacted an employee of the Saudi Arabian Consulate in Los Angeles, California to coordinate ALZABARAH's departure from the United States.

q.  On December 3, 2015, ALZABARAH flew to Saudi Arabia and submitted a resignation letter to Twitter by email.

r.  By no later than January 2016, ALZABARAH had obtained employment in Saudi Arabia with Organization-1 and was in email contact with ALMUTAIRI, Foreign Official-1 and others regarding social media influence projects on behalf of KSA, Foreign

Official-1, and the Saudi Royal Family.

COUNT ONE: (18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General)

25. Paragraphs 1 through 24 are realleged as if fully set forth herein.

26. From on or about December 12, 2014, and continuing until on or about March 1, 2016, in the Northern District of California and elsewhere, the defendant,

AHMAD ABOUAMMO,

did knowingly, without notifying the Attorney General as required by law, act as an agent of a foreign principal, to wit, the government of KSA and the Saudi Royal Family.

All in violation of Title 18, United States Code, Section 951.

COUNT TWO: (18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General)

27. Paragraphs 1 through 24 are realleged as if fully set forth herein.

28. From at least on or about November 20, 2014, and continuing until at least on or about May 24, 2015, in the Northern District of California and elsewhere, the defendant,

AHMED ALMUTAIRI,

did knowingly, without notifying the Attorney General as required by law, act as an agent of a foreign principal, to wit, the government of KSA and the Saudi Royal Family.

All in violation of Title 18, United States Code, Section 951.

COUNT THREE: (18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General)

29. Paragraphs 1 through 24 are realleged as if fully set forth herein.

30. From on or about May 21, 2015, and continuing until on or about December 3, 2015, in the Northern District of California and elsewhere, the defendant,

ALI ALZABARAH,

did knowingly, without notifying the Attorney General as required by law, act as an agent of a foreign principal, to wit, the government of KSA and the Saudi Royal Family.

1  All in violation of Title 18, United States Code, Section 951.

2  COUNT FOUR: (18 U.S.C. § 1519 – Falsification of Records to Obstruct Investigation)

3  31. Paragraphs 1 through 24 are realleged as if fully set forth herein.

4  32. On October 20, 2018, in the Northern District of California and elsewhere, the defendant,

AHMAD ABOUAMMO,

unlawfully, intentionally, and knowingly did alter, destroy, mutilate, conceal, and falsify a record or document, namely creating and providing by email to the Federal Bureau of Investigation a fabricated, false, and backdated invoice for $100,000 for consulting services to Foreign Official-1, from CYRCL, LLC, defendant's sole proprietorship, with the intent to impede, obstruct and influence an actual and contemplated investigation and the proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the Federal Bureau of Investigation.

All in violation of Title 18, United States Code, Section 1519.

SENTENCING ALLEGATION:

33. With respect to Count One of the Indictment, for the purposes of determining the maximum alternative fine, pursuant to Title 18, United States Code, Section 3571(d), the defendant,

AHMAD ABOUAMMO,

derived gross gains of approximately $320,000.

DATED:

11/19/19

A TRUE BILL.

_____
FOREPERSON

DAVID L. ANDERSON
United States Attorney

_____
COLIN SAMPSON
Assistant United States Attorney
JASON B. A. McCULLOUGH
Trial Attorney, National Security Division

INDICTMENT                              10