STEVEN G. KALAR
Federal Public Defender
Northern District of California
ELLEN LEONIDA
CARMEN SMARANDOIU
Assistants Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:         Ellen_Leonida@fd.org

Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD ABOUAMMO,<br><br>Defendant. | **Case No.:** CR 19–00621 EMC<br><br>**MOTION FOR A BILL OF PARTICULARS**<br><br>**Court:**           Courtroom 5, 17th  Floor<br>**Hearing Date:**  September 30, 2020<br>**Hearing Time:**  9:00 a.m. |

TO: UNITED STATES OF AMERICA, PLAINTIFF; DAVID ANDERSON, UNITED STATES ATTORNEY; AND COLIN SAMPSOM, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on September 30, 2020 or as soon thereafter as counsel may be heard, Defendant Ahmad Abouammo, by and through undersigned counsel, will move the Court to order the government to file a bill of particulars. This motion is based upon Federal Rule of Criminal Procedure 7, the attached memorandum of points and authorities, all files and records in this case, and any further evidence and argument as may be adduced at the hearing on this motion.

Mr. Abouammo specifically asks the Court to order the government to provide a bill of

particulars specifying the following:

As to **Counts Four through Nineteen**:

a) The identity of any alleged co-conspirators and/or co-schemers "other" than those listed in the superseding indictment;

b) The alleged "property" that the alleged fraudulent scheme deprived or intended to deprive Twitter of;

c) The amount of financial loss allegedly caused or intended to be caused to Twitter from the alleged fraudulent scheme;

d) The alleged statements of material fact made or material facts allegedly concealed or omitted as part of the alleged fraudulent scheme;

As to **Counts Six through Ten and Seventeen through Nineteen**: the substance of the wire transmissions (telephone calls).

As to **Counts Twenty through Twenty-Two**: any alleged facts that, if true, would support a finding that venue is proper in the Northern District of California.

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 3

    I.    Legal standard ................................................................................................................. 3

    II.    Counts Four through Nineteen fail to charge essential facts regarding the alleged conspiracy and scheme to defraud. ............................................................................... 4

        A.    The government must disclose the identities of co-conspirators ...................... 6

        B.    The government must disclose the object of the alleged scheme to defraud 6

        C.    The government must disclose the means of the scheme to defraud ............... 7

    III.    Counts Six through Ten and Seventeen through Nineteen fail to charge crucial information regarding the alleged wire transmissions. ................................................ 8

    IV.    Count Twenty through Twenty-Two lack facts sufficient to establish venue. .............. 9

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Pinkerton v. United States*,
　328 U.S. 640 (1946) .................................................................................................................. 4

*Schmuck v. United States*,
　489 U.S. 705 (1989) .................................................................................................................. 7

*United States v. Alabed*,
　2019 WL 7842413 (N.D. Ga. Dec. 4, 2019) ............................................................................ 7

*United States v. Bortnovsky*,
　820 F.2d 572 (2d Cir. 1987) ..................................................................................................... 4

*United States v. Cecil*,
　608 F.2d 1294 (9th Cir. 1979) .................................................................................................. 3

*United States v. Chen, No. C-05-375 SI*,
　2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) ........................................................................... 4

*United States v. Davis*,
　854 F.3d 1276 (11th Cir. 2017) ................................................................................................ 8

*United States v. Feil, No. CR 09-863 JSW*,
　2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) .......................................................................... 4

*United States v. Geise*,
　597 F.2d 1170–81 (9th Cir. 1979) ............................................................................................ 3

*United States v. Inryco, Inc.*,
　642 F.2d 290 (9th Cir. 1981) .................................................................................................... 3

*United States v. Jones*,
　1986 WL 275 (S.D.N.Y. May 28, 1986) .................................................................................. 8

*United States v. King*,
　259 F.Supp.3d 1267 (W.D. Okla. 2014) ................................................................................... 9

*United States v. Lasky*,
　967 F. Supp. 749 (E.D.N.Y. 1997) ........................................................................................... 8

