STEVEN G. KALAR
Federal Public Defender
ELLEN V. LEONIDA
Assistant Federal Public Defender
450 Golden Gate Avenue, 19th floor
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: ellen_leonida@fd.org

Counsel for Defendant,
AHMAD ABOUAMMO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>AHMAD ABOUAMMO;<br>ALI ALZABARAH; AND<br>AHMED ALMUTAIRI,<br><br>DEFENDANTS. | CR 19-621 EMC<br><br>NOTICE OF MOTION AND MOTION TO DISMISS COUNTS FOUR THROUGH TWENTY-TWO FOR FAILURE TO STATE AN OFFENSE<br><br>HONORABLE EDWARD M. CHEN<br>DATE: JAN. 6, 2021<br>TIME: 2:30 P.M. |

TO:   UNITED STATES OF AMERICA, PLAINTIFF; DAVID ANDERSON, UNITED STATES ATTORNEY; AND COLIN SAMPSON, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on January 6, 2021, or as soon thereafter as counsel may be heard, Defendant Ahmad Abouammo, by and through undersigned counsel, will and hereby does, respectfully move the Court to dismiss Counts Four through Twenty-two. This motion is made pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure on the grounds that Counts Four through Twenty-two fail to state an offense for the crimes of wire fraud (18 U.S.C. § 1343), honest services wire fraud (18 U.S.C. § 1346), conspiracy to commit wire fraud and honest services fraud (18 U.S.C. § 1349), and money laundering (18 U.S.C. § 1956(a)(2)(B)(i)). This motion is based on the below memorandum of points and

1    authorities, the record in this case, and any argument that may occur at the hearing on the

2    motion.

3    Dated: November 18, 2020                    Respectfully submitted,

4

5                                               STEVEN G. KALAR
                                                Federal Public Defender
6                                               Northern District of California

7                                               _____/S/_____

8                                               ELLEN V. LEONIDA
                                                Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CR 19-621 EMC
Mot. to Dismiss Counts for Failure to State Offense

TABLE OF CONTENTS

1. INTRODUCTION.................................................................................................................... 1

2. ARGUMENT......................................................................................................................... 1

   2.1 The Superseding Indictment Fails to State an Offense of Wire Fraud Under
       18 U.S.C. § 1343............................................................................................................. 2

      2.1.1 The Superseding Indictment Does Not Allege that Mr. Abouammo
           Acted with a Specific Intent to Defraud Twitter of Money or
           Property.......................................................................................................... 2

      2.1.2 The Superseding Indictment Does Not Allege that Mr. Abouammo
           Made a Material Misrepresentation or Omission .......................................... 5

   2.2 The Superseding Indictment Fails to State an Offense of Honest Services
       Wire Fraud Under 18 U.S.C. §§ 1343 and 1346............................................................ 7

      2.2.1 The Superseding Indictment Fails to Allege that Mr. Abouammo
           Deprived Twitter of Its Right of Honest Services ......................................... 8

      2.2.2 The Superseding Indictment Fails to Allege that the Scheme
           Consisted of a Bribe or Kickback in Exchange for Mr.
           Abouammo's Alleged Acts ............................................................................ 9

   2.3 The Court Should Dismiss the Conspiracy and Money Laundering Counts............. 11

4. CONCLUSION ................................................................................................................... 12

iii

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Comm. to Protect our Agric. Water v. Occidental Oil and Gas Corp.,*
4       235 F. Supp. 3d 1132–79 (E.D. Cal. 2017) ............................................ 9

5

*Borre v. United States,*
        940 F.2d 215 (7th Cir. 1991) ............................................................. 3

6

*Carpenter v. United States,*
        484 U.S. 19 (1987) ........................................................................... 3
7

8

*Cleveland v. United States,*
        531 U.S. 12 (2000) ........................................................................... 3

9

*Kwikset Corp. v. Superior Court,*
        51 Cal. 4th 310 (2011) ...................................................................... 4

10

*Neder v. United States,*
11       527 U.S. 1 (1999) ............................................................................. 5

12

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
        214 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................... 3, 4

13

*Ruckelshaus v. Monsanto Co.,*
        467 U.S. 986 (1984) ......................................................................... 3
14

15

*Silvaco Data Sys. v. Intel Corp.,*
        184 Cal. App. 4th 210 (2010) ........................................................... 4

