DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

COLIN C. SAMPSON (CABN 249784)
   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   Colin.Sampson@usdoj.gov

JOHN C. DEMERS
Assistant Attorney General
National Security Division

BENJAMIN J. HAWK (NJBN 030232007)
Trial Attorney, National Security Division
   950 Pennsylvania Avenue NW
   Washington, DC 20530-0001
   Telephone: (202) 307-5176
   Benjamin.Hawk@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-621 EMC |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION REGARDING THE GOVERNMENT'S CLASSIFIED DISCOVERY OBLIGATIONS (ECF NO. 85) |
| v. | |
| AHMAD ABOUAMMO, | Date: January 6, 2021 |
| Defendant. | Time: 2:30 p.m. |
| | Courtroom: 5, 17th Floor |

The government respectfully submits its Opposition to Defendant Ahmad Abouammo's Motion Regarding the Government's Classified Discovery Obligations [Dkt. No. 85]. For the reasons set forth below, the Court should deny Defendant's motion.

## I. BACKGROUND

On November 5, 2019, a Complaint was issued charging Defendant Abouammo and two co-defendants – Ali Alzabarah and Ahmed Almutairi – with acting as agents of a foreign government without notifying the Attorney General, in violation of 18 U.S.C. § 951. Dkt. No. 1.[1] Defendant Abouammo also was charged with falsification of records, in violation of 18 U.S.C. § 1519. *Id.* Defendant Abouammo was arrested on the same day. Warrants have been issued for the arrests of Defendants Alzabarah and Almutairi, who are believed to be in Saudi Arabia.

On November 19, 2019, the Grand Jury returned an Indictment, which charged the same offenses alleged in the Complaint. Dkt. No. 13. Defendant Abouammo was further charged with one count of falsifying documents. *Id.* On April 7, 2020, after the Grand Jury was suspended due to COVID-19, the government filed a Superseding Information, charging the defendants with the same counts from the Indictment, as well as one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and fifteen substantive counts of wire fraud, in violation of 18 U.SC. §§ 1343 and 1346. Dkt. No. 42. Defendant Abouammo was also charged with three counts of international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(i). *Id.* On July 28, 2020, after the Grand Jury resumed in limited capacity, it returned a Superseding Indictment, charging the same offenses alleged in the Superseding Information. Dkt. No. 53.

On July 31, 2020, the government filed a motion for a pretrial conference pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III. Dkt. No. 55. In its motion, the government provided notice of its intent to file an ex parte, in camera submission under seal pursuant to Section 4 of CIPA. *Id.* at 2. The government further indicated that it does not anticipate using classified information affirmatively in its case-in-chief, nor does it anticipate providing classified information to the defense in this case. *See id.* On September 25, 2020, the government provided notice that it had filed its ex parte, in camera submission under seal with the Court pursuant to Section 4. *See* Dkt. No. 69. On November 18, 2020, Defendant Abouammo filed the instant motion concerning CIPA

---

[1] The factual allegations against Defendant, if relevant, are detailed in the government's opposition to Defendant's Motion to Dismiss for Failure to State Offense, filed concurrently with this opposition.

and the government's discovery obligations. *See* Dkt. No. 85.

## II.     APPLICABLE LAW[2]

The government has a compelling interest in protecting classified information. *See Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (identifying the government's "'compelling interest' in withholding national security information from unauthorized persons in the course of executive business"). Courts have further recognized that the determination of whether, and how, to classify information is a matter committed solely to the government. *See United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) (recognizing that "[a] defendant cannot challenge [the government's] classification [determination]" and the "court cannot question it"), *rev'd on other grounds*, 780 F.2d 1102 (4th Cir. 1985) (en banc).

Section 4 of CIPA governs how federal courts address and process pretrial matters concerning the discoverability of classified information in criminal cases. *See United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (explaining that "Congress passed CIPA to prevent the problem of 'graymail,' where defendants pressed for the release of information to force the government to drop the prosecution"). CIPA's fundamental purpose is to "harmonize a defendant's right to a fair trial with the government's right to protect classified information." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013). "[It] does not expand or restrict established principles of discovery." *Id.*; *see also United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990) (explaining that CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense"). Rather, "it contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information." *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989); *accord Sedaghaty*, 728 F.3d at 904-05.

