STEVEN G. KALAR
Federal Public Defender
Northern District of California
ELLEN LEONIDA
CARMEN SMARANDOIU
Assistants Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Ellen_Leonida@fd.org


Counsel for Defendant Abouammo


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: CR 19–00621 EMC |
| PLAINTIFF, | REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS TWENTY THROUGH TWENTY-THREE FOR LACK OF VENUE |
| V. | |
| AHMAD ABOUAMMO, | HON. EDWARD M. CHEN |
| DEFENDANT. | HEARING DATE:   JANUARY 6, 2021 |
| | HEARING TIME:   2:30 P.M. |

1

## TABLE OF CONTENTS

2

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................1

    I.       Venue is improper for Count Twenty through Twenty-two in this district. ..............1

    II.      Venue is improper for Count Twenty-three in this district. ........................................4

          A.      Venue under 18 U.S.C. § 3237 still requires identifying the essential conduct elements of the offense. ......................................................................4

          B.      The essential conduct element of § 1519 is the destruction, alteration, or falsification of the records. ......................................................................6

          C.      The specific venue provisions in other obstruction-of-justice statutes are irrelevant....................................................................................................10

          D.      Section 1001, which has a materiality requirement, does not inform the question of venue for section 1519, which lacks a materiality requirement. .................................................................................................13

CONCLUSION .............................................................................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

**Federal Cases**

3

*United States v. Aguilar*,
4
   515 U.S. 593 (1995) ................................................................................ 12

5

*United States v. Angotti*,
   105 F.3d 539, 542 (9th Cir. 1997) ........................................................... 6
6

*United States v. Bowens*,
7
   224 F.3d 302 (4th Cir. 2000) ..................................................... *passim*

8

*United States v. Brennan*,
   452 F.Supp.3d 225 (E.D. Pa. 2020) ....................................................... 13
9

*United States v. Cabrales*,
10
   524 U.S. 1 (1998) ..................................................................................... 14

11

*United States v. Carbajal*,
12
   717 F. App'x 234 (4th Cir. 2018) ........................................................... 14

13

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012) ..................................................................... 13
14

*United States v. Gray*,
15
   642 F.3d 371 (2d Cir. 2011) ................................................................... 10

16

*United States v. Katakis*,
   800 F.3d 1017 (9th Cir. 2015) ............................................................... 14
17

*United States v. King*,
18
   259 F.Supp.3d 1267 (W.D. Okla. 2014) ............................................... 3-4

19

*United States v. Long*,
20
   697 F.Supp.651, 655 (S.D.N.Y. 1988) ................................................ 2, 4-5

21

*United States v. Lozoya*,
   -- F.3d --, 2020 ........................................................................................ 13
22

*United States v. Marsh*,
23
   144 F.3d 1229 (9th Cir. 1998) ............................................................. 9-10

24

*United States v. Oceanpro Indus., Ltd.*,
   674 F.3d 323 (4th Cir. 2012) ................................................................. 13
25

*United States v. Pace*,
26
   314 F.3d 344 (9th Cir. 2002) ......................................................... 6, 7, 10

27

*United States v. Powell*,
   680 F.3d 350 (4th Cir. 2012) ................................................................. 14
28

*United States v. Ramirez,*
   420 F.3d 134 (2d Cir. 2005) ............................................................... 6, 7, 10

*United States v. Ringer,*
   300 F.3d 788 (7th Cir. 2002) ............................................................... 13-14

*United States v. Rodriguez–Moreno,*
   526 U.S. 275 (1999) .............................................................................. 4

*United States v. Salinas,*
   373 F.3d 161 (1st Cir. 2004) .............................................................. 11, 14

*United States v. Singh,*
   979 F.3d 697 (9th Cir. 2020) ............................................................... 10

*United States v. Spivey,*
   956 F.3d 212 (4th Cir. 2020) ............................................................... 6, 7

*United States v. Stinson,*
   647 F.3d 1196, 1204 (9th Cir. 2011) .................................................. 5-6

*United States v. Sullivan,*
   797 F.3d 623 (9th Cir. 2015)(a) ......................................................... 5

*United States v. Trie,*
   21 F.Supp.2d 7 (D.D.C. 1998) ........................................................... 4

*United States v. Villalobos-Macias,*
   280 F.Supp.3d 1211 (D.N.M. 2017) .................................................. 4

*United States v. Wilson,*
   No. 01 CR. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001) ...... 4

