STEVEN G. KALAR
Federal Public Defender
ELLEN V. LEONIDA
Assistant Federal Public Defender
450 Golden Gate Avenue, 19th floor
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: ellen_leonida@fd.org

Counsel for Defendant,
AHMAD ABOUAMMO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF,<br><br>v.<br><br>AHMAD ABOUAMMO;<br>ALI ALZABARAH; AND<br>AHMED ALMUTAIRI,<br>DEFENDANTS. | CR 19-621 EMC<br><br>REPLY TO GOVERNMENT OPPOSITION TO MOTION TO DISMISS COUNTS FOUR THROUGH TWENTY-TWO FOR FAILURE TO STATE AN OFFENSE<br><br>HONORABLE EDWARD M. CHEN<br>DATE: JAN. 6, 2021<br>TIME: 2:30 P.M. |

**1. INTRODUCTION**

An indictment must include a statement "of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Mr. Abouammo has moved to dismiss Counts Four through Twenty-two for failure to state an offense. In opposition, the government misstates the law, misrepresents the language of the Superseding Indictment, and speculates about information not contained in any charging document. Because the government has not alleged sufficient facts to state an offense of wire fraud or honest services fraud, Counts Four through Twenty-two should be dismissed.

**2. The Superseding Indictment Fails to State an Offense of Wire Fraud under 18 U.S.C. § 1343**

   **2.1 The Superseding Indictment Does Not Allege that the Mr. Abouammo Acted with the Specific Intent to Deprive Twitter of Money or Property**

1

CR 19-621 EMC
Reply re. Mot. to Dismiss Counts for Failure to State Offense

In the face of its failure to sufficiently plead that Mr. Abouammo acted with the specific intent to deprive Twitter of money or property as required under 18 U.S.C. § 1343, see *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020), the government makes three arguments: that all intangible data is property; that simply claiming in an indictment that information is "valuable property" transforms it into property for purposes of wire fraud; and that the Superseding Indictment actually claims that Mr. Abouammo engaged in a scheme to deprive Twitter of his salary. All three arguments are unavailing.

### 2.1.1 Non-Public User Information Is Not Property for Purposes of the Wire Fraud Statute

First, the government cites *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987), for the proposition that information is property for purposes of the wire fraud statute. Opposition to Defendant's Motion to Dismiss for Lack of Venue (ECF No. 82) (hereinafter, "Opp.") at 11. In doing so, the government ignores both the language of *Carpenter* and the body of law that subsequently defined the circumstances under which information is property for purposes of wire fraud. As the Eleventh Circuit noted, "the Supreme Court [in *Carpenter*] relied upon two of its prior opinions to hold that confidential business information is property" and "both of these opinions relied exclusively upon state law to define property." *United States v. Shotts*, 145 F.3d 1289, 1293 (11th Cir. 1998) (citing *Carpenter*, 484 U.S. at 26). Consequently, "neither *McNally* nor *Carpenter* define the 'property' protected by the mail fraud statute." *Id*.

Although the government claims that *Carpenter* and "other cases" treat "intangible data as valuable property" for purposes of wire fraud, it cites no "other case" in support of this novel proposition. *See* Opp. at. 11. *Pasquantino v. United States* did not involve data or confidential business information. 544 U.S. 349, 257 (2005). Rather, *Pasquantino* involved a defendant who was illegally avoiding paying Canada's liquor tax when importing alcohol. That case determined that Canada's uncollected taxes were valuable entitlements. *Pasquantino*, 544 U.S. at 356. Canada's right to uncollected tax revenue—"a straightforward 'economic' interest," *id.* at 357—is not analogous to the account information of Twitter users.

2

CR 19-621 EMC
Reply re. Mot. to Dismiss Counts for Failure to State Offense

Nor does the government's position find any support in *United States v. Czubinski*, which the government claims "seemed to concede" that taxpayer information constituted property. *See* Opp. at 11. The government is incorrect. In *Czubinski*, the court noted that, under *Carpenter*, "confidential information *may* constitute intangible 'property.'" *Id.* at 1074 (emphasis added). The court did not further address the issue because it reversed the defendant's wire fraud conviction on the grounds that, regardless of whether the information was "property," merely accessing confidential information did not deprive anyone of it. *Id.* at 1074-75.

