Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

```
UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,          )
   VS.                            )    No. 19-cr-00621-EMC
                                 )
AHMAD ABOUAMMO,                   )
                                 )
              Defendant.          )    San Francisco, California
_____)    Wednesday, January 6, 2021
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**  (By Zoom Webinar)

For Plaintiff:            DAVID L. ANDERSON
                          UNITED STATES ATTORNEY
                          450 Golden Gate Avenue, 11th Floor
                          San Francisco, California  94102
                 **BY:  COLIN SAMPSON
                          ASSISTANT UNITED STATES ATTORNEY**

                          U.S DEPARTMENT OF JUSTICE
                          National Security Division
                          950 Pennsylvania Avenue, NW
                          Washington, D.C.  20530-0001
                 **BY:  BENJAMIN HAWK
                          TRIAL ATTORNEY**

For Defendant:            STEVEN KALAR
                          Federal Public Defender
                          450 Golden Gate Avenue
                          Room 19-6884, Box 36106
                          San Francisco, California  94102
                 **BY:  ELLEN LEONIDA
                          DEPUTY FEDERAL PUBLIC DEFENDER**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
                Official Reporter, U.S. District Court

1    **Wednesday - January 6, 2021**                    **2:39 p.m.**

2                         **P R O C E E D I N G S**

3         **THE CLERK:**  Calling Criminal Action 19-621, United

4    States versus Ahmad Abouammo.

5         Counsel, please state your appearances for the record,

6    beginning with government.

7         **MR. SAMPSON:**  Good afternoon, Your Honor.  Colin

8    Sampson and Benjamin Hawk for the United States.

9         **THE COURT:**  Okay.  Good afternoon, Mr. Sampson,

10   Mr. Hawk.

11        **MS. LEONIDA:**  Good afternoon, Your Honor.  Ellen

12   Leonida appearing with Mr. Abouammo.  And we're both appearing

13   by Zoom, and consent to appear in this manner, in light of the

14   pandemic.

15        **THE COURT:**  All right.  Thank you, Ms. Leonida.

16        And good afternoon, Mr. Abouammo.

17        **THE DEFENDANT:**  Good afternoon, Your Honor.

18        **THE COURT:**  All right.  We have four motions on this

19   afternoon that have been filed by the defendant, so why don't

20   we just go through those.

21        The first one that was filed challenges venue of this

22   Court.  And the venue issue arises with respect to two groups

23   of charges.  First is the money laundering, and then the -- the

24   obstruction of justice/falsification of records issue.

25        So let me start with the money laundering question.  It

1    seems to me the question boils down to where the defendant

2    conducted the alleged money-laundering transaction.  And

3    "conduct" is defined under subsection(c)(2) of the statute to

4    mean:

5             "Initiating, concluding or participating in

6             initiating or concluding a transaction"

7    Which is pretty broad.  And the government cites the *U.S.*

8    *versus Gold* case to say that, you know, it's not just where the

9    money went in physically and which account, but where the

10   participant was when that person initiated the transfer,

11   ordered the transfer.

12        And so it seems to me -- and then you also have the -- the

13   District Court *Liersch* case where the defendant gave

14   instructions to move money from one country to another.  And

15   that was considered conducting a transaction.  And where a

16   transaction is conducted is one basis for venue under 1356(i).

17        So I guess I would like to hear from you, Ms. Leonida.

18   Why wasn't this transaction, at least, as alleged -- and I know

19   there's a question about at some point Mr. Abouammo moved to

20   Seattle, and therefore, even if he used the government's

21   construct of "conducted," if he was in Seattle at the time he

22   directed the transfers, then there would not arguably be venue.

23   But there were certain transfers which happened which allegedly

24   were ordered while Mr. Abouammo resided in this district.

25        So why isn't that sufficient for venue?

1        **MS. LEONIDA:**  Well, Your Honor, two of the three

2    transfers were allegedly conducted after the government

3    alleges in Paragraph 2 of the superseding indictment that

4    Mr. Abouammo had moved to Seattle.  That paragraph asserts

5    that he lived in Seattle after May 22nd of 2015.  So the

6    superseding indictment feels to allege for those two

7    transactions that he lived in this district when they were --

8    when they were conducted.

9        And then regarding the other one, our position is that the

10   government does not specifically allege that either the

11   transactions were conducted in this district because the money

12   went through banks in this district or that he was physically

13   present in this district when he conducted them, even though it

14   does allege that he lived in this district.

15       But again, for the two latter transactions, by the

16   government's own allegations, Mr. Abouammo was not in this

17   district.

18       **THE COURT:**  All right, what's the response to that?

19   On the fact that at least as to two transactions, that the

20   indictment alleges that Mr. Abouammo had moved out of the

21   area?

22       **MR. HAWK:**  Yes, Your Honor.  The date specified in

23   Paragraph 2, prior to, it says "at least."  And it probably is

24   a little inartful.  The dates mirror the defendant's

25   employment at Twitter.  But it's our position that he did not

1    move the exact date that he left his employment at Twitter,

2    which was on or about May 22nd.  He continued to reside in

3    Walnut Creek, in the Northern District, from a certain point

4    in time after that.  And so it's our position that those

5    transactions, Mr. Abouammo participated in them while he was

6    still in the Norther District.

7         And to the extent that there's any factual dispute about

8    exactly when he moved and where he was at, that's best resolved

9    by the jury.

10         **THE COURT:**  How do we -- the indictment has

11    expressed, it says he's a dual citizen, resided in Walnut

12    Creek from at least -- that means as early as, to me --

13    November 2013 until May 22nd.  I don't know if the "at least"

14    applies to the May 22nd.

15         Is that what you're saying, the "at least" means

16    approximately?

17         **MR. HAWK:**  I believe that was our intent, Your Honor.

18    I don't have the paragraph in front of me.  But there's a

19    subsequent paragraph I can identify for Your Honor that

20    discusses his employment, that uses those exact same dates.

21         And so it's our position that Mr. Abouammo -- that the

22    evidence at trial will prove that Mr. Abouammo remained and

23    continued to reside in Walnut Creek during those transactions,

24    or at least, was present during those transactions.

25         **THE COURT:**  What is the government's position as to

1    when he moved to Seattle, then, if it wasn't May 22nd?  What

2    is the government's position?

3            MR. HAWK:  Your Honor, at this point in time, I

4    believe at least some of the evidence at trial will show, you

5    know, between financial records and other evidence and leasing

6    agreements, or at least, rent being paid for his apartment,

7    that he continued to reside in Walnut Creek at least through

8    the end of June, and perhaps after that.

