UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AHMAD ABOUAMMO,<br>Defendant. | Case No. 19-cr-00621-EMC-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ABOUAMMO'S MOTION TO SUPPRESS**<br><br>Docket No. 117 |

    Defendant Ahmad Abouammo has moved to suppress evidence obtained via searches and seizures on August 17, 2016 and October 23, 2018 pursuant to two search warrants issued by magistrate judges of this Court. Having considered the briefs and supporting materials and argument of counsel, the Court **GRANTS** the motion with respect to the 2016 search but **DENIES** the motion with respect to the 2018 search.

    Even assuming a deferential scope of review of the magistrate judge's determination, *see United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir. 2000), it is clear there was no probable cause to support the 2016 search. While there was probable cause to believe Defendant Ali Alzabarah accessed Twitter user information without authorization and that it was done at the behest of Foreign Official-1, there was no such probable cause with respect to Defendant Abouammo. The critical paragraphs of the affidavit in support of the 2016 search warrant application – Paragraphs 69 – 78 which focus on Defendant Abouammo, merely documents his communications with Twitter Employee-1, Defendants Alzabarah and Ahmed Almutairi, and Foreign Official-1 at various times in 2014, 2015, and 2016. There is no allegation that Defendant Abouammo, a U.S. citizen born in Egypt with no personal ties to Saudi Arabia, obtained

unauthorized access to Twitter users, much less at the behest of the Saudi government. The circumstantial evidence of communications reveal little more than sporadic unremarkable communications with these subjects which does not fit any pattern with the illicit conduct of Defendant Alzabarah or Official-1.

Defendant Abouammo's contact with Twitter Employee-1, an Irish citizen, in the form of a single email on April 22, 2015, several emails in January and February 2016, and being reciprocal followers on Defendant Abouammo and Defendant Alzabarah prove nothing. There is nothing about the content of tweets that were suggestive on clandestine conduct. Nor is there anything remarkable about the timing of the email exchanges relative to the illegal conduct of Defendant Alzabarah as described in the affidavit. Defendant Alzabarah was confronted by Twitter on December 2, 2015 about his unauthorized access to user accounts and fled the United States on December 3. There was no alleged communication between Defendant Abouammo and Twitter Employee-1 at that time. Moreover, although Twitter Employee-1 was confronted by Twitter about accessing Twitter use accounts without authorization, Twitter determined that he did in fact have a legitimate busines reason for accessing those accounts. Indeed Twitter Employee-1 was promoted by Twitter in 2016.

Other than being reciprocal Twitter followers, there is no evidence of any communication between Defendant Abouammo and Defendant Alzabarah. Similarly, there is little communication between Defendant Abouammo and Defendant Almutairi cited in the affidavit – *i.e.*, two text messages in December 2014 prior to the alleged unlawful conduct of Defendant Alzabarah which started in January 2015.

As to Defendant Abouammo's communication with Foreign Offical-1, there were calls between them in June 2014, in January 2015, on December 11, 2015 and an exchange of emails in January 2015 and September 2015. Notably, most of these communications were prior to the putative grand meeting in Washington, D.C. in May 2015 between Official-1, Defendant Alzabarah, Defendant Almutairi and Associate-1 – a meeting which did not include Defendant Abouammo. With the exception of the call between Defendant Abouammo and Official-1 on December 11 – 8 days after Defendant Alzabarah fled the U.S. upon being confronted by Twitter,

there is nothing remarkable about the timing of the emails or calls relative to the conduct of Defendant Alzabarah.

Defendant Abouammo's emails to other senior Twitter directors who were located in other countries (outside the U.S. and Saudi Arabia) in December 2015 and January and February 2016 also prove nothing. There is no allegation that these directors were involved in any unauthorized access to use accounts or were connected with Official-1 or the Saudi government. Furthermore, the emails were sent to these directors' Twitter email accounts, hardly a way to solicit participation in an illicit scheme as the government now suggests. That certain Saudi officials (other than Official-1) were brought into conversations in email exchanges with one of the Twitter directors again proves nothing.

The sporadic patternless communications described in the affidavit – which include no direct communications with Defendant Alzabarah and two early (2014) text messages with Defendant Almutairi – are insufficient to establish probable cause to believe Defendant Abouammo had accessed without authorization Twitter user accounts at the behest of the Saudi government. *United States v. Seybold*, 726 F.2d 502 (9th Cir. 1983) cited by the government does not compel a contrary result. There, the defendant's phone numbers were found in the personal address books of two person who were also indicted with him for distribution of methamphetamine and were previously arrested; there were six instances in which address books seized from other conspirators contained the names and numbers of other co-conspirators, a common phenomenon according to a DEA intelligence analyst, and there was fairly detailed factual allegations about Seybold's actions in furtherance of the conspiracy. *Id.* at 504-505. The evidence of common contacts was thus probative and supported by independent evidence of the defendant's acts in furtherance of the conspiracy. This was for more probative of the defendant's illicit conduct than the catalogue of sporadic contacts with allege participants asserted here.

Further, in view of the lack of probable cause on the face of the affidavit, the government has failed to carry its burden of establishing applicability of the good faith exception. *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013). Defendant Abouammo's motion to suppress the evidence obtained from that search warrant is therefore granted.

3

However, even without the fruits of the 2016 search, there were enough facts to support probable cause for the 2018 search warrant. Defendant Abouammo does not dispute the following facts submitted in support of that warrant were not derived from the 2016 search:

1) Defendant had access to a tool that allowed him to view Twitter account data, Sept. 2018, 2018 search warrant ("SW") ¶ 28;

2) Foreign Official-1 was particularly interested in the Twitter User-1 account, which was critical of the Saudi government and Royal Family, *id.* ¶¶ 39,55;

3) Defendant and Foreign Official-1 met in London in December 2014, *id.* ¶ 37;

4) Shortly after the London meeting, Defendant accessed the Twitter User-1 account multiple times between January 5, 2015, and February 24, 2015, and was in frequent telephonic contact with Foreign Official-1, *id.* ¶¶ 39-41;

5) Alzabarah also accessed the Twitter User-1 account multiple times, *id.* ¶ 55;

6) Foreign Official-1 sent information to Defendant that was marked urgent, secret and private and concerned another "Twitter User-2" that was also critical of the Saudi government and Royal Family, *id.* ¶ 42.

These facts establish probable cause for the 2018 search warrant.

Moreover, for the reasons argued by the government, the search warrant did not rest on stale information. And although it would have been preferable for the warrant to expressly limit the search of devices to those which appeared to be owned, possessed or accessible to Defendant Abouammo, in light of the circumstances of the household, it was reasonably specific given "the circumstances of the case and the type of items involved." *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996). Even if the warrant's description of the items to be search was overbroad, severance would be appropriate here where "the lion's share of the [warrant] did not violate the Fourth Amendment." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 797 (9th Cir. 2009). Accordingly, the motion to suppress the evidence obtained from the 2018 search is denied.

///

///

///

4

As noted at the hearing, this raises the question whether the evidence from the 2016 suppressed herein would otherwise have been discovered. The parties shall cross-file supplemental briefs limited to seven (7) pages each on this issue by June 21, 2021.

**IT IS SO ORDERED**.

Dated: June 15, 2021

_____
EDWARD M. CHEN
United States District Judge