*United States v. Long*,
　697 F. Supp. 651 (S.D.N.Y. 1988) ....................................................................................... 8, 9

*United States v. Long*,
　706 F.2d 1044 (9th Cir. 1983) .................................................................................................. 3

*United States v. Mannino*,
　480 F. Supp. 1182 (S.D.N.Y. 1979) ...................................................................................... 5, 6

*United States v. Miller*,
　953 F.3d 1095 (9th Cir. 2020) .................................................................................................. 6

*United States v. Moran-Garcia*,
　966 F.3d 966 (9th Cir. 2020) .................................................................................................... 8

*United States v. Oakar*,
    924 F. Supp. 232 (D.D.C. 1996) .................................................................................................. 5

*United States v. Ortiz, No. 15-cr-594-RS-1*,
    2016 WL 4239370 (N. D. Cal. Aug. 11, 2016) ............................................................................ 3

*United States v. Pace*,
    314 F.3d 344 (9th Cir. 2002) ....................................................................................................... 8

*United States v. Ryland*,
    806 F.2d 941 (9th Cir. 1986) ....................................................................................................... 3

*United States v. Shipsey*,
    363 F.3d 962 (9th Cir. 2004) ....................................................................................................... 7

*United States v. Smith*,
    16 F.R.D. 372 (W.D. Mo. 1954) .................................................................................................. 3

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998) ................................................................................................... 9

*United States v. Williams*,
    113 F.R.D. 177 (M.D. Fla. 1986) ................................................................................................. 5

*United States v. Wong, No. CR 06 428 SI*,
    2007 WL 404807 (N.D. Cal. Feb. 2, 2007) .................................................................................. 4

**Statutes**

18 U.S.C. § 951 ................................................................................................................................. 1

18 U.S.C. § 1343 ...................................................................................................................... 2, 7, 10

18 U.S.C. § 1346........................................................................................................................... 2, 10

18 U.S.C. § 1349 .......................................................................................................................... 2, 10

18 U.S.C. § 1956 .......................................................................................................................... 9, 10

**Other**

Federal Rule of Criminal Procedure 7 ....................................................................................... 1, 2, 3

U.S. Const. amend. VI .................................................................................................................... 8

## INTRODUCTION

In November 2019, Ahmad Abouammo was charged in a two-count Indictment. Today, he stands charged with 21 counts, including: conspiracy to commit wire and honest services fraud; fifteen counts of wire and honest services fraud, premised on the same alleged fraudulent scheme; and three counts of money laundering regarding the alleged proceeds of the fraudulent scheme. Because Mr. Abouammo's ability to defend against the fraudulent scheme is crucial to his ability to defend against the substantive fraud counts and money laundering counts as well, the Court should order the government to provide a bill of particulars regarding the scheme. The government should also provide a bill of particulars regarding the substance of telephone calls that form the basis of multiple counts of wire fraud and honest services fraud. Finally, the government should be ordered to disclose facts that, if true, would support a finding of venue in this district for the money laundering charges.

## BACKGROUND

On November 5, 2019, a Criminal Complaint was filed against Mr. Abouammo, Ahmed Almuitari, and Ali Alzabarah. Dkt. No. 1. The complaint charged Mr. Abouammo with two offenses: acting as an agent of a foreign government without notice to the government, in violation of 18 U.S.C. § 951, beginning on or about December 12, 2014, and continuing until on or about March 12, 2015; and destruction, alteration, or falsification of records in federal investigations, in violation of 18 U.S.C. § 951, on or about October 20, 2018. *Id*. ¶¶ 3, 5. Mr. Almuitari and Mr. Alzabarah were also charged with violating 18 U.S.C. § 951. *Id*. ¶¶ 2, 4. The complaint alleged that Mr. Abouammo, while employed at Twitter, Inc., provided Twitter user information to individuals associated with the Kingdom of Saudi Arabia in exchange for gifts and cash payments. *See id*.