16

*Russell v. United States,*
        369 U.S. 749 (1962) ......................................................................... 1

17

*Skilling v. United States,*
18       561 U.S. 358 (2010) ..................................................................... 9, 10

19

*SunPower Corp. v. SolarCity Corp.,*
        2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .................................... 4

20

*United States v. Carroll,*
21       2015 WL 2251206 (N.D. Cal. May 13, 2015) .................................... 2

22

*United States v. Cecil,*
        608 F.2d 1294 (9th Cir. 1979) (per curiam) .................................... 1

23

*United States v. Ciccone,*
        219 F.3d 1078 (9th Cir. 2000) .......................................................... 2
24

25

*United States v. Cogswell,*
        637 F. Supp. 295 (N.D. Cal. 1985) ................................................. 11

26

*United States v. Czubinski,*
        106 F.3d 1069 (1st Cir. 1997) ....................................................... 8, 9

27

*United States v. Dowling,*
28       739 F.2d 1445 (9th Cir. 1984) .......................................................... 6

iv

*United States v. Garrido,*
    713 F. 3d 985 (9th Cir. 2013) ................................................................. 9-10, 12

*United States v. Hawkins,*
    777 F.3d 880 (7th Cir. 2015) ..................................................................... 11

*United States v. Holmes,*
    2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ........................................... 2, 5

*United States v. Inzunza,*
    638 F.3d 1006 (9th Cir. 2011) ................................................................. 9, 10

*United States v. Jinian,*
    725 F.3d 954 (9th Cir. 2013) ......................................................................... 2

*United States v. Keith,*
    605 F.2d 462 (9th Cir. 1979) ......................................................................... 2

*United States v. Keuylian,*
    23 F.Supp.3d 1126 (C.D. Cal. 2014) ............................................................ 8

*United States v. Kincaid-Chauncey,*
    556 F.3d 923 (9th Cir. 2009) ......................................................................... 8

*United States v. Lonich,*
    2016 WL 324039 (N.D. Cal. Jan. 27, 2016) ................................................ 6

*United States v. Miller,*
    953 F.3d 1095 (9th Cir. 2020) ................................................................... 2, 3

*United States v. Milovanovic,*
    678 F.3d 713 (9th Cir. 2012) ......................................................................... 7

*United States v. Nosal,*
    2009 WL 981336 (N.D. Cal. Apr. 13, 2009) ................................................ 8

*United States v. Peterson,*
    538 F.3d 1064 (9th Cir. 2008) ...................................................................... 5

*United States v. Sun-Diamond Growers of California,*
    138 F.3d 961 (D.C. Cir. 1998) ...................................................................... 8

**Statutes**

18 U.S.C. § 1343 ................................................................................... *passim*

18 U.S.C. § 1346 ................................................................................... *passim*

18 U.S.C. § 1349 ............................................................................................ 11

18 U.S.C. § 1956 ................................................................................. i, 11, 12

**Other**

Fed. R. Crim. P. 7 ....................................................................................... i, 1

Fed. R. Crim. P. 12 .................................................................................... i, 6

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Over a year ago, the government charged Ahmad Abouammo and two co-defendants with failing to notify the Attorney General that they were allegedly acting on behalf of a foreign government. Mr. Abouammo was charged with one additional count of falsification of records. The government has since charged the three defendants with an additional 19 counts alleging wire fraud, honest services fraud, conspiracy (to commit honest services and wire fraud), and money laundering (related to the proceeds of the alleged honest services and wire fraud). The alleged victim of the fraud charged in the superseding indictment is Mr. Abouammo's former employer, Twitter.

None of the new charges state an offense for either wire fraud or honest services fraud. The Superseding Indictment does not allege that Mr. Abouammo acted with the specific intent to deprive Twitter of money or property as required under 18 U.S.C. § 1343. Nor does it allege that Mr. Abouammo made a misrepresentation or omission material to Twitter. The counts charging honest services fraud do not even allege that Twitter was actually deprived of its right to Mr. Abouammo's honest services. Nor do those counts allege a bribe or kickback as required under 18 U.S.C. § 1346. Since the conduct charged in Counts Five through Nineteen does not constitute an offense under the law, the attendant conspiracy and money laundering counts cannot stand.