Among other things, Section 4 permits the Court, "upon a sufficient showing," to authorize the government "to delete specified items of classified information" from "discovery under the Federal

---

[2] The government has fully briefed these issues in its Section 2 motion, Dkt. No. 55, and its ex parte, in camera Section 4 submission, *See* Dkt. No. 89 (providing notice of filing).  The legal principles most relevant to Defendant's motion are summarized herein.  There are no substantive differences between the law cited herein and the government's other filings.

U.S.' OPPOSITION TO DEFENDANT'S MOTION RE: CIPA,
CASE NO. 19-621 EMC                            3

1  Rules of Criminal Procedure."[3]  18 U.S.C. App. III, § 4.  Like Section 4, Fed. R. Crim. P. 16(d)(1)
2  provides that, "[u]pon a sufficient showing," a district court "may, for good cause, deny, restrict, or
3  defer discovery or inspection, or grant other appropriate relief."  The legislative history of CIPA makes
4  clear that Section 4 was "intended to clarify the court's powers under Fed. R. Crim. P. 16(d)(1) to deny
5  or restrict discovery in order to protect national security."  *Sedaghaty*, 728 F.3d at 904 (citing S. Rep.
6  No. 96-823 at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4299-4300).

7      CIPA and Ninth Circuit precedent provide a clear framework for courts to follow when the
8  government seeks to delete or withhold classified information from discovery pursuant to Section 4.  *See*
9  *Sedaghaty*, 728 F.3d at 904.  First, the Court determines whether the information is discoverable.  *Id.*  If
10 it is, then the Court considers the validity of the government's claim of the classified information
11 privilege.  *Id.*  Next, the Court determines whether the information is "relevant and helpful to the
12 defense of [the] accused."  *Id*; *see also Yunis*, 867 F.2d at 623 ("[C]lassified information is not
13 discoverable on a mere showing of theoretical relevance in the face of the government's classified
14 information privilege.").  If the information is neither relevant nor helpful, then the inquiry is over.  *See*
15 *Sedaghaty*, 728 F.3d at 904 (concluding that "the district court did not improperly withhold relevant and
16 helpful information from discovery").  However, if the Court determines that any of the classified
17 information is *both* relevant *and* helpful to the defendant, then the Court should balance the
18 government's need to protect national security against the defendant's need for the information.  *See*
19 *Sarkissian*, 841 F.2d at 965 (noting that the courts can engage in balancing); *see also Yunis*, 867 F.2d at
20 625.

21     Both Section 4 and Rule 16(d)(1) "explicitly provide for ex parte filings and do not require . . .
22 detailed notice . . . [to the defense]."  *Sedaghaty*, 728 F.3d at 908-909.  Defendants do not have a due
23 process right to know or have access to the classified information in the government's possession that it
24 seeks to delete from discovery; nor is defense counsel entitled to access that information simply because

---

[3] Section 4 also permits the Court to authorize the government "to substitute a summary of the information for such classified documents" or "to substitute a statement admitting relevant facts that the classified information would tend to prove."  Those provisions are inapplicable here, as the government is asking the Court to delete – not substitute – classified information, because (assuming, *arguendo*, it is discoverable), it is neither relevant nor helpful to the defense.

he or she holds a security clearance. *Id.* at 908-09. Moreover, the Ninth Circuit has recognized that, in addition to ex parte CIPA filings, "ex parte, in camera hearings in which the government counsel participates to the exclusion of defense counsel are part of the process that the district court may use." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *see also* H.R. Rep. No. 96-831, at 27 n.22 (1980) ("[S]ince the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.").

### III. LEGAL ARGUMENT

Defendant Abouammo asks the Court for three forms of relief: (1) to order the government to make a record of the steps it has taken to produce classified materials that are discoverable; (2) to order the government to produce classified materials that are discoverable; and (3) to deny the government's request to "withhold" from discovery classified materials. *See* Dkt. No. 85 ("Def. Mot."). The Court should deny each of Defendant's requests, as set forth below.

1. <u>The Court Should Deny Defendant's Request for an Order Requiring the Government to Make a Record of the Steps It Has Taken to Satisfy Its Discovery Obligations</u>

Without providing any legal support, Defendant argues that the government should produce a record of the steps it has (and has not) taken to fulfill its discovery obligations related to classified information. Def. Mot. at 3-5. CIPA, however, does not impose additional discovery requirements merely because the information at issue is classified, *see Sedaghaty*, 728 F.3d at 903, nor has Defendant offered any real meaningful reason for why the Court should do so in this case.