**Federal Statutes**

18 U.S.C. § 924 ....................................................................................... 7

18 U.S.C. § 1001 ................................................................................. 13, 14

18 U.S.C. § 1014 ..................................................................................... 6

18 U.S.C. § 1071 .............................................................................. 8, 9, 11

18 U.S.C. § 1341 ..................................................................................... 7

18 U.S.C. § 1503 .............................................................................. 9, 11, 12

18 U.S.C. § 1512 .......................................................................... 10, 11, 12, 13

18 U.S.C. § 1513 ........................................................................... 9, 11, 12, 13

18 U.S.C. § 1515 ..................................................................................... 12

18 U.S.C. § 1519 ............................................................................... *passim*

18 U.S.C. § 1956 ..................................................................................... 1

18 U.S.C. § 2250 ..................................................................................... 7

18 U.S.C. § 3237 ......................................................................................... 4, 5, 6

18 U.S.C. § 1951 ............................................................................................... 8-9

18 U.S.C. § 1956 ...................................................................................... 1, 2, 3, 12

**Federal Statutes**

Fed. R. Crim. P. Rule 12 ...................................................................................... 1

**Legislative Materials**

U.S. Const. Amend. VI ................................................................................... 1, 12

U.S. Const. Art. III ..................................................................................... 1, 8, 12

1

## INTRODUCTION

A defendant has a constitutional right to be tried in the district where the crime was committed. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; *see also* Fed. R. Cr. P. 18 (same). Because the charging documents against Mr. Ahmad Abouammo fail to establish that venue is proper in this district as to the money laundering and the falsification of records counts, the Court should dismiss them pursuant to Fed. R. Crim. P. Rule 12(b)(3)(A)(i).

## ARGUMENT

### I.     Venue is improper for Count Twenty through Twenty-two in this district.

The government's theory of venue regarding the money laundering counts, Counts Twenty through Twenty-Two, rests on 18 U.S.C.A. § 1956(i)(1)(a), which provides that venue exists in "any district in which the financial or monetary transaction is conducted." Dkt. No. 86, United States' Opposition to Defendant's Motion to Dismiss for Lack of Venue (ECF No. 82) (hereinafter, "Opp.") at 7.[1] "[T]he term 'conducts' includes initiating, concluding, or participating in initiating, or concluding a transaction." 18 U.S.C. § 1956(c)(2).

The government first argues that Mr. Abouammo conducted the three alleged transactions in this district because it is here that he initiated the money laundering scheme on February 13, 2015, by directing that money be deposited into a relative's back account in Lebanon, which money was later transferred into his domestic Bank of America account. Opp. at 8. In other words, the government argues that the term "conducts" includes initiating a money laundering *scheme*, regardless of when and where the financial transactions are actually conducted.

The government offers no support for its expansive reading of the word "conducts." Nor could it. The statutory language is clear: venue exists in the district "in which *the financial or monetary transaction* is conducted," which includes "initiating …. *a transaction.*" 18 U.S.C. §§

---

[1] The government has apparently abandoned its initial theory, proffered in its opposition to Mr. Abouammo's motion for a bill of particulars, that venue for the money laundering charges lies in this district because the fraudulent scheme charged in Count Four occurred here. *See* Dkt. No. 68 at 10 n.6.

REPLY ISO MTN FOR DISMISSAL FOR LACK OF VENUE
*ABOUAMMO*, CR 19–00621 EMC

1956(c)(2), 1956(i)(1)(a) (emphases added). A transaction, in turn, "with respect to a financial institution includes a deposit, withdrawal, transfer between accounts… , or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected." *Id.* § 1956 (c)(3). The term "financial transaction" is defined, in relevant part, as "a transaction ... involving the movement of funds by wire or other means ... or involving the use of a financial institution ..." *Id.* § 1956 (c)(4).

As the statute makes clear, venue depends on where specific money laundering transactions were actually conducted, and not merely where a scheme to launder was developed. In fact, the government acknowledges as much later in its opposition, when it argues that "[a]ny questions about where Defendant was when he participated in the initiation and conclusion of the [charged] financial transactions . . . —or how the financial institutions processed the transfers through this District—are most appropriate for the jury to resolve at trial." Opp. at 9.

The government's alternative argument does not fare any better. The government essentially argues that it suffices that the Superseding Indictment alleges that "in the Northern District of California and elsewhere, the defendant AHMAD ABOUAMMO did knowingly conduct a financial transaction…" Dkt. No. 53 ¶¶ 40, 42, 44. But such broad statements of venue do not satisfy the government's burden, pre-trial , "to allege with specificity that the charged acts support venue in this district." *United States v. Long*, 697 F.Supp.651, 655 (S.D.N.Y. 1988).

The government implicitly acknowledges the Superseding Indictment's shortcomings. For instance, it acknowledges that Counts Twenty through Twenty-two do not identify Mr. Abouammo's domestic bank account, but argues that it is a reasonable inference that it is the same Bank of America account referenced in other transfers. Opp. at 9, n.4. The government then claims that discovery produced to Mr. Abouammo shows that this account "is identified by his address in the Northern District" and further claims that the charged transactions "involved Wells Fargo, which is headquartered in this District, as an intermediary and/or correspondent bank and Bank of America, which has branches throughout." *Id.* at 9. n.5.