The only other, "other case" the government cites for the proposition that information is property is *United States v. Inzunza,* 638 F.3d 1006, 1018 (9th Cir. 2011)—and the government does not analyze that case but simply takes one sentence completely out of context. Opp. at 12. *Inzunza* was a case about politicians taking bribes and the passage the government quotes is written in the context of the court's holding that an independent state law violation is not required to establish the federal crime of honest services fraud. *United States v. Inzunza*, 638 F.3d 1006, 1018 (9th Cir. 2011). *Inzunza* did not address the question of whether information was property. *Id*.

On the other hand, the post-*Carpenter* cases that *have* addressed whether information constitutes property under the mail and wire fraud statutes have held that *state law* controls the definition of property under those statutes. *See e.*g. *Shotts*, 145 F.3d at 1294 & n.8 ("[S]tate law appears to control the definition of property under Section 1341"; "[d]efining a federal crime by reference to state law is an unusual feature of the mail fraud statute"); *Borre v. United States*, 940 F.2d 215, 220 (7th Cir. 1991) (looking to state law to determine whether a television franchise constituted property under the mail fraud statute); *Planned Parenthood Fed'n of Am. Inc.*, 214 F. Supp. 3d 808, 822 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir.), *and aff'd*, 735 F. App'x 241 (9th Cir. 2018) (citations omitted) (holding that whether information is property for purposes of the mail and wire fraud statutes "must be determined by reference to applicable state laws.")

The government's cited authorities do not support its position and the government has made no effort to address the body of case law that has developed in the aftermath of *Carpenter* to address precisely this question. California law does not recognize a property interest in non-trade secret, non-public information. *Planned Parenthood*, 214 F. Supp. 3d at 823; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010) ("Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen."), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). User account information maintained by Twitter is not trade secret information under California law (nor is it alleged to be). As such, the user account information maintained by Twitter that the government alleges Mr. Abouammo accessed is not property under the wire fraud statute.

### 2.1.2 The Government Cannot Transform Information into Property for Purposes of Wire Fraud by Calling it Property in a Pleading

Second, the government asserts that referring to information as "property" is a "factual allegation" that transforms information into property for purposes of Section 1343. Opp. at 12. That is contrary to the law. *See e.g., SunPower Corp. v. SolarCity Corp.,* No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 ("Having reviewed the Complaint, the Court concludes that, notwithstanding SunPower's labeling of its non-trade secret information as 'proprietary', SunPower has failed to allege facts sufficient to show that SunPower has property rights in its non-trade secret information.") The government cannot simply say that information is property but must allege facts which, if proven, would make it so. The government has not alleged any such facts, because it cannot.

Nor can the government transform information into property for purposes of the wire fraud statute by virtue of speculation about Twitter's "business model" and Mr. Abouammo's former job responsibilities. *See* Opp. at 12. The Superseding Indictment does not contain any allegations about "the revenue model of social media companies" that would cure the defect in the government's pleading. *See Id.*

4

CR 19-621 EMC
Reply re. Mot. to Dismiss Counts for Failure to State Offense

### 2.1.3 The Superseding Indictment Does Not Allege that Mr. Abouammo Engaged in a Scheme to Defraud Twitter of His Salary

The government also claims that Mr. Abouammo's continued receipt of his salary demonstrates a specific intent to deprive Twitter of its money. Opp. at 16. That "scheme" is not alleged in the Superseding Indictment. Moreover, the Superseding Indictment fails to allege that Mr. Abouammo did not continue to perform his job capably. As in *United States v. Czubinski*, there is no allegation that Mr. Abouammo "failed to carry out his official tasks adequately" and thus, alleges no theft of money related to his salary. *See* 106 F.3d 1069, 1077 (1st Cir. 1997).

The government also suggests that the value that Foreign Official-1 placed on Mr. Abouammo's access of user information maintained by Twitter somehow demonstrates that Mr. Abouammo acted with a specific intent to deprive Twitter of its money. Opp. at 16. The government does not—and cannot—cite any authority for this proposition. Indeed, the government's own allegation is that Foreign Official-1 continued to provide money to Mr. Abouammo after he left Twitter, which belies its claim that the money was provided because of his position at Twitter.