9            He did not purchase -- or at least my understanding or

10   memory of the evidence, he did not purchase an apartment in

11   Seattle until August.  And that's in part what that $30,000

12   transfer was for.  It was for a down payment for an apartment

13   in Seattle.  That's the third count, money laundering,

14   Your Honor.

15           THE COURT:  And what are the dates of the -- let's

16   see -- of the transfers that are subject of the 1956 --

17   February --

18           MR. HAWK:  The charges, Your Honor, are March 10th.

19   On or about March 10th is Count 20.  Count 21 is on or about

20   June 11th, 2015.  And then Count 22 is on or about July 2nd,

21   2015.

22           And those, Your Honor, are the dates of the wire transfer.

23   Not necessarily -- it's our position that, you know, with the

24   "on or about" language, that Mr. Abouammo initiated those

25   transactions at a period of time before then.

1    **THE COURT:**  Well, if the indictment is not clear, and

2    is ambiguous, and -- you would agree that venue over the wire

3    transfers would turn on where he was at the time he caused or

4    initiated or conducted the transaction.

5    Right?

6    **MR. HAWK:**  Correct, Your Honor.

7    **THE COURT:**  Would it be -- wouldn't one solution be

8    to file a bill of particulars to clarify that Paragraph 2?  If

9    you're saying "at least" really means possibly earlier than,

10   and possibly later than?

11   I mean, that's -- that seems to me fairly critical, in

12   terms of clarity and notice to the defendant what you're

13   alleging here.

14   **MR. HAWK:**  Your Honor, apologies.  If I can just have

15   your -- the Court's indulgence for one moment?

16   **THE COURT:**  Sure.

17   (A pause in the proceedings)

18   **MR. HAWK:**  I would just like to add, Your Honor --

19   and I will address Your Honor's question and point that you

20   are expressing.

21   But prior to Paragraph 1, it does indicate that all dates

22   and times are approximate, in terms of sort of the dates

23   alleged in Paragraph 2 and otherwise.

24   But -- yes, Your Honor.  I mean, we agree that he -- to

25   prove venue, at least under our current theory, he would have

1  had to have been present when he participated in some part of

2  the initiation of those transactions.  And you know, again, we

3  believe that the proof at trial will be that he was present

4  through on or about July 2nd, when that last wire transfer

5  occurred.

6          **THE COURT:**  Okay.  But given the significance and the

7  question of venue, you know, it's something that, frankly,

8  ought to be resolved, if it can be, more quickly.  And I guess

9  I'm asking you, is, one procedural way to resolve this is to

10  have the government file a bill of particulars and be more

11  specific about its allegations, so we can adjudicate.

12      It may be that some of these -- Counts 21 or 22 or -- may

13  have to fall out.

14          **MR. HAWK:**  If that's the course that Your Honor

15  thinks is best.  We've also provided defense counsel with the

16  discovery, and the financial records, and other evidence that

17  indicate that Mr. Abouammo was in the district at those times.

18      But if Your Honor believes that we should do a bill of

19  particulars, I think we can certainly clarify that it's our

20  belief that through that on-or-about date of July 2nd,

21  Mr. Abouammo was in the district when he participated in the

22  initiation of those wire transfers.

23          **THE COURT:**  All right.

24      Ms. Leonida, your response?

25          **MS. LEONIDA:**  I think a bill of particulars would be

1    appropriate.  We did file a bill of particulars regarding

2    venue earlier in this case.  And in response to that, the

3    government claimed that venue was appropriate in this

4    district, because Twitter was located in this district.  And

5    Mr. Abouammo lived here for part of that time.

6         So I think a bill of particulars would be appropriate

7    regarding this new theory.

8              **THE COURT:**  All right.  Well, given the allegations

9    in the superseding indictment here, with respect to -- I guess

10   what's really at issue are Charges 21 and 22.  20 is clearly

11   within the four corners of the indictment as alleged,  and I

12   don't think that is an issue.  And based on my understanding

13   of the law, it is not a venue problem.

14        But 21 and 22, I would like the government to file a bill

15   of particulars, to state with specificity what the basis for a

16   venue is.  And if you are going to allege that he did continue

17   to reside here at that time, I think there ought to be some

18   specificity then.

19             **MR. HAWK:**  Yes, Your Honor.

20             **THE COURT:**  All right?  I assume you have produced

21   discovery to back that up, too.  I mean, you know, whatever

22   allegations there are, there ought to be production of

23   discovery so we can take care of -- at least, the defendant

24   will know what the issues are.

25        So with respect to the other count, which is the

1  falsification of records, the question there is whether or not

2  you can have, under 1519, venue based on where the effects are,

3  i.e., the effect on where the investigation is -- the effected

4  investigation was taking place, as opposed to the actual act of

5  alleged obstruction.

6       And, you know, I've read the briefs.  My view is that this

7  is one of those statutes where effects is appropriate because

8  there does have to be an intent to obstruct, quote, "an actual

9  or contemplated investigation by the United States."  It does

10  say "an actual or contemplated," so it does contemplate

11  something quite specific.  It may be that the investigation

12  hadn't quite commenced.  It's contemplated, or more likely,

13  it's actual, as was the case here.

14       But that makes this statute, I think, similar to both 1001

15  and 1512.  I understand 1512 does have a specific venue

16  decision in (i) that makes it very clear that if there's a

17  legal proceeding like a trial, and there's witness tampering,

18  venue can lie where that trial is.  But it clearly talks about

19  an effects type approach.

20       And although Section 1512 has an express venue provision

21  in (i), which may be, on its face, one ground to distinguish

22  1519 that doesn't have an explicit venue provision, it is the

23  fact that prior to the amendment in 1988, it didn't have that

24  provision.  And that (i) was added to address a split of

25  authority on the question of proper venue, and is meant as a

1    clarification.  And so that the fact that (i) was added to that

2    particular statute does not vitiate the analog between 1519 and

3    1512.

4         I think 1001 also looks to the effects of the false --

5    where the false statements are felt.  And although it is not

6    obstruction of justice, I think it is analogous enough.  So it

7    does seem to me that because that this is really not just

8    making a false statement or altering something here, it's

9    done -- it's making a statement or doing something with the

10   intent to obstruct an investigation.  And the fact that it is

11   an investigation, actual or contemplated, means it is -- has to

12   be tied to something concrete.

13        So this is not one of those statutes where, you know,

14   somebody is trying to use the effects test for something very

15   amorphous, that doesn't have an impact on a discrete

16   proceeding, discrete trial, discrete investigation.  Here,

17   Section 1519 does contemplate something discrete, because it

18   uses the word "an actual," not just some amorphous idea.  So

19   the effects is going to be much more concrete, localized and

20   specific, and therefore, the basis of venue more discernable,

21   just as it is under 1512, and 1001.