Two weeks later, the government filed an Indictment which mirrored the charges in the criminal complaint, but expanded significantly the scope of the § 951 charge against Mr. Abouammo. The indictment alleged that Mr. Abouammo acted as an agent of a foreign power beginning on or about December 12, 2014, and continuing until on or about March 1, 2016. *See* Dkt. No. 13 ¶¶ 25-32.

On April 7, 2020, the government filed a Superseding Information against the three defendants. Dkt. No. 42. The government voluntarily dismissed the information on July 28, 2020, Dkt. Nos. 52, 54, the same day it filed the Superseding Indictment at issue here. Dkt. No. 53.

The Superseding Indictment greatly expands the number and scope of the charges against the three defendants, and particularly Mr. Abouammo. In addition to the original charges, it charges all three defendants with conspiracy to commit wire fraud and honest services fraud in violation of 18 U.S.C. § 1349 (Count Four), fifteen counts of wire fraud and honest services fraud, and aiding and abetting, in violation of 18 U.S.C. §§ 1343, 1346, and 2 (Counts Five through Nineteen). *Id*. ¶¶ 35-38. It also charges Mr. Abouammo with three counts of money laundering (Counts Twenty through Twenty-Two), in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i). *Id*. ¶¶ 39-44. In total, the Superseding Indictment charges Mr. Abouammo with 21 counts.

The government has provided voluminous discovery in the case. As of the filing date, the government has provided over three terabytes of discovery. *See* Leonida Decl. ¶ 2.

In light of the greatly expanded scope of the Superseding Indictment and the voluminous discovery in the case, Mr. Abouammo asked the government to provide additional information that is necessary to understand the new charges, prepare a defense, and decide whether to file certain pretrial motions.[1] *See* Leonida Decl. ¶ 3; Exh. A, Letter to Government, Sept. 3, 2020. The government declined to do so. *Id*. ¶ 4; Exh. B, Letter from Government, Sept. 8, 2020. Accordingly, Mr. Abouammo timely moves for an order for a bill of particulars. *See* Fed. R. Cr. P. 7(f).

---

[1] On March 12, 2020, the government and defense counsel engaged in a reverse proffer during which the government outlined its evidence regarding the two then-pending charges: acting as the unregistered agent of a foreign government and destruction, alteration, or falsification of records in a federal investigation. The government did not offer to engage in a similar procedure in response to counsel's September 3, 2020 request for more information.

MOTION FOR A BILL OF PARTICULARS
*ABOUAMMO*, CR 19–00621 EMC

2

ARGUMENT

**I.  Legal standard**

Federal Rule of Criminal Procedure 7(f) provides that the court "may direct the filing of a bill of particulars." The bill of particulars serves three functions:

> to inform the defendant of the nature of the charges with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes.

*United States v. Geise*, 597 F.2d 1170, 1180–81 (9th Cir. 1979) (internal quotations omitted); *see also United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979) (indictment must contain "statement of the facts and circumstances that would inform the accused of the specific offenses with which they were charged"). It is "intended to supplement the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco*, Inc., 642 F.2d 290, 295 (9th Cir. 1981).

While obtaining a bill of particulars historically required a showing of good cause, the 1966 amendment to Rule 7 eliminated that requirement so as to "encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." *See* Fed. R. Crim. P. 7(f), Advisory Committee Notes to 1966 Amendment. The Advisory Committee specifically cited *United States v. Smith*, 16 F.R.D. 372, 374-75 (W.D. Mo. 1954), which referred to bills of particulars as "having grown from very small and technical beginnings into the most important instruments of justice." In the *Smith* case, a simple drug sale, the court ordered "definite specification of the time and place of commission of the overt acts complained of, and of the identity of the person or persons dealt with." *Id*.

While "[a] defendant is not entitled to know all the evidence the government intends to produce," a defendant is entitled to know "the theory of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986); *see also*, *e.g.*, *Giese*, 597 F.2d at 1181.