### 2. ARGUMENT

Rule 7 mandates that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). That requirement codifies and enforces "basic principles of fundamental fairness" inherent in the Sixth and Fifth Amendments. *Russell v. United States*, 369 U.S. 749, 763-66 (1962). Consequently, an indictment must include a "description of the charges" sufficiently detailed to, among other things, "inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam). "The failure of an indictment to detail each element of the charged

1

offense generally constitutes a fatal defect." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). An indictment will fail to allege an element of an offense if it "does not allege facts which, if proven, would constitute a violation of the statute . . . that the defendant is alleged to have violated." *United States v. Carroll*, 2015 WL 2251206, at *1 (N.D. Cal. May 13, 2015) (internal quotation marks omitted).

### 2.1 The Superseding Indictment Fails to State an Offense of Wire Fraud Under 18 U.S.C. § 1343

To establish a charge of wire fraud, the government must prove: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). The Superseding Indictment fails to state a wire fraud offense for two reasons. First, it does not allege that Mr. Abouammo acted with the specific intent to defraud Twitter by depriving it of its money or property. Second, it does not allege that Mr. Abouammo made a material misrepresentation or omission in furtherance of the purported scheme to defraud.

#### 2.1.1 The Superseding Indictment Does Not Allege that Mr. Abouammo Acted with a Specific Intent to Defraud Twitter of Money or Property

An essential element of the crime of wire fraud is the specific intent to deprive the victim of its money or property by means of deception. *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020); *see also United States v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000) (holding that to prove wire fraud, "the government must prove beyond a reasonable doubt the element of specific intent"); *United States v. Holmes*, 2020 WL 666563, at *20 (N.D. Cal. Feb. 11, 2020) (granting in part motion to dismiss wire fraud charges for failure to allege that defendants intended to deprive victims of money or property). Here, the Superseding Indictment fails to allege either.

Regarding a specific intent to deprive Twitter of money, the Superseding Indictment merely alleges that Mr. Abouammo participated in a scheme that "deprived Twitter of . . . its money and property by enabling individuals and entities outside of Twitter . . . access to nonpublic account information." Superseding Indictment, Dkt. No. 53, ¶ 28. There is not a

single other allegation in the Superseding Indictment concerning Twitter's money. This is not surprising, given that the Superseding Indictment alleges that Mr. Abouammo accessed the nonpublic account information of only two Twitter users. *Id.* at ¶ 27(b). The Superseding Indictment does not allege an economic value associated with accessing those two users' data, nor does it allege that Mr. Abouammo engaged in such access for the purpose of depriving Twitter of money. Indeed, the Superseding Indictment does not allege that Mr. Abouammo ever intended to (or did in fact) deprive Twitter of any money.

Nor does the Superseding Indictment allege that Mr. Abouammo harbored a specific intent to deprive Twitter of property for purposes of 18 U.S.C. § 1343. The Supreme Court has long held that, "for purposes of the [wire] fraud statute, the thing obtained must be property in the hands of the victim." *Cleveland v. United States*, 531 U.S. 12, 15 (2000); *see Carpenter v. United States*, 484 U.S. 19, 26-27 (1987) (noting that the statute is "limited in scope to the protection of property rights").[1] Because the Supreme Court has not defined the "property" protected by the wire fraud statutes, the question of whether information is property for purposes of wire fraud, "must be determined by reference to applicable state laws." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 822 (N.D. Cal. 2016) (citing *United States v. Shotts*, 145 F.3d 1289, 1294 (11th Cir. 1998)), *aff'd*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir.), and *aff'd*, 735 F. App'x 241 (9th Cir. 2018); *see also Borre v. United States*, 940 F.2d 215, 220 (7th Cir. 1991) ("It is logical, therefore, for this court to look to state law in determining whether a cable television franchise constitutes 'property' for purposes of the mail fraud statute."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (recognizing the "basic axiom that property interests . . . are not created by the Constitution [but] stem from an independent

---

[1] Although § 1346 provides an exception to this rule in the case of honest services fraud, the scope of § 1343—*i.e.*, "direct" wire fraud—remains limited to deprivations of property interests for allegations of wire fraud not premised on an honest services theory. *Miller*, 953 F.3d at 1103. In addition, while the Court in *Cleveland* analyzed the mail fraud statute, courts apply the same analysis to mail and wire fraud allegations. *See Carpenter*, 484 U.S. at 25 n.6.

3

source such as state law") (internal quotation marks omitted). Accordingly, this Court must look to California law to decide whether Twitter users' non-public account information constitutes Twitter's property for purposes of Section 1343.