Defendant bases his request on several incorrect beliefs. First, the government is not keeping the Court "in the dark." *See* Def. Mot. at 4-5. The government is following the law and procedures set forth in Section 4, and the Court, of course, is aware of the contents of the government's sealed ex parte, in camera submission. Despite Defendant's insistence otherwise, the government believes the record is sufficient for the Court to rule and for any appellate review of the Court's ruling. *See Sedaghaty*, 728 F.3d at 909.

Second, Defendant complains that he, too, is "in the dark" about any potential classified discovery, claiming there is "no reason" for him to be. Def. Mot. at 4-5. But the law is clear that he is

not entitled to the government's Section 4 filing and the classified information in question. *See Sedaghaty*, 728 F.3d at 908-09. Moreover, Defendant appears to concede that such proceedings should be ex parte, though he hedges by adding the word "usually," which is not actually the law. *See* Def. Mot. at 3.

Third, Defendant is simply wrong to imply (without offering any specific allegations) that the government has failed to fulfill its discovery obligations or that it cannot be trusted to do so. *See id.* at 3-4. In asking the Court to supervise the government's "discovery conduct" with respect to classified information, Defendant ignores one obvious detail – the government raised the very issues that are before the Court. The government is not acting unilaterally here, because it is mindful of both the strong need to protect national security and its discovery obligations.

The few cases cited by Defendant concerning "failures by prosecutors" (presumably included to support the inference that the government will "fail" here) are inapposite to the issues before the Court and require little, if any, discussion. *See id*. First, in *Sedaghaty*, the government sought authorization from the district court to delete certain classified information from discovery *and* to substitute other relevant and helpful classified information with a summary. 728 F.3d 885. With respect to the former, the Ninth Circuit affirmed the district court's decision after reviewing a similar ex parte record. *Id.* at 909. As Defendant notes, the Ninth Circuit did take issue with the government's summary in that case, but in this case, the government has not asked the Court to substitute classified information with a summary for the defense, because (assuming, *arguendo*, it is discoverable), it is neither relevant nor helpful to him. Second, the court in *United States v. Nejad*, __ F. Supp. 3d __, 2020 WL 5549931, at *4-6 (S.D.N.Y. Sept. 16, 2020), vacated the defendant's conviction as a result of "numerous disclosure-related issues that arose prior to, during, and after [the defendant's trial]." But those are not the facts before this Court. Finally, in *United States v. Koubriti*, 336 F. Supp. 676, 678 (E.D. Mich. 2004), the government confessed prosecutorial error and admitted that it had intentionally failed to disclose a document that it "unquestionably should have." As with *Nejad*, those are not the facts before this Court.

2. <u>The Court Should Deny Defendant's Request for the Production of Classified Materials</u>

Defendant also asks the Court to order the government to produce classified materials that are discoverable under Rule 16 subject to the limitations set forth in Section 4 of CIPA. *See* Def. Mot. at 5.

These, of course, are the very issues the government has asked the Court to decide through its sealed ex parte, in camera filing.  While Defendant claims that there are "three modes of disclosure outlined in CIPA Section 4," *see id.* at 5, here, the government has only asked the Court for authorization to delete or withhold classified information, because (assuming, *arguendo*, it is discoverable), it is neither relevant nor helpful to him.

Moreover, while Defendant acknowledges that the Ninth Circuit has adopted the "relevant and helpful" standard for determining whether classified information must be disclosed – a standard established by the Supreme Court more than 60 years ago in an analogous context, *see Roviario v. United States*, 353 U.S. 53 (1957), and applied regularly in the years since by courts in the Ninth Circuit – he nonetheless asks the Court to disregard established precedent.  *See* Def. Mot. at 5-6.  Defendant's rationale for such an extraordinary measure is unpersuasive and would render CIPA a nullity.