This is what the government does *not* assert: that Mr. Abouammo's bank account is at a

1   *local* branch of Bank of America or that the Wells Fargo or Bank of America branches involved

2   in the transactions were *local* branches.

3       That is why the government makes fallback arguments: for Count Twenty, that Mr.

4   Abouammo was still residing in this District at the time of the March 12, 2012 transfer, and as

5   to Counts Twenty-One and Twenty-Two, that his "bank statements indicate ATM withdrawals,

6   purchases, and similar transactions in this District through at least June 22, including around

7   the time of the June 11th transfer. And Defendant's bank statements through June 17, 2015, are

8   directed to his address in this district." *Id*.

9       Again, this is what the government does *not* say: that Mr. Abouammo actually conducted

10  any part of the March 12, 2015, transaction in this district, or that the bank statements indicate

11  ATM withdrawals, purchases, etc. in this district *on* June 11, 2015 or July 2, 2015 (the dates of

12  the transactions charged in Counts Twenty-One and Twenty-Two). Indeed, the Superseding

13  Indictment states that Mr. Abouammo moved to Seattle on May 22, 2015. Dkt. No. 53 ¶2. The

14  government also acknowledges that "his statements also show transactions in Seattle and his

15  July bank statement identifies his Seattle residence," but claims that "Mr. Abouammo is free to

16  offer evidence to rebut the government's proof of venue at trial." Opp. at 9 n.5.

17      In other words, the government invites the Court to speculate that Mr. Abouammo *might*

18  have been in this district on March 12, June 11, and July 2, 2015, and to shift the burden of

19  *disproving* venue to Mr. Abouammo. The Court should reject the government's invitation and

20  dismiss Counts Twenty through Twenty-two for lack of venue.

21      Alternatively, the Court should defer the ruling and order the government to provide a bill

22  of particulars "aver[ring] facts which, if proven at trial, would suffice to establish venue. This is

23  an appropriate use of a bill of particulars where there is a serious question as to venue." *United

24  States v. King*, 259 F.Supp.3d 1267, 1276-77, 1285 n.17 (W.D. Okla. 2014) (ordering the

25  government, who relied on 18 U.S.C. § 1956(i)(1)(B) for venue purposes, to provide, for each

26  money laundering count and each defendant, five categories of information, including "how and

27  when [the money] was transferred from the Western District of Oklahoma to the district where

28  the financial or monetary transaction was conducted" and "how and when the defendant [ ]

1  participated in the transfer of the [money] from the Western District of Oklahoma to the district

2  where the financial or monetary transaction was conducted. If the government does not

3  contend that [the defendant] directly participated in one or more identifiable transactions . . .

4  by which that sum was transferred from the Western District of Oklahoma to the district where

5  the financial or monetary transaction was conducted, the government shall so state"). *See also,*

6  *e.g.*, *United States v. Villalobos-Macias*, 280 F.Supp.3d 1211, 1216 (D.N.M. 2017) (ordering bill of

7  particulars "addressing the facts it will adduce to establish venue in New Mexico, if the

8  Government has not filed a superseding indictment"); *United States v. Wilson*, No. 01 CR. 53

9  (DLC), 2001 WL 798018, at *6-7 (S.D.N.Y. July 13, 2001) (rejecting the government's proffered

10  theory of venue for five counts and ordering that it "provide the defendants … with a bill of

11  particulars describing facts it intends to establish at trial which it claims are sufficient to

12  establish venue in this district."); *United States v. Trie*, 21 F.Supp.2d 7, 17, 23 (D.D.C. 1998)

13  (dismissing one count for lack of venue and ordering a bill of particulars regarding venue for

14  another count).

15  **II.    Venue is improper for Count Twenty-three in this district.**

16  Venue is also improper for Count Twenty-three, which charges Mr. Abouammo with

17  violating 18 U.S.C. § 1519. As Mr. Abouammo has explained, under the "essential conduct

18  elements" test the Supreme Court announced in *United States v. Rodriguez–Moreno*, 526 U.S.

19  275 (1999), venue for § 1519 lies exclusively in the district where the destruction, alteration or

20  falsification of records occurred. The government disagrees. Because the government's

21  argument are unpersuasive, the Court should reject them and dismiss Count Twenty-Three.

**A.   Venue under 18 U.S.C. § 3237 still requires identifying the essential
conduct elements of the offense.**

22
23  In a footnote, the government claims that because "the effects-based test clearly

24  establishes venue for § 1519" in this district, it has refrained from "fully brief[ing] alternative

25  theories of venue." Dkt. No. 86 at 10 n.6.