### 2.2 The Superseding Indictment Does Not Allege that Mr. Abouammo Made a Material Misrepresentation or Omission

The Superseding Indictment also fails to state a wire fraud offense against Mr. Abouammo because it does not allege that he made a material misrepresentation, concealment, or omission, as required to state an offense under 18 U.S.C. § 1343. The government claims that the allegations in the Superseding Indictment sufficiently allege "material omissions" based on Mr. Abouammo's failure to report to Twitter that he received gifts of a watch and money exceeding the amount permitted in Twitter's "Gift Policy." *See* Opp. at 12. The government asserts that the Superseding Indictment "keys those bribes" to Mr. Abouammo's access of two users' account information and communications with Foreign Official-1. *Id.*

However, to avoid dismissal, the Superseding Indictment must allege a duty to disclose to Twitter the circumstances underlying the receipt of those gifts (e.g., that they

5

were allegedly payments for accessing non-public user information) and that Mr. Abouammo breached such an alleged duty. *See United States v. Lonich*, 2016 WL 324039, at *8 (N.D. Cal. Jan. 27, 2016). The Superseding Indictment fails to do so.

The government argues, with a great deal of fervor but no factual or legal support, that Twitter's "Gift Policy" would have required Mr. Abouammo to tell Twitter about his alleged disclosure of information to Foreign Official-1. Opp. at 14. The government's reliance on *United States v. Dowling*, to argue that the Ninth Circuit has held that "a violation of a duty to disclose satisfies the material omission theory of wire fraud," is misplaced. Opp. at 17 (citing *Dowling*, 739 F.2d 1445, 1449-50 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985)). In *Dowling*, the defendant's nondisclosure was a breach of an explicit statutory disclosure duty under the Copyright Act *and* that act required him to disclose that he intended to manufacture and produce Elvis Presley bootlegs in violation of the act. 739 F.2d at 1449-50. The Superseding Indictment in this case makes no such claim. Rather, as alleged in the Superseding Indictment, the "Gift Policy" would have required Mr. Abouammo only to bring the gift itself to the attention of management and to return the gift to the sender. Superseding Indictment, Dkt. No. 53, at ¶ 16. The Superseding Indictment does not allege that Mr. Abouammo breached any statutory duty to disclose information to Twitter, nor that he was under an obligation to disclose anything other than the fact that he received gifts.

Undeterred by the language of its own indictment, the government then argues that, "[i]f Defendant thought that he only had to disclose the gifts and not their source, his omission is all the more material and willful." Opp. at 14. Again, the government is speculating about facts outside of the Superseding Indictment. Mr. Abouammo's understanding of the Gift Policy has nothing to do with whether the government has sufficiently stated an offense in its pleading—and the Superseding Indictment alleges neither that Mr. Abouammo acknowledged Twitter's Gift Policy nor that it would have required him to disclose any details about the gifts he received.

Finding no support in facts or law, the government turns to the metaphysical, claiming that Mr. Abouammo deprived his supervisors of the opportunity to investigate his receipt of gifts, which is "the essence of fraud." Opp. at 14. In order to avoid dismissal the government must plead facts sufficient to allege the elements of fraud, however, not its essence. It has failed to do so in this case.

### 3. The Superseding Indictment Fails to State an Offense of Honest Services Wire Fraud Under 18 U.S.C. §§ 1343 and 1346.

The government does not differentiate between a private employee's criminal and non-criminal acts in violation of an employment policy or contract. Instead, the government assumes that Mr. Abouammo's alleged violations of Twitter's policies rise to the level of criminal behavior, and it responds to Mr. Abouammo's arguments otherwise by repeatedly claiming they are factual challenges best resolved at trial. Opp. at 19-21. Mr. Abouammo is not, however, asserting "factual challenges" at this point. Rather, Mr. Abouammo's challenge is a legal one: the Superseding Indictment does not plead facts that, even taken as true, would transform his alleged violations of Twitter's employment policies into federal crimes. *See United States v. Sun-Diamond Growers of California*, 138 F.3d 961, 973 (D.C. Cir. 1998); *United States v. Keuylian*, 23 F. Supp. 3d 1126, 1128 (C.D. Cal. 2014); *United States v. Nosal*, 2009 WL 981336, at *8 (N.D. Cal. Apr. 13, 2009)).

### 4. CONCLUSION

Because the Superseding Indictment fails to state an offense for either wire fraud or honest services fraud, Counts Four through Twenty-two should be dismissed.

Dated: December 16, 2020

Respectfully submitted,
STEVEN G. KALAR
Federal Public Defender

/S/

ELLEN V. LEONIDA
Assistant Federal Public Defender