22        Finally, I will note that the fact that it applies -- the

23   statute applies to a contemplated investigation does not

24   vitiate the venue analysis because 1512 also contemplates

25   proceedings that need not be pending or about to be instituted

1    at the time of the offense, so there need not actually be an

2    actual or pending proceeding under 1512.

3         I think the main idea is that when you're trying to

4    protect an investigation, a proceeding, a transaction with the

5    government, if the effect is felt, and it's discrete and

6    discernable, that that is a basis for venue.  And so I do find

7    that the -- I'll call it the "effects test" -- does apply here.

8         So I find that there's venue here, but with respect to

9    Counts 21 and 22, the -- the allegations of the indictment are

10   not sufficiently clear, and I'm going to order a bill of

11   particulars in that regard.  And require that discovery, if

12   there is any remaining discovery in that regard, be produced so

13   we can take care of that issue.

14        Okay.  So the second question is a time-bar question.  And

15   that turns on this language about an information being

16   "instituted" within the time limitations, as opposed to

17   "filed."  I guess -- I'm not sure what it means -- I mean, what

18   is the significance of Congress's use of the term "instituted"?

19        Let me ask the government that, because I think the

20   defendant sort of raised this question, that that means

21   something.  And I'd like to get the government's take about

22   that term "instituted."

23             **MR. SAMPSON:**  Yes, Your Honor.  Well, I think I would

24    point out first that 3288 does not use the word "instituted."

25    It just refers to an indictment or an information.  With

1   respect to 3282, Congress did use the word "instituted."

2        I think that this comes down to, you know, what -- there's

3   no direct authority guiding Your Honor other than the

4   persuasive authority of *Burdix-Dana* and the other cases that

5   have followed it that determines that "instituted" does not

6   mean waived, because that would render an unwaived information

7   essentially a nullity.

8        And so although I think Congress could have said "a waived

9   information," they said "instituted."  And the government's

10  view is that means that the information is filed, and not

11  sealed.

12       I can get further into it when it comes to the *Sharma* case

13  and the *Machado* (Phonetic) case cited as authority by

14  defendant.

15            THE COURT:  So filed, but not sealed?

16            MR. SAMPSON:  Well, Your Honor, with respect to

17  *Sharma*, which is the Southern District of Texas case, they --

18  which is one of the two cases that determined that the

19  information was -- an information without a waiver was not

20  sufficient --

21            THE COURT:  Right.

22            MR. SAMPSON:  -- under 3282, the Court found, one,

23  that 3288 was not applicable, which is a difference from this

24  case.  They found a lack of exigent circumstances, which the

25  government alleges are abundant here.

1        And they also found that the question of sealing, they

2   said (As read):

3              "In the case at bar, neither defendant was arrested

4              or notified that a sealed information had been filed

5              against them until after the government contacted

6              their counsel..."

7        Which is to say at a time after the five years had run.

8              "The government did not..."

9        Sorry?

10        **THE COURT:**  Yeah.  So there's a notice problem.  When

11   it's sealed and there's no notification.  That's one of the

12   purposes of filing within the limitations period.  One could

13   argue -- and I think the defendant has -- there's a further

14   argument, that it means that you're going to actually bring

15   the matter, because evidence gets old, witnesses -- you know,

16   memories fade.

17        So even giving notice without a commitment to actually

18   going forward is not necessarily, you know, fulfilling all the

19   kind of values of a statute of limitations.  But clearly,

20   notice is certainly one of them.  And that's your point about

21   the *Sharma* case, why it's different.  There was no notice.

22        **MR. SAMPSON:**  That's right, Your Honor.  And I think

23   you're referring to the *Toussie* case, where the concern is

24   that the basic facts have been obscured by the passage of

25   time, and to minimize the danger of official punishment

1    because of facts in the far-distant past.

2         There's no allegation here, Your Honor, by the defense

3    that there is the prejudice that the statute-of-limitations

4    concerns hit on.  That is, the government promptly, within a

5    day of, you know, no -- no further tolling, at a time when the

6    grand jury was out of session, the government promptly filed

7    the information, did it publicly, did not do it under seal.

8         And there's just no allegation that there is a concern

9    that evidence has been lost or witnesses' memories have

10   degraded in that intervening time, Your Honor.

11        **THE COURT:**  Well, let me ask you something.

12        If a matter is initiated by way of information, not by

13   indictment, under Rule 5.1 you've got to have a preliminary

14   hearing within either 14 days or 21 days, at least for purposes

15   of -- what, detention or other matters.

16        Maybe this is sort of Criminal Procedure 101.  But, is it

17   correct that a matter cannot proceed to prosecution, even if a

18   preliminary hearing is held and the defendant is bound over

19   under Rule 5.1?  That you still need an indictment in order to

20   go further?

21        **MR. SAMPSON:**  In a felony case, yes, Your Honor.

22        **THE COURT:**  So the purpose of the preliminary hearing

23   under Rule 5.1 is really just kind of the test?  The adequacy

24   of the information which can't be used for prosecution, but I

25   guess can be used for a base for detention?  Is that the --

1    **MR. SAMPSON:**  I believe that's correct, Your Honor.

2    And *Burdix-Dana* held -- and I believe its authority is

3    persuasive, as well as Judge Davila's following the

4    *Burdix-Dana* in the *Holmes* matter -- that "instituted" does not

5    mean able to prosecute.  It does not mean that you're able to

6    go trial on the charges.  It means something less.  Or, the

7    statute -- this is my argument -- the statute would have said

8    that it had to be a waived or prosecutable information.

9    And 3282 does --

10   **THE COURT:**  Right.  There's argument that Congress

11   could have easily, if it intended to say -- made reference to

12   a -- waived or unwaived, those words could have been easily

13   inserted.

14   **MR. SAMPSON:**  And I believe, Your Honor, at 3288, a

15   prior version that was attached to the defendant's brief

16   actually -- I believe it said that it did have to be waived.

17   And the current version does not.

18   **THE COURT:**  Is that correct?  It used to say it had

19   to be waived?

20   **MR. SAMPSON:**  I'm checking Your Honor, with the

21   Court's brief indulgence.

22   Your Honor, perhaps it was not actually attached to the

23   defendant's brief.  I think -- it was a -- I believe it was a

24   1963 version of 3288.

25   **THE COURT:**  Do you know, Ms. Leonida?  Is that true?

1          **MS. LEONIDA:**  Your Honor, with respect to the 3288

2     argument, I think what's more relevant is the *Clawson* decision

3     which held that a lack of waiver -- that when the statute says

4     that where the reason for the dismissal was the failure to

5     file the indictment or information within the period

6     prescribed, or some other reason that would bar a new

7     prosecution, that the Ninth Circuit has held that that is

8     interpreted as a defect incapable of being cured.