Whether to grant or deny a motion for a bill of particulars is "within the trial court's discretion, and is appropriate when an indictment is ambiguous such that 'a defendant requires

clarification in order to prepare a defense.'" *United States v. Ortiz*, No. 15-cr-594-RS-1, 2016 WL 4239370, at *3 (N. D. Cal. Aug. 11, 2016) (citing *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983)). In weighing a defendant's request for a bill of particulars, courts "consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054

Where, as here, the government's disclosures are especially complex and voluminous, a bill of particulars is even more vital. The "[g]overnment [does] not fulfill its obligation [of providing adequate notice of the charges] merely by providing mountains of documents to defense counsel who [a]re left unguided as to which documents would be [relevant]." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). Courts in this district have ordered bills of particulars in complex cases where similar "extremely voluminous and diverse discovery" left the defendant with little direction as to what he/she was charged with. *United States v. Wong*, No. CR 06428 SI, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (ordering a bill of particulars for a conspiracy charge where the discovery consisted of over 200,000 pages, 111,250 TIFF images, 1,250 photographs, 5,800 minutes of audio recordings, and 900 minutes of video surveillance); *see also United States v. Chen*, No. C-05-375 SI, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006); *United States v. Feil*, No. CR 09-863 JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (ordering bill of particulars in case involving multiple alleged conspiracies spanning three years and 70,000 pages of discovery).

**II.   Counts Four through Nineteen fail to charge essential facts regarding the alleged conspiracy and scheme to defraud.**

As explained above, the Superseding Indictment significantly expanded the number and scope of the charges against Mr. Abouammo. Central to the new charges is Count Four, alleging that from on or about November 20, 2014, until at least December 3, 2015, Mr. Abouammo, Mr. Alzabarah, and Mr. Almutairi conspired to commit wire fraud and honest services fraud against Twitter. Dkt. 53 ¶¶ 35-36. Counts Five through Nineteen then charge all three co-defendants with 15 substantive counts of wire/honest services fraud and allege a scheme to defraud

Twitter in language that mirrors Count Four. *Id.* ¶ 38. Each of the alleged wire transmissions involves one or two of the co-defendants, but no single count charges all three of them. *See id.*

In light of the new conspiracy charge, the government is likely to seek, at trial, a so-called *Pinkerton*[2] jury instruction and/or a co-schemer vicarious liability jury instruction in connection with the 15 counts of wire/honest services fraud charged in Counts Five through Nineteen. A *Pinkerton* instruction allows the jury to find a co-conspirator guilty of offenses committed by other co-conspirators, so long as the offense was within the scope of the conspiracy and was reasonably foreseeable. *See* 9th Cir. Model Jury Instr. 8.25. Similarly, a co-schemer liability instruction allows the jury to find a co-schemer guilty based on "other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did," so long as the actions are "reasonably foresee[able]." 9th Cir. Model Jury Instr. 8.122.

Without doubt, *Pinkerton* and co-schemer vicarious liability are among the most powerful tools in a prosecutor's toolbox. Consequently, Mr. Abouammo must have the fullest opportunity to prepare a defense against the charges of conspiracy and scheme to defraud, without the danger of surprise at trial. His ability to do so bears not only on the conspiracy charge and the two wire/honest services fraud counts in which he is named (Counts Five and Eleven), but—because of *Pinkerton* and co-schemer vicarious liability—it is also crucial to his ability to defend against the 13 other wire/honest services fraud counts committed by his alleged co-conspirators. Furthermore, Mr. Abouammo's ability to defend against the conspiracy and the wire/honest services fraud counts is crucial to his ability to defend against Counts Twenty through Twenty-Two, money laundering, as those counts allege that Mr. Abouammo laundered funds representing the proceeds of the alleged conspiracy and fraudulent scheme. Dkt. 53 ¶¶ 39-44.

Despite the centrality of the conspiracy and the fraudulent scheme to the government's case and, conversely, Mr. Abouammo's defense, the Superseding Indictment omits important

---

[2] *Pinkerton v. United States*, 328 U.S. 640 (1946).