Courts in this district have held that information can only constitute "property" under California law if it qualifies as a trade secret under the California Uniform Trade Secrets Act ("CUTSA") or another provision of positive law. *Planned Parenthood,* 214 F. Supp. 3d at 822-23 (rejecting wire fraud allegations as predicate offenses for civil RICO claims where plaintiffs failed to allege that information defendants acquired was a trade secret under CUTSA); *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) (dismissing plaintiff's claims of wrongful misappropriation of confidential information where plaintiff failed to allege that CUTSA or another provision of positive law created a property right in that information).

Conversely, "if confidential information [does] not qualify as [a] trade secret under CUTSA, then there [is] no common law claim protecting against its misappropriation." *Planned Parenthood*, 214 F. Supp. 3d at 823; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010) ("Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen."), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Because California law does not recognize a property interest in non-trade secret, non-public information, it is not property under the wire fraud statute. *See Planned Parenthood*, 214 F. Supp. 3d at 823. The Superseding Indictment does not allege that the nonpublic information that was allegedly accessed constitutes trade secret information under CUTSA or any other provision of positive law. The wire fraud charges against Mr. Abouammo therefore suffer from the same fatal defect as those in *Planned Parenthood*. Because the Superseding Indictment fails to allege that Mr. Abouammo had the specific intent to deprive Twitter of its money or its property, it fails to state an offense of wire fraud against Mr. Abouammo.

### 2.1.2   The Superseding Indictment Does Not Allege that Mr. Abouammo Made a Material Misrepresentation or Omission

The Superseding Indictment also fails to state a wire fraud offense against Mr. Abouammo because it does not allege that he made a material misrepresentation, concealment, or omission, as required to state an offense under 18 U.S.C. § 1343.

### 2.1.2.1   The Superseding Indictment Does Not Allege that Mr. Abouammo Made a Material Misrepresentation or Concealment

It is axiomatic that "materiality of falsehood is an element" of the federal wire fraud statute. *Neder v. United States*, 527 U.S. 1, 25 (1999); *accord* 9th Cir. Model Crim. Jury Instr. 8.124. A misrepresentation or omission is material when it "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). Further, "each misstatement must be 'material' to form the basis of the wire fraud charges." *Holmes*, 2020 WL 666563, at *13 n.8 (citing *United States v. Woods*, 335 F.3d 993, 1000 (9th Cir. 2003)).

The Superseding Indictment alleges only one affirmative misrepresentation/concealment on Mr. Abouammo's part: that Mr. Abouammo "used private means of communication, including personal telephones, email addresses, and Twitter DMs, to communicate with representatives and officials of the government of KSA and Saudi Royal Family . . . to avoid detection of the scheme by Twitter."[2] Superseding Indictment, Dkt. No. 53, ¶ 27(a). That allegation simply lists three extremely common forms of communication, including the internet messaging platform least likely to prevent detection by Twitter—the Twitter app itself. The Indictment does not allege that *any*

---

[2] The government identified paragraphs 26 and 27 of the Superseding Indictment as containing its charged misrepresentations, concealments, and omissions in response to Mr. Abouammo's motion for a bill of particulars. Govt. Opp. to Mot. for Bill of Particulars, Dkt. No. 68, p. 2 (stating that indictment sets forth "acts of concealment and material representations, promises, and omissions" at ¶¶ 26(a)-(u) and 27(a)-(f) of the Superseding Indictment).

CR 19-621 EMC
Mot. to Dismiss Counts for Failure to State Offense

specific information was related using these platforms, much less a material misrepresentation.

### 2.1.2.2  The Superseding Indictment Does Not Allege a Material Omission.

Nor has the government alleged an omission on Mr. Abouammo's part that could support a criminal charge. In the Ninth Circuit, an omission may "form the basis of a scheme to defraud only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached." *United States v. Dowling*, 739 F.2d 1445, 1450 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985). Accordingly, an indictment must allege facts giving rise to a duty to disclose the information allegedly omitted to withstand a motion to dismiss under Rule 12. *United States v. Lonich*, 2016 WL 324039, at *8 (N.D. Cal. Jan. 27, 2016) (dismissing portions of an indictment charging wire fraud on omission theory for failure to allege facts giving rise to a duty to disclose). The Superseding Indictment fails to do so.