Furthermore, the circumstances here are not "unique to classified discovery," as Defendant wrongly claims.  *See id.* at 5.  Courts are often asked to review unclassified information ex parte and in camera to determine, for example, whether it constitutes a witness statement subject to disclosure under the Jencks Act or exculpatory material subject to disclosure under *Brady*.  *See United States v. Mejia*, 448 F.3d 436, 457-58 (D.C. Cir. 2006) (explaining that ex parte CIPA proceedings are not without close analogies).  Moreover, contrary to Defendant's unsupported assertions, *see* Def. Mot. at 6, the "relevant and helpful" standard is not "inconsistent with the plain language of CIPA," nor is it inconsistent with established principles of discovery.  *See Sedaghaty*, 728 F.3d at 903 (explaining that CIPA was enacted to harmonize the government's compelling interest in protecting classified information with a defendant's right to a fair trial); *see also Yunis*, 867 F.2d at 623 ("[T]he threshold for discovery in this context . . . requires that a defendant seeking classified information like [the] defendant seeking the informant's identity in *Roviario*, [be] entitled only to information that is at least 'helpful to the defense of the accused.'").

While it is the government's position that the classified information in question is neither relevant nor helpful to the defense, it has not taken it upon itself to make those determinations, but rather, has asked the Court to decide the issues.  *See* Def. Mot. at 5-6.  "[T]he government's approach to classified discovery" in this case has simply been to follow the law.  *See id.* at 6.  To the extent the Court

would find it useful in determining whether the information is relevant or helpful, the government does not object to Defendant's request to submit his potential theories of defense ex parte for the Court's consideration. *See id.* at 6-7.

Finally, the government's Section 4 filing is not a concession that the classified information in question is discoverable. *See id.* at 6. The first step in the Court's analysis under Section 4 is to determine whether the information is, in fact, discoverable. *See Sedaghaty*, 728 F.3d at 904.

### 3. The Court Should Grant the Government's Request to Delete or Withhold Classified Information from Discovery

Defendant lastly asks the Court, without any legal support, to draw some sort of meaningful distinction between the words "delete" and "withhold." *See* Def. Mot. at 7. There simply is none; the words are used interchangeably to describe the same procedure set forth in Section 4. *See, e.g., Sedaghaty*, 728 F.3d at 904 ("When considering a motion to withhold classified information from discovery . . . ."); H.R. Rep. No. 96-831, at 27 n.22 (1980) (describing how, under CIPA, "the government [can seek] to withhold classified information from the defendant").

Relying on this nonexistent distinction, Defendant further claims, incorrectly, that a request to "delete" classified information should be analyzed under Section 4, while a request to "withhold" classified information should be analyzed under Rule 16(d)(1). *See* Def. Mot. at 7-8. Both Section 4 and Rule 16(d)(1) permit the government to withhold information from discovery, however, and for good reason. Section 4 was enacted "to clarify[] the court's powers under Federal Rule of Criminal Procedure 16(d)(1) . . . because some judges [had] been reluctant to use their authority under the rule." S. Rep. No. 96-823, at 6 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4294, 4299–4300; *see also Sedaghaty*, 728 F.3d at 904 (noting that Section 4 was intended to clarify the court's powers under Rule 16(d)(1) to restrict discovery to protect national security). Here, given the classified nature of the information, CIPA controls and the Court should authorize the government to delete or withhold that information, because it is neither relevant nor helpful to the defense (assuming, *arguendo*, it is discoverable). Even if the Court were to look to Rule 16(d)(1), the result would be the same.

Defendant appears to claim that Rule 16(d)(1) has a heightened standard because it requires a showing of "good cause." *See* Def. Mot. at 7-8. Surely, protecting classified information and national

security constitutes good cause under Rule 16(d)(1).  Furthermore, deleting or withholding information from discovery, whether pursuant to Section 4, Rule 16(d)(1), or both, is not a "drastic" remedy, *see id.*, but rather, the appropriate procedure when classified discovery is neither relevant nor helpful to the defense.  Anything short of that remedy, as Defendant proposes (e.g., a protective order to "enable the defense to obtain the material"), *see id.* at 8, runs contrary to the law, and Defendant fails to identify any authority in support of such limited measures, which clearly do not protect national security.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's motion regarding the government's classified discovery obligations.

DATED:  December 7, 2020.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney,

　　*/s/ Benjamin J. Hawk*
COLIN C. SAMPSON
Assistant United States Attorney
BENJAMIN J. HAWK
Trial Attorney, National Security Division