26  The government, however, bears the burden of proving venue and must, at the pretrial

27  stage, "allege with specificity that the charged acts support venue in this district." *Long*, 697

28

1   F.Supp. at 655 Thus, if the government intends to rely on "alternative theories of venue," it must

2   identify them such that the Court can rule on whether the Superseding Indictment supports

3   venue under those theories or not. If the government fails to identify alternative theories and

4   the Court agrees with Mr. Abouammo that, under *Rodriguez-Moreno*, venue for § 1519 lies

5   where the obstructive conduct occurred, then the Court must dismiss Count Twenty-three.

6       The government purports to identify one such alternative theory: 18 U.S.C. § 3237

7   ("Except as otherwise expressly provided by enactment of Congress, any offense against the

8   United States begun in one district and completed in another, or committed in more than one

9   district, may be inquired of and prosecuted in any district in which such offense was begun,

10  continued, or completed."). The government claims § 3227 applies because Mr. Abouammo's

11  "conduct continued from the Western District of Washington to the Northern District of

12  California, because the falsified document … was received here." Opp. at 10 n.6 (citing *United*

13  *States v. Angotti*, 105 F.3d 539, 542 (9th Cir. 1997), *abrogated in part by United States v.*

14  *Cabrales*, 524 U.S. 1 (1998)).[2]

15      The government is mistaken. The Supreme Court's decision in *Rodriguez-Moreno*

16  fundamentally altered the legal analysis of venue for "continuing offenses" too. "To determine

17  whether a crime is a continuing offense for purposes of § 3237, 'a court must initially identify

18  the conduct constituting the offense (the nature of the crime) and then discern the location of

19  the commission of the criminal acts.'" *United States v. Sullivan*, 797 F.3d 623, 631 (9th Cir. 2015)

20  (quoting *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011). Thus, "[u]nder

21  *Rodriguez–Moreno* and § 3237(a), venue for a continuing offense is proper if an 'essential

22  conduct element' of the offense begins in, continues into, or is completed in the charging

23  district." *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012); *see also Sullivan*, 797

24  F.3d at 631. By contrast, venue is not proper under § 3227 "when all that occurred in the

25  _____

26  [2] The government claims that the email was received in this district. By contrast, the Criminal
    Complaint alleged that Mr. Abouammo "emailed an undated invoice to the email address of a
27  Palo Alto, California *based* FBI Special Agent." Dkt. No. 1 ¶ 54 (emphasis added). But the "home
    base" of an agent is not necessarily the place where they might receive an email. Taking the
28  allegations of the complaint as true, then, they do *not* even allege that the FBI agent received
    the email in this district.

1    charging district was a 'circumstance element'...." *Stinson*, 647 F.3d at 1204.

2        Thus, § 3237 helps the government only if the FBI agent's alleged receipt of Mr.

3    Abouammo's email in this district is part of the essential conduct element of § 1519. It is not.[3]

4        **B. The essential conduct element of § 1519 is the destruction, alteration, or falsification of the records.**

5
6        The Court is already familiar with *Rodriguez-Moreno* and its essential conduct elements

7    test, but one point bears emphasizing: the "essential conduct elements" are *not* the same as the

8    elements of the offense. *See*, *e.g.*, *United States v. Spivey*, 956 F.3d 212, 215 (4th Cir. 2020)

9    (under *Rodriguez-Moreno*, "[n]ot all elements of a criminal offense are relevant, however, for

10   determining where an offense was committed."); *United States v. Bowens*, 224 F.3d 302, 310-11

11   (4th Cir. 2000) (applying *Rodriguez-Moreno*, "it is clear that the issuance of a warrant for a

12   person's arrest is merely a circumstance element (albeit an essential element) of the harboring

13   offense.").

14       Citing the Ninth Circuit's Model Criminal Jury Instructions, the government claims that the

15   "essential conduct elements" of § 1519 include obstructive intent. Opp. at 11. But, as explained,

16   the mere fact that obstructive intent is an element of § 1519 does not make it "an essential

17   conduct element." Instead, "defining the proper venue of a crime requires identifying where the

18   physical '*conduct* constituting the offense' took place." *United States v. Ramirez*, 420 F.3d 134,

19   144 (2d Cir. 2005) (quoting *Rodriguez-Moreno*, 526 U.S. at 279; Second Circuit's emphasis).