9          So I don't think that 3288 applies in this case, under any

10    circumstances.

11         **THE COURT:**  Well, it sort of begs the question.  If

12    it was untimely in the first place, you can't revive it by

13    using 3288.  I think that's the gist of 3288.  But if the

14    initial anchor was timely filed, then you can dismiss it, so

15    long as you refile, you know, properly within six months or

16    whatever it is.

17         But the big question is whether that original anchor, that

18    predicate step, was timely here.  And if the original 3288

19    allowed for -- made reference to the anchor being a

20    timely-filed information waived, subject to a waiver, and then

21    that was removed?

22         Is that what you're saying, Mr. Sampson?

23         **MR. SAMPSON:**  Yes, Your Honor.  I'm looking at it

24    now.   This is 78 Stat. 699, I believe it's 1964.  The version

25    of 3299 stated (As read):

1          "Whenever an indictment is dismissed for any error,

2          defect or irregularity with respect to the grand

3          jury, or an indictment or information filed after the

4          defendant waives in open court, prosecution by

5          indictment is found otherwise defective or

6          insufficient for any cause."

7      It goes on, Your Honor.

8      So the current version of 3288 has been amended.  I

9  believe it was 1988.  And it does not require those words,

10  "defendant waives in open court."

11      So I would suggest that the current version of 3288, which

12  just says an indictment or information is dismissed and then an

13  indictment is returned within six months is applicable, and

14  demonstrates Congress's intent.

15          THE COURT:  All right.  Was that in your reply?  I

16  must have missed that.  This change in the wording of 3288?

17          MR. SAMPSON:  I don't believe, Your Honor, the

18  government discussed that change.  I believe that I found that

19  provision because it was cited in the defense brief.

20          THE COURT:  Oh.  Okay.  Well, that underscores the

21  Seventh Circuit's decision in *Burdix-Dana* to a certain extent,

22  at least the conclusion.

23      It seems to me that we've got one Circuit authority on

24  point, no Circuit authority going to the contrary.  You've got

25  maybe a bit of divided but not very well-divided District Court

1    decisions.  I find that my colleague Judge Davila, in *Holmes*,

2    followed *Burdix-Dana*.

3         And it just makes sense.  Because I think the purpose of

4    making sure that that predicate to 3288 is a timely-filed

5    instrument under 3282, I think the predicates -- why you have

6    the statute of limitations are fulfilled where you have an

7    open, non-sealed information that sets forth the detail.

8         Rule 7 of the Rules of Criminal Procedure require the same

9    amount of information in an information as it does an

10   indictment.  It treats them both the same.  The level of

11   specificity is the same.  It is subject to a motion to dismiss,

12   should the defendant want to challenge it.  And it doesn't last

13   forever.  I mean, you know, it -- once it's filed, stuff

14   happens.  And certainly, under 3288, if it's dismissed, you

15   only have a certain amount of time to file an indictment or to

16   have an indictment returned.

17        So there are -- there are limitations to it, to, I think,

18   prevent sort of the -- using it as an excuse to elongate an

19   investigation.

20        And the fact that, you know, it's subject to a preliminary

21   hearing under Rule 5.1 within 14 days if in custody, 21 days if

22   out of custody, it has real-world consequences.  And it does

23   have the fact of informing.

24        And given the limitations and the time limits that are

25   imposed that things have to happen, I think it has a functional

1  role in the prosecution so as to satisfy the

2  statute-of-limitations policy concerns.

3      So I deny the motion to dismiss on the basis of

4  timeliness, because I think that the information was

5  timely-instituted within the meaning of 3282.  And therefore,

6  the replacement by indictment under 3288 was also timely.

7      That brings us to the failure to state an offense.  I

8  guess the one area where I'm a bit confused is if you're going

9  to rely on property being deprived -- and in this case it was

10  confidential user information, right, is the alleged property

11  of Twitter that was procured and then disseminated, contrary to

12  policy.

13      The defendant strenuously argues that you -- what is

14  property written the meaning of the wire fraud federal law,

15  you've got look at state law.  In this case, California law.

16  And the defendant argues that under California law, something's

17  got to be a trade secret, intangible property's got to be a

18  trade secret, otherwise it's not property under California law.

19      Why isn't that correct?

20          **MR. SAMPSON:**  Your Honor's question is for me?

21          **THE COURT:**  Yeah.

22          **MR. SAMPSON:**  Well, Your Honor, there are -- there's

23  a large line of cases, including *Carpenter*, Your Honor, which

24  finds that companies are defrauded of their information

25  despite its intangible nature.  And Your Honor, they're not

1    trade secret cases.  These are cases involving information

2    that a company holds and keeps, that it derives value from.

3          In that case, I believe it was the *Wall Street Journal* had

4    information about the timing of their articles coming out.  And

5    that's very similar here, Your Honor, to information that is

6    not publicly available, is not -- it is protected in databases,

7    accessible only to employees.  And it may or may not be a trade

8    secret.  The government doesn't allege it here.

9          But Your Honor, there's no case, there is no authority in

10   the Ninth Circuit or, I believe, elsewhere -- there is -- I

11   believe it's an Eleventh Circuit case cited by the defense --

12   that says that there's -- I'm sorry, Your Honor.  There's no

13   case that says that the property must be a trade secret.

14         And Your Honor, there is another criminal statute that

15   would apply and almost render intangible property fraud cases

16   nonexistent under wire and mail fraud.  And that's the trade

17   secret theft statute, 1832.  And so, Your Honor, the government

18   certainly potentially could argue that it -- the property is a

19   trade secret because it's reasonably protected, and derives

20   independent economic value.  Of course, Congress defines that

21   property right.  That is not subject to a state-law

22   interpretation.

23              **THE COURT:**  How do you -- so do you take issue with

24   *Planned Parenthood*, the District Court's decision that the

25   defendant relies on, which is cited for the proposition that

1    the property must be determined by references to applicable

2    state laws?  And you look at California state law, and says

3    it's basically got to be either a trade secret or something

4    else protected under some positive statutory law?

5              MR. SAMPSON:  Your Honor, I believe that that was --

6    that one is a civil case, not that that's particularly

7    differentiating.  But I would say that it was -- it was a

8    failure to properly plead the nature of the property.

9         And here, Your Honor, the government does allege that it's

10   property.  We allege that it has value.  We describe how the

11   company policies try to keep and protect that information from

12   disclosure.

13        And just because the defendant would argue that state law

14   defines the property right does not mean that we have not

15   properly alleged that it is valuable property, intangible

16   property, such that it is, for purposes of the wire fraud

17   statute.