MOTION FOR A BILL OF PARTICULARS
*ABOUAMMO*, CR 19–00621 EMC

5

information about the alleged conspiracy/fraudulent scheme: who else was part of it; what exactly was the scheme; and what exactly were the means of the scheme.

### A. The government must disclose the identities of co-conspirators

First, the indictment charges that "others" were involved in the conspiracy/ scheme. Dkt. 53 ¶¶ 36, 38. The government should identify these other co-conspirators, so Mr. Abouammo can conduct investigation and request relevant discovery. Indeed, courts order routinely that the government disclose the identities of unnamed co-conspirators, when known to the government. *See*, *e.g.*, *United States v. Oakar*, 924 F. Supp. 232, 246 (D.D.C. 1996), *aff'd in part, rev'd in part*, 111 F.3d 146 (D.C. Cir. 1997); *United States v. Williams*, 113 F.R.D. 177, 179 (M.D. Fla. 1986); *United States v. Mannino*, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979). The Court should do the same here.

### B. The government must disclose the object of the alleged scheme to defraud

Second, the indictment charges a conspiracy/scheme, inter alia, "to defraud Twitter, and to obtain property of Twitter." Dkt. 53 ¶¶ 36, 38. Counts Four through Nineteen do *not* identify the "property." Elsewhere, the Superseding Indictment claims that "the scheme deprived Twitter of . . . its money and property by enabling individuals and entities outside Twitter . . . access to nonpublic account information of Twitter users . . . ." *Id.* ¶ 28. This "nonpublic information" allegedly "included email addresses, telephone numbers, dates of birth, and internet IP addresses, *among other things*." *Id.* ¶ 23 (emphasis added).

Recently, the Ninth Circuit overruled its precedent and clarified that wire fraud requires, inter alia, that the defendants act with "the intent to deceive *and* cheat — in other words, to deprive the victim of money or property by means of deception." *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (emphasis added). But the Superseding Indictment fails to specify any actual or intended financial loss to Twitter from the alleged fraudulent scheme. As noted above, Counts Four through Nineteen also do *not* identify any "property" that Twitter was deprived of. The government should therefore be ordered to confirm whether its theory regarding the fraudulent scheme rests on access to the "nonpublic information" mentioned in

paragraphs 23 and 28 of the Superseding Indictment, and/or to list any other alleged "property," including any other "nonpublic information" not listed in paragraph 23 of indictment, that the co-defendants allegedly deprived Twitter of. Without this information, Mr. Abouammo cannot investigate and cannot prepare a defense to the whether the co-defendants' alleged actions did or could have caused financial loss to Twitter, as wire fraud requires.

### C. The government must disclose the means of the scheme to defraud

Third, the indictment charges that the three co-defendants conspired "to defraud Twitter, and to obtain property of Twitter by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose . . . ." Dkt. 53 ¶ 36; *see also id.* ¶ 38. The alleged statements made or facts omitted as part of the scheme must be material; that is, "they had a natural tendency to influence, or were capable of influencing," Twitter "to part with money or property." *See* 9th Cir. Model Jury Instr. 8.124. Nonetheless, Counts Four through Nineteen fail to identify any allegedly material statements to Twitter by any of the co-defendants nor do those counts identify any allegedly material fact that any co-defendant failed to disclose. Because without that information, Mr. Abouammo does not know where to focus his investigation or his defense, the government should be ordered to disclose it. *See United States v. Alabed*, 2019 WL 7842413, at *4 (N.D. Ga. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 114415 (N.D. Ga. Jan. 9, 2020) (citing cases and holding that "generally, a defendant facing charges of fraud is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment" and explaining that "[t]he Government's obligation, after all, is not just to hand over reams of voluminous discovery and ask the Defendants to determine for themselves what are the statements that the Government considers to be false. The Defendants are entitled to better particularization of those false statements in the instrument charging them with fraud, or in a bill of particulars.").