The Superseding Indictment does not sufficiently allege that Mr. Abouammo had a duty to disclose any of the information he allegedly withheld from Twitter. First, the government does not allege that Mr. Abouammo had a duty to disclose his accessing of Twitter users' nonpublic account information. The government appears to concede this point by leaving Mr. Abouammo's non-disclosure of such access off its list of "material false representations, promises, and omissions" in the Superseding Indictment. *See* Superseding Indictment, Dkt. No. 53, ¶ 27. The government even admits that Mr. Abouammo "had access to proprietary and confidential Twitter information, including information about Twitter users," by virtue of his role at Twitter. *See Id.* at ¶ 17.

Instead, the government seeks to base Mr. Abouammo's alleged duty and failure to disclose in Twitter's "Gift Policy," which allegedly required employees to report gifts exceeding $100 in value to Twitter management. *See Id.* at ¶ 16. As an initial matter, the Superseding Indictment does not allege that Mr. Abouammo signed or otherwise acknowledged Twitter's "Gift Policy." *See Id.* at ¶¶ 14-16. It is doubtful that an employer's

6

gift policy not signed or otherwise acknowledged by an employee gives rise to a duty to disclose sufficient to support a criminal charge on a fraud-by-omission theory.

More significantly, however, the omissions alleged in the Superseding Indictment are immaterial to the purported scheme to defraud. The Superseding Indictment alleges that Mr. Abouammo "concealed from Twitter his receipt of a watch" and "concealed from Twitter his receipt of $100,000 . . . ." *Id.* at ¶ 27(b)-(c). Significantly, the government *does not* allege that Twitter's "Gift Policy" would have required Mr. Abouammo to report the circumstances surrounding his acceptance of such a gift (e.g., that he allegedly received it in exchange for providing nonpublic information to someone outside of Twitter). As alleged in the Superseding Indictment, the "Gift Policy" would have required Mr. Abouammo only to bring the gift itself to the attention of management and to return the gift to the sender. *Id.* at ¶ 16. Any failure by Mr. Abouammo to report a gift, therefore, would not have been material to the alleged scheme to access nonpublic account information because he would not have been under any obligation to disclose such access to Twitter management under the terms of the "Gift Policy."

The Superseding Indictment thus fails to allege a material misrepresentation, concealment, or omission in furtherance of the alleged scheme to defraud. Accordingly, the Superseding Indictment fails to state an offense of wire fraud.

## 2.2 The Superseding Indictment Fails to State an Offense of Honest Services Wire Fraud Under 18 U.S.C. §§ 1343 and 1346.

To prevail on a charge of honest services fraud, the government must prove the elements of wire fraud and, in addition, that (1) the scheme or plan to defraud was one to deprive Twitter of its right to honest services; (2) the scheme or plan consisted of a bribe or kickback in exchange for the defendant's services; *and* (3) the defendant owed and violated a fiduciary duty. *United States v. Milovanovic*, 678 F.3d 713, 726 (9th Cir. 2012). The government's honest services fraud theory fails in two ways. First, the Superseding Indictment does not allege that Mr. Abouammo deprived Twitter of its honest services because Mr. Abouammo's alleged misconduct falls entirely outside the scope of his role at

Twitter. Second, the Superseding Indictment does not adequately allege that Mr. Abouammo received a bribe in exchange for accessing nonpublic user information because the Superseding Indictment fails to allege a *quid pro quo*.

### 2.2.1   The Superseding Indictment Fails to Allege that Mr. Abouammo Deprived Twitter of Its Right of Honest Services

The Ninth Circuit has warned that, "[w]ithout some kind of limiting principle, honest services wire fraud could potentially make relatively innocuous conduct subject to criminal sanctions." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 940 (9th Cir. 2009). Especially in the private sector context, honest services fraud "poses special risks." *United States v. Sun-Diamond Growers of California*, 138 F.3d 961, 973 (D.C. Cir. 1998). In light of those risks, courts have recognized that not every breach of an employment contract or workplace policy rises to the level of a federal crime. *See, e.g.*, *United States v. Keuylian*, 23 F.Supp.3d 1126, 1128 (C.D. Cal. 2014) ("Without some affirmative act of deception, a failure to perform one's contractual duties does not amount to fraud."); *United States v. Nosal*, 2009 WL 981336, at *8 (N.D. Cal. Apr. 13, 2009) ("[C]ourts have been hesitant to impose federal liability upon every private dispute involving an employee transgression that incurs no public deprivation of rights."); *Sun-Diamond Growers*, 138 F.3d at 973 ("Every material act of dishonesty by an employee deprives the employer of that worker's honest services, yet not every such act is converted into a federal crime by the mere use of the mails or interstate phone system.") (internal quotation marks omitted). Moreover, misconduct falling outside the scope of an employee's job duties does not undermine the purpose of the employment relationship and thus cannot constitute honest services fraud. *United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997).