20   "Underscoring the importance of conduct, the Supreme Court repeated the phrase 'conduct

21   element' three times in the paragraph where it concluded that 'a defendant's violent *acts* are

22
23   ───────────────────

     [3] The government wisely refrains from otherwise relying on *Angotti*. There, the Ninth Circuit
24   held that venue for 18 U.S.C. § 1014, which criminalizes "making a false statement ... for the
     purpose of influencing in any way the action" of certain federal agencies or institutions, lies in
25   the district where the false statements are received, and not only where they originated. 105
     F.3d at 542-44. To so hold, the Ninth Circuit held that "[d]eciding where a false statement is
26   'made' ... requires some analysis of where the statement came from and where it went...." *Id.* at
     543; *see also United States v. Pace*, 314 F.3d 344, 352 (9th Cir. 2002) (venue for crime of making
27   and subscribing a false tax return, 26 U.S.C. § 7206(1), is proper both where the return is made
     and where it is received because the "act of making a false tax return commences when one
28   prepares and furnishes information material to the return and continues until that information
     is received by the IRS."). By contrast, § 1519 does not require that the altered or falsified record
     be communicated to anybody, and a destroyed record cannot even be communicated.

1   essential conduct elements.'" *Id.* (quoting *Rodriguez-Moreno*, 526 U.S. at 280; Second Circuit's

2   emphasis).

3        The Second Circuit in *Ramirez* considered venue for mail fraud, 18 U.S.C. § 1341, and,

4   consistent with the Ninth Circuit, held that "[w]hile a scheme to defraud is certainly one of

5   three essential elements of mail fraud, it is not an essential *conduct* element." *Id.* (court's

6   emphasis); *see Pace*, 314 F.3d at 349 ("Although a fraudulent scheme may be an element of the

7   crime of wire fraud, it is using wires and causing wires to be used in furtherance of the

8   fraudulent scheme that constitutes the prohibited conduct."). As the Second Circuit explained, a

9   scheme to defraud is merely the *mens rea* element of mail fraud, while the misuse of the mails

10  "encompasses the overt *act* of putting a letter into the post office." *Ramirez*, 420 F.3d at 144

11  (internal quotations omitted; court's emphasis). The scheme to defraud is unlike the crime of

12  violence in 18 U.S.C. § 924(c), which *Rodriguez-Moreno* analyzed: "whereas a crime of violence

13  such as kidnaping is an act, and thus may qualify as an essential *conduct* element, for the

14  reasons we have already identified, 'having devised or intending to devise a scheme or artifice

15  to defraud' is not." *Id.* at 146 (court's emphasis). The Second Circuit's conclusion that venue for

16  mail fraud is limited to where the misuse of the wire occurred was "consistent with the

17  Supreme Court's admonition that provisions implicating venue are to be narrowly construed."

18  *Id.* (citing *United States v. Johnson*, 323 U.S. 273, 276 (1944)).

19       Similarly, in *Spivey*, the Fourth Circuit held that venue under SORNA, 18 U.S.C. § 2250(a),

20  is proper in the district of departure and rejected the appellant's argument that interstate

21  travel is merely a jurisdictional predicate. 956 F.3d at 216. The Fourth Circuit explained that

22  the Supreme Court in *Carr v. United States* "held that the element of interstate travel was "the

23  very *conduct* at which Congress took aim,'" and "for that reason, under *Carr*, the element of

24  'interstate travel' is an essential conduct element for a conviction under § 2250(a)." *Id.* (quoting

25  *Carr v. United States*, 560 U.S. 438, 454 (2010); Fourth Circuit's emphasis).

26       In short, the "essential conduct elements" test focuses on the *conduct* constituting the

27  offense. The only *conduct* that § 1519 punishes is, of course, the destruction, alteration, or

28  falsification of the records. Under *Rodriguez-Moreno*, then, venue lies where the obstructive

1    conduct occurred.

2    The government disagrees, claiming that, by enacting § 1519, Congress sought to protect

3    the integrity of criminal investigations and drafted the statute "in terms of the effects of the

4    falsified documents." Opp. at 11. It claims that, because the destruction, alteration, or

5    falsification of the records must be done with obstructive intent, "venue is appropriate in the

6    district where the underlying crime is being investigated, because that is where the effects of

7    any obstructive conduct would be felt." *Id*. at 11.

8    It is true that venue may "be proper where the effects of criminal conduct are felt, *but only*

9    *when an essential conduct element is itself defined in terms of its effects.*" *Bowens*, 224 F.3d at 311

10   (emphasis added). The Fourth Circuit held so in the context of rejecting the government's

11   argument that venue for harboring a fugitive from arrest, 18 U.S.C. § 1071, is proper where the

12   arrest warrant issued because it interferes with the administration of justice in that district. *Id*.

13   The Fourth Circuit acknowledged that its precedent had looked at Congress's purpose to

14   protect the integrity of the judicial system in order to hold that venue for a prosecution under a

15   statute involving obstruction of justice lies wherever the judicial process is affected. *Id*. at 312.