18        And so, Your Honor, I -- there are classes of property.

19   And in *Carpenter*, the -- I believe it was the Supreme Court

20   determined that intangible property is property subject to the

21   fraud statute.  And they focused on the harm to the victim and

22   the gain to the defendant.  And in this case, the property had

23   economic value.  He was paid to attempt to obtain and provide

24   it.

25        And, I don't believe the government has to allege in an

1  indictment each and every element of the State of California's

2  definition of the property right in order for the government to

3  succeed on a motion to dismiss.

4            THE COURT:  Ms. Leonida, two questions.

5       What about *Carpenter*?  And two, isn't customer information

6  a classic form of -- even if you did have to go to trade secret

7  law, that seems like that's a classic trade secret type of

8  property.

9            MS. LEONIDA:  Well, Your Honor, *Carpenter* does not

10  transform all information into property.  And the cases that

11  have interpreted property for purposes of the wire fraud

12  statute subsequent to *Carpenter* have said that that's a

13  definition where the Court has to look at state law.

14       And I think *Planned Parenthood* is exactly on point.

15  *Planned Parenthood* addressed the wire fraud statute.  And one

16  of the --

17            THE COURT:  What law did the Supreme Court look to in

18  *Carpenter*, to determine that confidential business information

19  was property?

20       Did it look to local state law?

21            MS. LEONIDA:  In *Carpenter*, the Supreme Court

22  actually cited to cases that did look at state law.  Let me --

23  I'm sorry.  I can refer the Court to that.

24       So I guess the answer is yes, in *Carpenter* the Supreme

25  Court did cite cases that prior to *Carpenter* had looked at

1  state law for the definition of property.  And the *Shotts* court

2  did the same, and *Planned Parenthood* did the same in this

3  district.  Any information cannot be automatically transformed

4  into property just by citing *Carpenter*.

5      And I think notably, one of the pieces of information that

6  the -- that *Planned Parenthood* addressed was actually

7  confidential information about people, which is similar to what

8  the government is claiming is property here.  And in *Planned*

9  *Parenthood*, because that was not transformed into property

10  under state law, the court held that it wasn't property for

11  purposes of the wire fraud statute.

12      **THE COURT:**  All right.  But here, it's customer

13  information.  Right?  User information, Twitter.  Isn't that

14  classic sort of trade secret property under -- whether it's

15  under California or the Uniform Act, or probably under the new

16  federal statute?

17      **MS. LEONIDA:**  I -- I don't believe it is, Your Honor.

18  And the government hasn't alleged that it is, in the

19  superseding indictment.

20      **THE COURT:**  Does the government have to make that

21  legal allegation?  Or can they -- they've described it

22  factually, what it is.

23      And wouldn't that be a matter for, I guess, maybe a jury

24  to decide?  Whether or not that meets the definition of the

25  property?  Because they're going to be instructed at some

1    point, if we get to a jury trial.

2         **MS. LEONIDA:**  I think because of the cases

3    interpreting *Carpenter* after *Carpenter*, that the government

4    does have to allege more facts than they have.  Some facts

5    that would transform this information into property.

6         The government has -- one -- one issue is that the

7    government has not actually alleged in the superseding

8    indictment any specific transmission of information by

9    Mr. Abouammo to anybody else.  It's all done by inference.

10        So the government has pointed to a number of different

11   types of information that Twitter maintains.  Some of it may be

12   trade secret, some of it may not.  The government hasn't

13   alleged one way or the other.  And the government is saying

14   that they're relying on an inference.

15        And according to the government's position at the

16   bill-of-particulars motion, they're relying on an inference

17   that Mr. Abouammo transmitted some information.  They don't say

18   what, because apparently they don't have a theory as to what.

19   And I think that that's just too tangential to make out an

20   offense of wire fraud for purposes of the statute.

21        **THE COURT:**  That sounds like a slightly different

22   point.  But what about that?  That -- you're saying that

23   there's not an express allegation here of actual transmission

24   of this -- what is contended to be valuable information.

25        What's the government's response to that?

1          **MR. SAMPSON:**  Right, Your Honor.  I believe it's a

2     whole different animal from the question of whether the user

3     information is property.

4          **THE COURT:**  Right.

5          **MR. SAMPSON:**  The government alleges that the

6     defendant joined a scheme to defraud.  That he was -- he was

7     bribed in order to do it.  And we believe that we'll be able

8     to prove at trial, with circumstantial evidence and even

9     direct evidence, that he did so.

10         Just because the government doesn't have the email in-box

11    of the recipient doesn't mean the defendant didn't pick up a

12    phone.  And we allege numerous phone calls between the

13    defendant and Foreign Official 1.

14         And so, Your Honor, the government believes that we can

15    prove it, and the defendant does not believe that our evidence

16    is strong.  And that's a reason to let the jury determine.

17         But with respect to property and with respect to

18    *Carpenter, Carpenter* does not rely on state law for the

19    definition of what the intangible property is.

20         And I would say that the case -- the *Planned Parenthood*

21    case I believe is a suit between two private parties under

22    diversity jurisdiction.  And so the court has to apply state

23    law.  And Judge Koh found that the plaintiff had not properly

24    alleged that just -- I believe -- I believe the issue was that

25    the allegation in the complaint was that the -- the documents

1    were stamped "Confidential" or were stamped "Proprietary."  And

2    I believe that Judge Koh found that just because they were

3    stamped "Proprietary" did not make them so for purposes of

4    property law.

5              THE COURT:  So *Planned Parenthood* was not actually

6    interpreting the federal wire fraud statute?

7              MR. SAMPSON:  I believe that's true.  It was not

8    interpreting wire fraud.

9              MS. LEONIDA:  Your Honor, I believe the government is

10   confusing *Planned Parenthood* with *SunPower*, which is a

11   Judge Koh decision.  Two separate cases.

12             MR. SAMPSON:  Thank you, Ms. Leonida.

13             THE COURT:  So did the -- I'll have to look at it

14   again.  But, did *Planned Parenthood* actually interpret this

15   federal wire fraud statute?

16             MS. LEONIDA:  Yes, Your Honor.  *Planned Parenthood*

17   did.

18             THE COURT:  As basis for -- oh, so that was the cause

19   of action, based on the wire fraud.

20             MS. LEONIDA:  Yes, Your Honor.

21             THE COURT:  Okay.  Where, where in the indictment

22   does it come close to suggesting that Mr. Abouammo conveyed or

23   transferred this information?

24             MR. SAMPSON:  Your Honor, I would note initially, the

25   government does not have to allege that the crime, the *actus*

1  *reus*, occurred.   The defendant joined a scheme to defraud, and

2   at least one member took at least one act in furtherance.