The Superseding Indictment, in short, fails to give sufficient notice of the government's theory regarding the crux of its case against Mr. Abouammo—the alleged conspiracy and

fraudulent scheme – and, therefore, impedes his ability to investigate and prepare his defense at trial. The Court should therefore order the government to provide the requested information.

### III. Counts Six through Ten and Seventeen through Nineteen fail to charge crucial information regarding the alleged wire transmissions.

Wire fraud has three elements: (1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive and defraud. *See* 18 U.S.C. § 1343; *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004), *overruled in part by Miller*, 953 F.3d at 1102-03. Each use of the wires constitutes a separate violation of the wire fraud statute, *id.*, allowing the government, as it did here, to charge multiple counts of wire fraud based on the same alleged scheme.

Not any wire transmission suffices. The wire transmission must be "in furtherance" of the scheme; that is, it must have been used "to carry out or attempt to carry out an essential part of the scheme." 9th Cir. Model Jury Instr. 8.124; *see also Schmuck v. United States*, 489 U.S. 705, 715 (1989) (the wire transmission must be "part of the execution of the scheme as conceived by the perpetrator at the time.").

Despite this clearly established law, the Superseding Indictment fails to provide any relevant information about the wire transmissions underlying several wire fraud counts. Thus, Counts Six through Ten and Seventeen through Nineteen allege telephone calls between Mr. Alzabarah and Foreign Official-1 at various times in 2015. Dkt. 53 ¶ 53. But the counts do not set forth the substance of those calls, nor any other information that might allow Mr. Abouammo to understand the government's theory regarding the role of the calls in the alleged scheme to defraud. Without that information, Mr. Abouammo cannot adequately prepare a defense to the allegation that the calls were in furtherance of the alleged scheme. Therefore, the Court should order the government to disclose the substance of the calls. *See United States v. Jones*, 1986 WL 275, at *3-4 (S.D.N.Y. May 28, 1986) (motion for a bill of particulars granted as to wire fraud and securities fraud counts alleging the use of telephone calls; "direct[ing] the Government to provide defendants promptly with a tape recording of that telephone call, if available, or a summary of the substance of that communication if no tape recording exists.");

*cf. United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (motion for a bill of particulars regarding obstruction of justice and witness tampering counts properly denied where indictment identified the specifics and substance of defendant's calls); *United States v. Lasky*, 967 F. Supp. 749, 756 (E.D.N.Y. 1997) (denying a bill of particulars as to mail fraud counts that "list[ed] the approximate date of mailing, from and to whom the mail was directed and the content of such mail.").

### IV. Count Twenty through Twenty-Two lack facts sufficient to establish venue.

The Court should further order the government to provide sufficient facts to establish that venue for Counts Twenty through Twenty-Two is proper in this district.

A defendant has a constitutional right to be tried in the district where the crime was committed. *See* U.S. Const. amend. VI; *see also* Fed. R. Cr. P. 18 (same). Venue must be proper with respect to each count. *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). Although venue is not an element of the offense, the government bears the burden of proving venue at trial by a preponderance of the evidence. *United States v. Moran-Garcia*, 966 F.3d 966, 969 (9th Cir. 2020). At the pretrial stage, however, "it suffices for the government to allege with specificity that the charged acts support venue in this district." *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988). Accordingly, "if the indictment is not sufficiently specific on its face, the government may remedy the inadequacy by providing a sworn bill of particulars." *Id*. Relatedly, "the failure to adequately allege the basis for venue generally should be addressed in the first instance not by dismissing the indictment but through a bill of particulars." *United States v. Trie*, 21 F. Supp. 2d 7, 17 (D.D.C. 1998).

Counts Twenty through Twenty-Two charge money laundering under 18 U.S.C. § 1956(a)(2)(B)(i). For substantive money laundering counts, venue lies in

> (A) any district in which the financial or monetary transaction is conducted; or
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

18 U.S.C.A. § 1956(i)(1). "[A] transfer of funds from one place to another, by wire or any other means," is "a single, continuing transaction," and "[a]ny person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place." *Id*. § 1956(i)(3).