In *Czubinski*, the defendant, an employee of the IRS, accessed "confidential information" of multiple individuals by "performing computer searches that were outside of the scope of his duties" and in violation of IRS rules. 106 F.3d at 1071. Despite the defendant's clear violation of his employer's policy regarding access of confidential consumer information, the court reversed his conviction because "there [was] no

8

suggestion that he failed to carry out his official tasks adequately, or intended to do so." *Id.*
at 1077.  Noting that there was "no evidence that Congress intended to create what
amounts to a draconian personnel regulation," the *Czubinski* court cautioned against "the
threat of transforming governmental workplace violations into felonies." *Id.*

This case presents an analogous situation in that Mr. Abouammo's alleged conduct
in violation of Twitter's policies had no impact whatsoever on the job he was hired to do.
As alleged, Mr. Abouammo was a "Media Partnerships Manager responsible for the Middle
East and North Africa (MENA) region at Twitter." Superseding Indictment, Dkt. No. 53, at ¶
12. In that role, he provided assistance for "notable accounts, including accounts of public
interest or belonging to brands, journalists, and celebrities in the MENA region, with
content and Twitter strategy, and with sharing best practices." *Id.* The alleged unauthorized
access of private user information in no way undermines the purpose of providing
assistance to notable account holders. Indeed, the Superseding Indictment does not allege
that Mr. Abouammo ever failed to perform his job duties adequately or that the charged
conduct in any way impacted his role as Media Partnerships Manager. Consequently, the
Superseding Indictment fails to state an offense for honest services fraud.

### 2.2.2   The Superseding Indictment Fails to Allege that the Scheme Consisted of a Bribe or Kickback in Exchange for Mr. Abouammo's Alleged Acts

Honest services fraud offenses are limited to schemes involving bribes and
kickbacks. *Skilling v. United States*, 561 U.S. 358, 409 (2010). To establish the offense of
honest services fraud, the government must allege "specific factual allegations supporting
claims of bribery or kickbacks." *Comm. to Protect our Agric. Water v. Occidental Oil and Gas
Corp.*, 235 F. Supp. 3d 1132, 1178–79 (E.D. Cal. 2017). Not every exchange of money
constitutes a bribe or a kickback, however. The government must allege a *quid pro quo*,
meaning promises "made in return for an explicit promise or undertaking by the official to
perform or not to perform an official act." *United States v. Inzunza*, 638 F.3d 1006, 1013
(9th Cir. 2011); *cf. United States v. Garrido*, 713 F. 3d 985, 997 (9th Cir. 2013) ("Section

9

1346 honest services convictions on a bribery theory . . . require at least an implied *quid pro quo*"; reversing certain honest services fraud convictions). The Superseding Indictment is silent as to any kickback and fails to allege that Mr. Abouammo received a bribe in exchange for any specific undertaking.

There is not a single allegation in the Superseding Indictment of an outgoing wire transmission from Mr. Abouammo to Foreign Official-1 (or anyone else) in which Mr. Abouammo is alleged to have shared nonpublic account information. Absent a specific factual allegation that Mr. Abouammo disclosed nonpublic account information to someone outside of Twitter, the Superseding Indictment does not allege that Mr. Abouammo provided any *quid* in exchange for the purported *quo*.

Nor does the Superseding Indictment sufficiently allege that that the money given to Mr. Abouammo was *in exchange for* his disclosure of specific nonpublic account information. In order to establish a *quid pro quo*, the Government must allege that a promise to perform was linked to a promise of payment. *Inzunza*, 638 F.3d at 1025. In *Inzunza,* for example, the court considered whether contributions made to two city council members constituted bribery for purposes of honest services fraud. *Id.* at 1009-10. The honest services fraud allegations that withstood scrutiny "described payments made to [a city council member] to which he knew he was not entitled, accompanied by an express promise to perform official acts." *Id.* at 1019. However, *Inzunza* affirmed the district court's granting of a motion for acquittal regarding a different council member because "[t]here was neither an explicit promise nor a connection of such a promise to a contribution." *Id.* at 1025.