16   But such decisions, explained the Fourth Circuit, "cannot be reconciled with the Supreme

17   Court's later decisions in *Cabrales* and *Rodriguez–Moreno*," which focused exclusively on the

18   conduct constituting the offense. *Id*. Furthermore, in *Cabrales*, the Supreme Court refused to

19   adopt the government's argument that Congress's intent in enacting the money laundering

20   statute was to make the underlying offenses less profitable and also refused to consider the

21   effects of money laundering on the communities victimized by the underlying offenses. *Id*. "The

22   unmistakable import of that refusal is that proper *venue is limited to the place where the*

23   *defendant's criminal acts are committed, without respect to Congress's underlying purposes in*

24   *criminalizing those acts.*" *Id*. (emphasis added).

25   The Fourth Circuit nonetheless acknowledged that "Congress may, consistent with the

26   venue clauses of Article III and the Sixth Amendment, define the essential conduct elements of a

27   criminal offense in terms of their effects, thus providing venue where those effects are felt." *Id*.

28   Congress did so in the Hobbs Act, whose terms "itself forbid affecting commerce in particular

1    ways." *Id.* (citing 18 U.S.C. § 1951 ("Whoever in any way or degree obstructs, delays, or affects

2    commerce or the movement of any article or commodity in commerce," by robbery, extortion,

3    or threats of violence is subject to criminal penalties)). *Id.* at 313. "Similarly, a former version of

4    18 U.S.C. § 1503 prohibited influencing, intimidating, or impeding a witness or influencing,

5    obstructing, or impeding the administration of justice." *Id.* "Because the essential conduct

6    elements were defined not just in terms of the forbidden act, i.e., 'assault' or 'retaliate,' but

7    rather in terms of their effects (intimidation of a witness or obstruction of the administration of

8    justice), venue was proper in the district where those proscribed effects would be felt." *Id.*

9        By contrast, "[t]he essential conduct element of § 1071, 'harboring or concealing a

10   person,' is not defined in terms of its particular effects." *Id.* Although the harboring must be

11   done "so as to prevent his discovery and arrest," 18 U.S.C. § 1071, that language "defines the

12   requisite intent for the offense of harboring, not an essential conduct element." *Bowens*, 224

13   F.3d at 313. The Fourth Circuit therefore concluded that "the possible disruption of the

14   administration of justice in the district issuing the arrest warrant is of no consequence in

15   determining venue for a prosecution under § 1071," which is limited to the district where the

16   harboring occurs. *Id.*

17       *Bowens* teaches an important lesson: under the "essential conduct elements" test,

18   Congressional intent is irrelevant unless it has been translated into the *conduct* that the

19   statutory language prohibits, and not merely the *mens rea* associated with the prohibited

20   conduct. Thus, contrary to the government's argument, Congress did not define the essential

21   conduct elements of § 1519 in terms of their effects. Unlike the Hobbs Act and the former

22   version of § 1513 discussed in *Bowens*, and similar to § 1071, § 1519 "merely proscribe

23   particular acts," and did *not* define "the essential conduct elements in terms of their particular

24   effects, e.g., 'obstructing' or 'impeding' the administration of justice." *Bowens*, 224 F.3d at 313.

25       Thus, the statute does *not* require that the investigation, bankruptcy proceeding, or other

26   federal matter be obstructed or likely to be obstructed. *See id.*; *see also United States v. Marsh*,

27   144 F.3d 1229 (9th Cir. 1998) (crime of "corruptly ... endeavor[ing] to intimidate or impede"

28   certain officers of the United States, 26 U.S.C.A. § 7212, was an attempt offense for which "[n]o

1   effect need be proven," so venue did not lie where the IRS officers were conducting a criminal

2   investigation of the defendants, but only where the "corrupt endeavor" occurred). This

3   conclusion is reinforced by the fact that § 1519 does *not* even require the existence or even

4   likelihood of an investigation or other matter; "the mere fact that the defendant contemplates

5   an investigation satisfies this element." *United States v. Singh*, 979 F.3d 697, 719 (9th Cir. 2020);

6   *see also*, *e.g.*, *United States v. Gray*, 642 F.3d 371, 375-79 (2d Cir. 2011). Needless to say, it is

7   impossible to consider the effects (or even likely effects) of a non-existing, merely

8   contemplated investigation or other matter. In most cases, it is also impossible to determine the

9   location of a non-existing, merely contemplated investigation or other matter.

10       While Congress required that the conduct be done "with intent to impede, obstruct, or

11   influence," 18 U.S.C. § 1519, that language merely defines the requisite *mens rea* for the offense,

12   not the prohibited conduct, just as acting "so as to prevent [the fugitive's] discovery and arrest"

13   under harboring a fugitive for arrest and "for the purpose of executing" a scheme to defraud

14   under mail and wire fraud merely define the *mens rea* for those statutes, but not the prohibited

15   conduct. *See Bowens*, 224 F.3d at 313; *Ramirez*, 420 F.3d at 144; *Pace*, 314 F.3d at 349. And

16   because § 1519 contains no other language that might be construed as an essential conduct

17   element, venue for such a prosecution is proper only where the obstructive conduct occurred.