3       And Your Honor, the defendant joined with his co-defendant

4  Ali Alzabarah, who is another employee of Twitter who did

5  access from abroad, did transmit.

6       And we allege that -- I can find the paragraph,

7  Your Honor.

8            THE COURT:  Well, I see "The scheme" -- Paragraph 21

9   says (As read):

10           "...in which Abouammo and Alzabarah obtained

11           fraudulently from Twitter and provided to Foreign

12           Official 1 and others without Twitter's approval."

13      So you do say that.  That it was provided.  Part of the

14  scheme was to provided Foreign Official 1 with this

15  information.

16           MR. SAMPSON:  That's correct, Your Honor.  And the

17   defendant, at Foreign Official 1's request, on numerous

18   occasions, did access Twitter User 1 and Twitter User 2,

19   between December, 2014, and February, 2015.  That's set out in

20   the subparagraphs of Paragraph 26.

21      It also alleges in 26(f) that Mr. Abouammo and Foreign

22  Official 1 communicated by telephone, frequently.  And I

23  believe it goes on in other subparagraphs to discuss the timing

24  of those phone calls, close in time to his accesses of those

25  accounts at Foreign Official 1's request.

1      Your Honor, just because the defendant -- the government

2  alleges that the defendant was smart and careful about the

3  scheme does not mean that we cannot -- we cannot prove it, does

4  not mean that we did not state the proper elements of the

5  crime, which is that the defendant joined a scheme, both to

6  defraud Twitter of property, and to defraud Twitter of its

7  intangible right of his honest services.

8      **THE COURT:**  All right.  And with respect to the

9  fraudulent representations or omissions, one is the omission

10  to disclose the gifts.  I understand the argument there, that,

11  well, that's -- disclosing a gift is not material.

12      To which the response is:  Yeah, that may not have been

13  the whole crime, it may not have disclosed everything, but

14  reporting a gift of $100,000 and a $20,000 watch would have

15  raised red flags.

16      And I think there's enough there to show that that did

17  have a material connection, and was material to the scheme to

18  hide that gift because it was so central.  Without the gift,

19  there's a good argument that the alleged obtaining of the

20  Twitter information would not have been obtained, because there

21  was -- at least as alleged by the complaint, a *quid pro quo*.

22  And if there's no *quid*, there's no *quo*.

23      So -- and disclosure of the *quo*, especially of this

24  magnitude, a person in this position and with this kind of

25  access to information, and in violation of a clear policy, at

1    least as alleged in the indictment, I think is material.

2        Is there another misrepresentation or omission besides

3    failure to disclose a gift, in violation of the Twitter gift

4    policy that the government relies on?

5        **MR. SAMPSON:**  There is, Your Honor.  Paragraph 18

6    sets forth the duty to disclose to Twitter improper accesses

7    of its users' private information.  Which is exactly what he

8    did when he accessed Twitter User 1 and Twitter User 2.  The

9    government alleges that was a reportable violation, that is,

10   that he was required to report the access, even though it was

11   him.  And, didn't do so.

12       And so those are two discrete obligations that he had as a

13   fiduciary to Twitter that -- that he falsely did not report,

14   which is prosecutable under *Wood*.

15       **THE COURT:**  All right.  And the honest services, it

16   seems like a bit of an overlap that his -- the performance of

17   his duty or of his job, he may have performed his normal part

18   of his job, but he didn't perform his part of the job of not

19   violating data-handling policies, and reporting any

20   violations, and disclosing gifts.

21       Is that the argument, essentially?

22       **MR. SAMPSON:**  Well, Your Honor, but his employer

23   believed that he was doing his job properly.  But what they

24   were deprived of the knowledge of was his reporting of his

25   receipt of gifts and his accesses of user data.

1      And so, you know, it is a -- I think that it is inapposite

2   to say that just because someone did their job well does not

3   mean they did not commit the honest-services fraud crime by

4   accepting bribes and kickbacks, which are almost always

5   concealed.

6          THE COURT:  So if someone who works at the bank does

7   their job as teller, does everything really well, but after

8   hours goes back, goes back into the vault and actually steals

9   a few wads of $100 bills, let's say $10,000, does that

10   constitute deprival of honest services?

11          MR. SAMPSON:  No, Your Honor, there's no bribe being

12   paid.  I believe that's the *Czubinski* -- C-Z-U-B --

13          THE COURT:  If they were then told:  Give me the

14   account information of X, Y and Z -- not within the course of

15   their duty, after hours they go back, they do everything fine

16   but they manage -- they know the password of the computer,

17   they get in there and they get the bank information for

18   Mr. XYZ in exchange for a bribe of $1,000 from, let's say, an

19   ex-spouse or somebody who's out to get that person.

20      Would that constitute denial of honest services?

21          MR. SAMPSON:  They're a fiduciary of the bank.  If

22   there was a -- if the policy of the bank was to report, then

23   they have committed a material misrepresent -- a material

24   omission.  So yes, Your Honor.

25          THE COURT:  So even if what they did was not within

1   the course and scope of what they were supposed to do, the

2   fact that they were bound by a general duty not to do things

3   as a -- that that can constitute a violation of honest

4   services.

5           **MR. SAMPSON:**  In the private-employer context,

6   Your Honor, yes.

7           **THE COURT:**  Okay.

8       Do you have a disagreement with that, Ms. Leonida?

9           **MS. LEONIDA:**  Yes, Your Honor.  The *Czubinski* case

10  says that there's no -- there was no suggestion there that the

11  defendant had failed to carry out his official tasks

12  adequately, or that he intended to do so.  And it was very

13  analogous.  That defendant was an employee at the Post Office

14  -- sorry, the IRS.  And he was accessing people's tax

15  information, which he was not authorized to do, which he

16  wasn't supposed to do.  And the court held that the

17  honest-services bar was not admitted because the duties that

18  he was hired do, he performed well.

19      And I think that's exactly the same situation that exists

20  here.  The government is alleging, based on their inference,

21  that Mr. Abouammo accessed account information of Twitter

22  users.  But there is no allegation that what he was hired to

23  do, being the MENA representative for Twitter, that he did that

24  poorly at all.

25      And I think one thing to keep in mind here is that

1    honest-services fraud as applied to the private sector is very

2    different than the public sector.  And what the government is

3    essentially arguing is that every single breach of an

4    employment contract can be translated into the federal crime of

5    honest-services fraud.  And that is simply not the case.

6         **MR. SAMPSON:**  Your Honor, I'll just quickly respond.