Critically, the venue of the alleged underlying criminal activity does not, by itself, establish venue for money laundering charges regarding proceeds of that criminal activity: the two are separate offenses. *See United States v. King*, 259 F.Supp.3d 1267, 1283, 1286-87 (W.D. Okla. 2014). Rather, the venue of the alleged underlying criminal activity is proper for substantive money laundering charges only if it is also the venue where the financial transaction is conducted, 18 U.S.C.A. § 1956(i)(1)(A), or "*if* 'the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.'" *King*, 259 F.Supp.3d at 1284 (quoting 18 U.S.C. § 1956(i)(1)(B); emphasis in original). In other words,

> [V]enue under § 1956(i)(1)(B) depends on the answers to two questions: (1) Were the tainted proceeds transferred from the venue district (the sending district) to the district where the laundering transaction was conducted (the receiving district)? (2) Did the defendant participate in the transfer of the laundered proceeds from the sending district to the receiving district?

*Id*.

Where an indictment fails to allege sufficient facts that, if true, would show that venue for money laundering charges is proper in the filing district under either provision of § 1956(i)(1), a bill of particulars is appropriate. *See id*. at 1285 n.17 ("The purpose of the order for Bill of Particulars No. 1 was to require the government to aver facts which, if proven at trial, would suffice to establish venue. This is an appropriate use of a bill of particulars where there is a serious question as to venue." (citing cases)); *id*. at 1276-77 (government, which relied on § 1956(i)(1)(B) for venue purposes, was ordered to provide, for each money laundering count and each defendant, five categories of information, including "how and when [the money] was transferred from the Western District of Oklahoma to the district where the financial or monetary transaction was conducted" and "how and when the defendant [ ] participated in the

transfer of the [money] from the Western District of Oklahoma to the district where the financial or monetary transaction was conducted. If the government does not contend that [the defendant] directly participated in one or more identifiable transactions . . . by which that sum was transferred from the Western District of Oklahoma to the district where the financial or monetary transaction was conducted, the government shall so state").

The three money laundering counts all allege that, on three different dates, Mr. Abouammo transferred funds "from a Bank Audi account in Beirut, Lebanon into an account in the United States controlled by [him]," which funds are alleged to be "the proceeds of a specified unlawful activity, that is, wire fraud, honest services fraud, and conspiracy, in violation of 18 U.S.C. §§ 1343, 1346 and 1349...." Dkt. 53 ¶¶ 40, 42, 44. On their face, these allegations are patently insufficient to establish venue in this district.

Assuming that "the specified unlawful activity" is the conspiracy and fraud charges alleged in Counts Four through Nineteen, which are alleged to have occurred in this district, the indictment does not allege sufficient facts that, if true, would establish that *the alleged transfers* were conducted in this district. *See* 18 U.S.C.A. § 1956(i)(1)(A). Most glaring, the indictment does not allege that the funds were transferred into a bank account in this district, but only "an account in the United States." Nor does it allege any other facts that might establish venue under § 1956(i)(1)(A). Similarly, the indictment does not allege that Mr. Abouammo first transferred the funds from this district to the Bank Audi account in Beirut, Lebanon, and then conducted the laundering transaction outside the district, as would be required for venue under § 1956(i)(1)(B).

Because, on its face, the indictment fails to allege facts that, if proven at trial, would establish venue in this district, the Court should order the government to provide any facts that upon which it relies to establish venue in this district as to Counts Twenty through Twenty-Two.

MOTION FOR A BILL OF PARTICULARS
*ABOUAMMO*, CR 19–00621 EMC

11

## CONCLUSION

For the aforementioned reasons, Mr. Abouammo respectfully requests that the Court order the government to file a bill of particulars.

Dated:   September 16, 2020              Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

          /S
ELLEN LEONIDA
Assistant Federal Public Defender

MOTION FOR A BILL OF PARTICULARS
*ABOUAMMO*, CR 19–00621 EMC

12