Here, the Superseding Indictment alleges no specific promise to disclose nonpublic account information, let alone a link tying such a promise to a promise of payment.[3]

---

[3] The Superseding Indictment uses the word "bribe" just twice, and only as part of a recitation of the language of the statute as limited by the Supreme Court in *Skilling.* Superseding Indictment, Dkt. No. 53, ¶¶ 36, 38.

CR 19-621 EMC
Mot. to Dismiss Counts for Failure to State Offense

1 Moreover, the Superseding Indictment alleges that the majority of the money purportedly

2 paid to Mr. Abouammo was received after he resigned from Twitter. *See* Superseding

3 Indictment, Dkt. No. 53, ¶ 26(k). At most, the government has alleged that Mr. Abouammo

4 received gratuities. But gratuities—even "secret" gratuities—do not constitute a bribe for

5 the purposes of honest services fraud. *United States v. Hawkins*, 777 F.3d 880, 882 (7th Cir.

6 2015) (vacating a wire fraud conviction because the "secret receipt of a gratuity . . . is

7 neither a bribe nor a kickback."). Consequently, Counts Five through Nineteen of the

8 Superseding Indictment fail to state an offense of wire fraud or honest services wire fraud,

9 and the Court should dismiss them.

10     **2.3 The Court Should Dismiss the Conspiracy and Money Laundering Counts.**

11     Count Four of the Superseding Indictment charges Mr. Abouammo with conspiracy

12 to commit wire fraud and honest services fraud under 18 U.S.C. Section 1349. *See*

13 Superseding Indictment, Dkt. No. 53, ¶¶ 35-36. In Counts Twenty through Twenty-two, the

14 Superseding Indictment charges Mr. Abouammo with three counts of money laundering

15 under 18 U.S.C. § 1956(a)(2)(B)(i). *Id.* at ¶¶ 39-44. All of these offenses are predicated on

16 the validity of the wire fraud/honest services fraud charged in Counts Five through

17 Nineteen. Because the Superseding Indictment fails to state an offense for any of the

18 charged wire fraud and honest services fraud counts, the Court must dismiss the

19 conspiracy and money laundering counts as well.

20     Where an indictment fails to allege the underlying fraud in a conspiracy, the

21 conspiracy count fails as well. *United States v. Cogswell*, 637 F. Supp. 295, 300 (N.D. Cal.

22 1985) ("The conspiracy to defraud fails because it does not allege the particulars of a

23 fraudulent scheme"; dismissing fraud and conspiracy to defraud charges for failure to state

24 an offense). Count Four specifically charges a conspiracy to commit wire fraud and honest

25 services fraud. Thus, the government's failure to state offenses that constitute either wire

26 fraud or honest services fraud is fatal to the charged conspiracy count.

27

28

CR 19-621 EMC
Mot. to Dismiss Counts for Failure to State Offense

In order to prove money laundering, the government must prove that a defendant knew that the funds involved in a transfer represented the proceeds of specified unlawful activity. *See* 18 U.S.C. § 1956(a)(2)(B)(i). The Superseding Indictment identifies that unlawful activity as wire fraud and honest services fraud. *See* Superseding Indictment, Dkt. No. 53, ¶¶ 40, 42, 44. That is, the money laundering charges in Counts Twenty through Twenty-two are predicated on the wire fraud and honest services wire fraud offenses. When a court finds that a predicate offense for money laundering is fatally flawed, the money laundering charge is as well. *See, e.g., Garrido*, 713 F.3d at 998-99 (reversing money laundering convictions because convictions for honest services mail and wire fraud from which the illegal proceeds were derived were reversed).

**3. CONCLUSION**

Because the Superseding Indictment fails to state an offense for either wire fraud or honest services fraud, Counts Four through Twenty-two should be dismissed.

Dated: November 18, 2020                          Respectfully submitted,
                                                  STEVEN G. KALAR
                                                  Federal Public Defender

                                                  ____/S/_____
                                                  ELLEN V. LEONIDA
                                                  Assistant Federal Public Defender

12

CR 19-621 EMC
Mot. to Dismiss Counts for Failure to State Offense