   **C.  The specific venue provisions in other obstruction-of-justice statutes are irrelevant.**

18

19       The government argues that, in analyzing venue for § 1519, the Court should consider the

20   specific venue provision for 18 U.S.C. § 1512, which it claims it contains "near identical

21   language." Opp. at 13 (citing 18 U.S.C. § 1512(i) ("A prosecution under this section or section

22   1503 may be brought in the district in which the official proceeding (whether or not pending or

23   about to be instituted) was intended to be affected or in the district in which the conduct

24   constituting the alleged offense occurred."). The government claims that Congress enacted §

25   1512(i) in 1988 to resolve a circuit split and to clarify that it had drafted § 1512 in terms of its

26   effects. *Id.* at 14. Because, the government claims, § 1519 was enacted to address gaps in

27   statutes criminalizing obstruction and contains "nearly identical language" to § 1512, venue for

28

1   § 1519 also lies both where the obstructive conduct occurred and the district where the

2   investigation takes place. *Id*. The government's arguments are unavailing.

3          First, a specific venue provision only applies to the offense or offenses it governs, and not

4   to other offenses, no matter how related or similar. For instance, § 1512(i) specifies that it

5   applies not only to the offenses in § 1512, but also those in 18 U.S.C. § 1503, which implies that

6   it does not apply to any other sections in the same chapter. Indeed, the government does *not*

7   argue that § 1512(i) governs 1519, only that the Court infer from one that the same is true for

8   the other.

9          The government's argument rests on the assumption that, in adopting § 1512(i) in 1988,

10  Congress retroactively clarified its original intent to draft § 1512 in terms of its effects, which

11  means that Congress also meant to define § 1519 in terms of its effects when it enacted it in

12  2002. The government, unsurprisingly, offers no authority in support of its multi-layered

13  speculation. As importantly, as the Fourth Circuit explained, whether a statute is defined in

14  terms of its effects is a matter of statutory construction, not Congressional intent. *Bowens*, 224

15  F.3d at 309.

16         The Fourth Circuit also did *not* consider the specific venue provisions in two of the four

17  statutes comprising Chapter 49, Fugitives from Justice, in order to determine the proper venue

18  for § 1071. *See id.* at 309 & n.3. The Fourth Circuit did that for an obvious reason: within

19  Constitutional bounds, Congress is free to define where a crime is "committed." *United States v.*

20  *Salinas*, 373 F.3d 161, 164 (1st Cir. 2004). But where Congress does not do so, courts must

21  determine the locus delicti from the "nature of the crime," not by analogy to Congress's

22  definition of where other crimes are deemed "committed." *Id.*; *see also Bowens*, 224 F.3d at 308.

23         Second, the government's speculation ignores the fact that Congress could have, but chose

24  *not* to, include a venue provision in § 1519. Section 1519 was enacted in 2002, years after §

25  1512(i) was adopted, yet Congress did not make § 1512(i) applicable to § 1519 (as it did for §

26  1503), nor did it include a venue provision in § 1519 itself. Nor did Congress do so in 2008,

27  when it added a venue provision to 18 U.S.C. § 1513 similar to § 1512(i) in a bill that also

28  amended the criminal penalties for § 1512. *See* 18 U.S.C. § 1513(g); Pub.L. 110-177, Title II, §§

204, 205, Jan. 7, 2008, 121 Stat. 2537. This statutory history allows one conclusion only: that when Congress wants to allow venue for obstruction of justice offenses in the district where the justice process is affected, Congress knows how to do that and, indeed, has done it both before and after § 1519 was enacted. Because Congress chose not to do so for § 1519, Congress clearly intended to treat § 1519 differently than §§ 1503, 1512, and 1513.

This different treatment makes sense. Section 1503 applies to conduct committed with intent to obstruct a juror, an officer of the court, or a judicial or grand jury proceeding. *See* 18 U.S.C. § 1503; *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Sections 1512 and 1513 apply to tampering with and retaliation against a witness or party in an "official proceeding," or an informant. *See* 18 U.S.C. §§ 1512, 1513; *see also* 18 U.S.C. § 1515(a)(1) (defining "official proceeding."). For all three, the location of the persons or proceedings these statutes are meant to protect are easily ascertainable: for instance, judicial and grand jury proceedings take place in a certain judicial district; proceedings before Congress take place in Washington, D.C., etc.