7    Which is, one, an IRS employee is a public official.

8         But two, I believe -- and I think Your Honor can check --

9    I believe that *Czubinski* was dismissed because there was no

10   bribe.  There was no bribe or kickback.  And that's what

11   deprived it of being an honest-services crime.

12        **THE COURT:**  All right.  Well, I'm going to take a

13   closer look at that.  The two issues that I do want to take a

14   closer look at before I rule definitively is the *Czubinski*

15   question, and honest services.  And then, the

16   *Carpenter/Planned Parenthood* sort of dichotomy about property.

17        Otherwise, I find there's not a problem with respect to

18   allegations of fraud, of non-disclosure.  There was a material

19   omission that was causally connected to the scheme here, and

20   the two that have been identified by the government are

21   sufficient.

22        I think the question is:  Was there property?  And two:

23   Does the denial of services model fit here?

24        **MS. LEONIDA:**  Your Honor, I'm sorry to interrupt, but

25   I would like toking back and just respond to one thing on the

1      property issue that the government raised after I spoke.

2          When I was referring to the fact there is no allegation of

3      a specific piece of information, that it's all based on

4      inference, I don't believe that that is separate issue, as the

5      government and I think the Court said it was.  And the reason

6      is that the question the Court had was whether the information

7      that the government listed that was the subject of their

8      alleged scheme, whether that information is a trade secret, by

9      definition.

10         And so when is the government says that this is the world

11     of information that Twitter has, but doesn't specify that any

12     specific type of that information was actually stolen or

13     transmitted to a third party by Mr. Abouammo, I think that it

14     is the same issue.  Because the Court can't then look at that

15     pleading and Mr. Abouammo certainly can't look at that pleading

16     and decide that by definition, the information that he is

17     inferred to have transmitted is a trade secret.

18         So that's why I think that those are connected.

19             THE COURT:  Well, is there a -- let me make sure I

20     understand.  He's charged with conspiracy.  Is he also charged

21     directly with direct wire fraud?

22             MS. LEONIDA:  Yes, Your Honor.

23             THE COURT:  So let me ask the government that.  I

24     understand participation in a conspiracy, you don't have to

25     have engaged in the act; your co-conspirator could have done

1    it.

2        What about the direct charge?  Doesn't there have been to

3    be some allegation that Mr. Abouammo, himself, engaged in wire

4    fraud?

5            **MR. SAMPSON:**  Yes, Your Honor.  And he did.  The

6    government alleges that he did.  He participated in numerous

7    wire transmissions in furtherance of the scheme.  And those

8    are laid out in, I believe, Counts 6 through maybe Count 9.  I

9    will have it in a moment, Your Honor.  But he participated in

10   numerous phone calls, and sent emails across state lines.

11       And Your Honor, it does not have to be the transmission of

12   the data, itself, to violate the statute.  It just has to be a

13   wire in furtherance of the scheme.  And I believe --

14           **THE COURT:**  So it's -- the in furtherance of the

15   scheme is enough for a direct -- putting aside any conspiracy

16   claim, doing an act in furtherance of a wire fraud scheme is

17   -- you can be responsible for wire fraud.

18       Correct?  That's --

19           **MR. SAMPSON:**  Yes.  Yes, Your Honor.  And, as well as

20   under *Pinkerton* liability.

21       The government also has charged the defendant with aiding

22   and abetting, 18 U.S.C. 2, as part of these charges as well.

23           **THE COURT:**  All right.  So even if he didn't -- even

24   if it's not alleged that he took the information and somehow

25   conveyed it to Foreign Official 1, because he did all these

1    other things in furtherance of that scheme, he can be charged

2    not only with conspiracy, but with direct wire fraud.

3         **MR. SAMPSON:**  Yes, Your Honor.  Assuming he did not

4    transmit it.  We're not conceding that.

5         **THE COURT:**  Okay.

6         **MR. SAMPSON:**  But even if he did not, it would be

7    sufficient.

8         **THE COURT:**  All right.  At least, I understand the

9    theory.

10        Okay.  So I've given you a partial ruling, but I've got to

11   look at these couple of issues, and then I'll get out a short

12   order on my conclusion on the question of honest services and

13   property.

14        And then, let's see.  We looked at the time-bar.  So that

15   leaves the question about the CIPA issue.  And the government

16   will have to help to remind me where things were.  And I've got

17   to be careful, because I understand that, you know, sensitivity

18   of CIPA type information.

19        The government did disclose that it was invoking the CIPA

20   procedures, so that's known.  I believe it disclosed that

21   documents were being made available under CIPA for an *ex parte*

22   in-camera hearing, right?  That was known.

23        And now I can't remember -- I tried to look back over the

24   records, and I don't remember whether we did anything.  But my

25   intent was to file an order indicating that the Court did, in

fact, conduct multiple -- well, reviews, pursuant to CIPA, and
concluded that there was nothing that was relevant, and nothing
that was helpful or exculpatory to the case.  That there was
nothing relevant and helpful, and indeed, nothing relevant at
all, from what I found.  And therefore, there's no need to
invoke the subsequent steps of CIPA.  There was no Rule 16 or
Section -- was it Section 4 -- material to disclose.

I don't know if I ever embodied that in an order, nor -- I
think I intended to, and I'm not sure what happened.  But I --
I do intend to do that.  And I actually would like the
government to help me, and submit an order that is careful so
we don't disclose -- you know, breach the confidentiality of
materials, but at least describe what the Court had done.

I think I would like a record that would have to be under
seal of what I did see.  I think you have that record.  I want
the record to be clear so if there's an appeal, the Appellate
Court will know what the records were that the Court reviewed,
the only question in my mind is this -- the defendant's request
that a record be made to show what steps -- sort of prefatory
steps the government made in order to sort of canvas and
develop the materials that were submitted to the Court.

That may or may not be required under CIPA.  But I'm not
sure I see the harm in at least some description to make a
record of the -- I don't know if you want to call it the
"search" or the "sweep" or whatever it is that the government

1    undertook, obviously without disclosing so much information

2    that you breach the classified nature.  But it seems to me that

3    something can be done to sort of at least describe generally

4    what the government did in looking for documents.

5          Any comments from the government in that regard?

6          **MR. HAWK:**  Yes, Your Honor.

7          Just with respect to a proposed order, just to remind the

8    Court that we did file an unclassified version of a proposed

9    order.  Unfortunately, I don't have the docket number readily

10   available.  But we, of course, can get that to the Court

11   through Mr. Sampson.

12         With respect to the steps we've taken, some of that

13   information should be in the government's classified filing for

14   the Court.  And to the extent the Court feels that we need to

15   supplement and expand the record on that, with respect to that

16   point, we are happy to do so.