By contrast, § 1519 applies, *inter alia*, to a non-existing, contemplated investigation. 18 U.S.C. § 1519. Unlike a judicial proceeding, an investigation is not necessarily limited to one judicial district; in fact, multi-jurisdiction investigations are very common. And a defendant will almost never know all the agencies and people participating in a federal investigation and their locations. Thus, in most cases, a defendant will be unable to ascertain the location of a pending investigation; when an investigation is merely contemplated, the task is impossible. For this reason, allowing venue in the district where an investigation occurs or might occur would mean that a defendant could be dragged into court across the country, despite his ignorance of the risk he's facing, and, for contemplated investigations, would allow the government to manipulate venue by claiming that the investigation might have taken place wherever it is convenient to it. It is therefore unsurprising that Congress chose not to enact a venue provision in § 1519 allowing venue in the district in which the investigation or any other federal matter is pending or might be instituted. In fact, were Congress to enact such a provision for § 1519, it would be contrary to the purposes of the Venue Clause and the Sixth Amendment and potentially unconstitutional. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; *United States*

*v. Lozoya*, -- F.3d --, 2020 WL 7064635, at *2 (9th Cir. Dec. 3, 2020) (en banc) ("The Framers designed a system that requires trial in the vicinity of the crime, to secure the party accused from being dragged to a trial in some distant state, away from his friends, witnesses, and neighborhood.") (internal quotations omitted).

In sum, because Congress enacted specific venue provisions for §§ 1503, 1512, and 1513, but chose not to do so for § 1519, the venue for § 1519 is not proper in the district where the investigation or other federal matter is pending or might be instituted.

### D. Section 1001, which has a materiality requirement, does not inform the question of venue for section 1519, which lacks a materiality requirement.

Finally, the government argues that 18 U.S.C. § 1001 provides additional support for its position, claiming that both § 1001 and § 1519 "describe conduct that is capable of influencing (i.e., having an effect on) a matter." Opp. at 15.

As the government acknowledges, § 1001 "prohibits *materially* false statements." *Id.* Because of this materiality requirement, three circuits have held that venue for § 1001 is proper where the effects of the false statement are felt.[4] The Fourth Circuit, for instance, has explained that "the essential conduct prohibited by the statute is 'making any materially false statement," which "inherently references the effects of that conduct." *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012); *see also United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012) ("[T]he materiality requirement proves dispositive with respect to venue.... Proving the materiality of Vaughn's false statements in Tennessee necessarily requires evidence that those statements were conveyed to or had an effect on the IRS investigators working in the Southern District of New York," making venue proper there); *United States v. Ringer*, 300 F.3d 788, 792 (7th Cir. 2002) ("The Southern District of Indiana's strong link to Ringer's conduct makes it relevant to determining venue . . . as a place where events took place that were necessary to establish materiality.").

---

[4] There is a 3-2 split on this issue, and the Ninth Circuit has not weighed in. *See United States v. Brennan*, 452 F.Supp.3d 225, 235 (E.D. Pa. 2020) (collecting cases). The two circuits in minority have held that venue for § 1001 is only proper where the false statement is originally made. *See id.*

1  Unlike § 1001, § 1519 does *not* have a materiality requirement. *See United States v. Powell*,
2  680 F.3d 350, 355-56 (4th Cir. 2012), *superseded by regulation on other grounds as stated in*
3  *United States v. Carbajal*, 717 F. App'x 234, 240 (4th Cir. 2018) (so holding; "because nowhere
4  does it further say that a material fact must be the subject of the false statement or so much as
5  mention materiality, a natural reading of the full text demonstrates that materiality would not
6  be an element of § 1519" (cleaned up)); *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir.
7  2015) (listing elements of § 1519, which do not include materiality).

8  Contrary to the government's argument, then, § 1519 lacks the very requirement that
9  some circuits found critical to venue for § 1001. Because the statutes are different in this crucial
10  respect, § 1001 does not help the government. *See Salinas*, 373 F.3d at 166-67 (rejecting the
11  government's argument that venue for passport fraud, 18 U.S.C. § 1542, lies in the district
12  where the passport application is processed and rejecting analogy to § 1001 because § 1542
13  does not contain any materiality argument).

14                                              ***

15  Taking the government's allegations in the charging documents as true, the entirety of the
16  essential conduct element underlying Count Twenty-Three occurred in the Western District of
17  Washington. *See* Dkt. No. 1 ¶¶ 17, 51-55; Dkt. No. 53 ¶ 2. The Court should therefore hold that
18  venue does not lie in this district, and dismiss Count Twenty-Three.

19                                      CONCLUSION

20  For the aforementioned reasons, Mr. Abouammo respectfully requests that the Court
21  dismiss Counts Twenty through Twenty-Three for improper venue.

22

23  Dated:    December 16, 2020                    Respectfully submitted,

24                                                 STEVEN G. KALAR
25                                                 Federal Public Defender
                                                   Northern District of California

26                                                        /S
27                                                 ELLEN LEONIDA
                                                   Assistant Federal Public Defender

28