17         **THE COURT:**  I would like you to see which part of

18    that -- how much of that you can disclose without compromising

19    -- I understand there's a line, but it seems to me you can at

20    least describe in some fashion the breadth of the sweep of --

21    of document search.

22         I'll leave it to you, in the first instance, how much

23   detail you can get into without compromising classified

24   information.  But I think that would be helpful.

25         And if you could re-submit to me the order.  Maybe I had

1  it, and I've now somehow lost track of it.  But I would like a

2  recitation of the fact that, you know, I did follow CIPA, and

3  actually carefully reviewed the documents.

4       MR. HAWK:  Your Honor, if I may just seek some

5   clarification.

6       I understand from what Your Honor is saying that you would

7  like us to file something unclassified with respect -- you

8  know, to the extent appropriate, and we can do so -- with

9  respect to the steps that we've generally taken?  Or are you

10  asking that we incorporate that into your order?

11       THE COURT:  You can incorporate that into the order

12   as well.  And then say pursuant to that, that the documents

13   were made available to the Court, and the Court examined the

14   documents, and then concluded that none of it is relevant, and

15   there's nothing relevant and helpful to the defendant.  And

16   none of it, therefore, needed to be disclosed.

17       I'm not withholding or redacting anything from disclosure

18  which I find otherwise would be the kind of thing that should

19  be disclosed.

20       MR. HAWK:  Yes, Your Honor.

21       THE COURT:  And then if you could help me -- I'd just

22   like to make a record somewhere -- and this would have to be

23   under seal, obviously -- of the actual documents I did see.  I

24   mean, maybe that's already in your -- I just want to make sure

25   there's a record of that, somewhere.

1          **MR. HAWK:**  It should be in the filings, Your Honor.

2          **THE COURT:**  Okay.

3          **MR. HAWK:**  But we'll go back and double-check for

4     sure, to make sure that the record is crystal-clear.

5          **THE COURT:**  Okay.  So with that proviso, I will deny

6     the rest of that motion.  I'm going to grant, in part, the

7     request to making the record to show the steps.  But also,

8     because I'm now reciting for the record that I've reviewed the

9     documents and find that none of is disclosable, there's no

10    reason to hold relevant and helpful documents from discovery,

11    because none of it is relevant or producible, even under a

12    non-classified situation.  And so therefore, I'm going to deny

13    the rest of that motion in Docket No. 85.

14       So those are my rulings -- subject to what I've taken

15    under submission with respect to the -- the sort of subissues

16    with respect to the failure to state an offense, those are my

17    rulings.  Is there anything else?  Do we have a status coming

18    up in this matter?

19         **MR. SAMPSON:**  Your Honor, I believe we were going to

20    take up the status here.

21         **THE COURT:**  Okay.

22         **MS. LEONIDA:**  Your Honor, this is probably as good a

23    time as any.  I'm leaving the Federal Defender's office, so

24    Mr. Abouammo is going to be assigned to another attorney from

25    my office.  And then when Ms. Linker is back from leave, then

1    she'll obviously be back on the case again.

2              **THE COURT:**  Oh.

3         **MS. LEONIDA:**  But that person is going to need a

4    little bit of time to get up to speed, obviously.

5              **THE COURT:**  Okay.  When is Ms. -- is there a date for

6    Ms. Linker's expected return?

7         **MS. LEONIDA:**  I don't think there is, at this point.

8    If there is, I don't know it.

9              **THE COURT:**  Okay.  Well, then we'll need to set this

10   out a little further, because there's a fair amount to catch

11   up on.  What do you suggest?

12             **MS. LEONIDA:**  Maybe two months?

13             **THE COURT:**  Okay.

14        **MR. SAMPSON:**  Your Honor, I believe the next step --

15   when we had the status in October, I think the Court set out

16   the procedural motions first.  And the plan was going to be to

17   set a motions hearing date for the -- for the evidentiary

18   motions, anything related to search warrants and other things.

19        And so I'm not sure if Your Honor wants to set that date

20   now, two months or so out, or two months and two weeks, or if

21   Your Honor wants to set another status.  But the government

22   believes that it's produced virtually all of the evidence that

23   it has.  In the chaos of the day, I wasn't able to check and

24   confirm.  But we believe that it is substantially complete, and

25   we'll be ready for setting of a trial date in the near future.

1    **THE COURT:**  Well, maybe what we should do is hold a

2    status a little bit earlier so that we can then set an

3    evidentiary motions date with the new counsel.  Got to give

4    some time for new counsel at least to get familiar enough to

5    know how much time they need to get ready for an evidentiary

6    hearing, but I don't think that will take two months.

7         How about a month out?

8         **MS. LEONIDA:**  That's fine.

9         **THE COURT:**  Four weeks?

10        **MR. SAMPSON:**  That's fine, Your Honor.

11        **THE COURT:**  Okay.  Angie?

12        **THE CLERK:**  February 3rd, Your Honor.

13        **THE COURT:**  February 3rd at 2:30.  And we'll use that

14   to set evidentiary motion dates.  And the government can

15   double-check, make sure it has completed its production.

16        And by then, I would have ruled on the rest of the motion

17   here, and hopefully will tie up all the loose ends with respect

18   to the record on the CIPA portion of this case.

19        **MR. SAMPSON:**  And Your Honor, to the extent the

20   motions are fully resolved between now and then, I would still

21   ask for an exclusion of time for the complexity of the case,

22   and for, obviously, effective preparation of new counsel,

23   between today and February 3rd.

24        **THE COURT:**  All right.  No objection?

25        **MS. LEONIDA:**  No objection.

1          **THE COURT:** All right. I will exclude time between

2     now and February 3rd, on the grounds that, number one, there's

3     still motions under submission. Two, continuity of counsel.

4     Given the change of counsel that's occurring, need time for

5     new counsel to prepare. And of course, time is needed for

6     adequate preparation of the defense. And, the case is

7     complex. And I find that the ends of justice outweighs the

8     public's and the defendant's interest in a speedy trial. And

9     so time will be excluded between now and February 3rd.

10         So I guess I won't see you then, Ms. Leonida. I forget.

11    Where are you going?

12         **MS. LEONIDA:** I'm going to BraunHagey & Borden,

13    Your Honor.

14         **THE COURT:** Well, congratulations. It's been a

15    pleasure working with you.

16         **MS. LEONIDA:** Thank you.

17         **THE COURT:** We will miss you, but good luck in your

18    career.

19         **MS. LEONIDA:** Thank Your Honor.

20         **THE COURT:** Great. Okay. So we'll see everybody in

21    February.

22         **MR. SAMPSON:** Thank Your Honor.

23         **THE COURT:** All right, thank you.

24         **MS. LEONIDA:** Thank you.

25         (Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, January 8, 2021