GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA CHUANG
CARMEN SMARANDOIU
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Angela_Chuang@fd.org

Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AHMAD ABOUAMMO,<br>Defendant. | **Case No.:** CR 19–00621 EMC<br><br>**DEFENDANT ABOUAMMO'S SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO SUPPRESS**<br><br>**Court:** Courtroom 5, 17th Floor<br>**Hearing Date:** June 23, 2021<br>**Hearing Time:** 2:30 p.m. |

## INTRODUCTION

Upon finding that the August 17, 2016, Google search warrant violated Ahmad Abouammo's Fourth Amendment rights and that the evidence obtained therefrom must be suppressed, the Court requested additional—simultaneous—briefing on whether the suppressed evidence would otherwise have been discovered. *See* Dkt. No. 142 ("Order") at 5. As the burden to establish an exception to the exclusionary rule lies clearly with the government, it is difficult for Abouammo to anticipate how the government will seek to meet its burden, particularly where it failed to address this critical issue in its briefing despite Abouammo's detailed arguments. As such, Abouammo submits this initial briefing, but requests an opportunity to respond to the government's filing should additional arguments be raised.

Abouammo is not aware of any means by which the government can meet its burden that, had the Google SW not issued, his Google emails nonetheless would have been lawfully discovered.[1] Accordingly, the Court should suppress Abouammo's Google emails as well as all other evidence derived from them, including any evidence obtained through investigatory steps that were prompted by the tainted emails such as, *inter alia*, the October 2018 questioning of Abouammo and the subsequent October 23, 2018, Home SW.

## ARGUMENT

### I. The government cannot meet its burden that it would have obtained Abouammo's Google emails by lawful means.

Evidence obtained or derived from an unlawful search warrant must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484, 488 (1963). **It is the government's burden to prove**, by a preponderance of the evidence, that an exception to the exclusionary rule applies. *See, e.g.*, *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000).

Two such exceptions are the inevitable discovery and the independent source doctrines.

[1] Abouammo's arguments necessarily rest on the discovery made available to him thus far. Furthermore, given its sheer volume, the defense has not completed its review of that discovery despite due diligence. Because there is outstanding discovery both to be produced and to be reviewed, the Court should ask the government, as the party with the burden of proof, to clearly identify the specific emails or other evidence that it claims should not be suppressed.

Although related, they are distinct. The inevitable discovery doctrine "asks whether evidence '*would have*' been discovered by lawful means rather than by means of the illegal search." *United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016) (quoting *Nix v. Williams*, 467 U.S. 431, 447 (1984) (Ninth Circuit's emphasis)). By contrast, the independent source doctrine "asks whether the evidence *actually* was 'obtained independently from activities untainted by the initial illegality.'" *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)).

At the motion hearing, the government told the Court that Abouammo's Google emails were also found in his iCloud account, which the FBI searched pursuant to the September 11, 2018, Apple iCloud search warrant.[2] Defense's review of the available discovery, however, shows that **no Google emails were stored in the iCloud account**.

Insofar as the government argues that any emails may have been rediscovered pursuant to the October 23, 2018, Home SW, they still must be suppressed. For emails initially discovered pursuant to the Google SW, but then "rediscovered" pursuant to the Home SW search warrant, "[t]he ultimate question . . . is whether the [Home SW] was in fact a genuinely independent source of the information and tangible evidence at issue here." *Murray*, 487 U.S. at 542. The government cannot meet its burden if either the "information obtained during that [search] was presented to the Magistrate and affected his decision to issue the warrant" or "the agents' decision to seek the warrant was prompted by what they had seen during the initial [search]." *Id*. at 542.

In other words, the government must prove both that: (1) after the tainted evidence is excised, the untainted evidence was sufficient to furnish probable cause for the Home SW; **and** (2) that the agents **would have** applied for the Home SW **even if** they had not conducted the initial unlawful search of Abouammo's Google account. Critically, under the second prong, "one must ask whether [the Home SW] would have been sought even if what actually happened had not occurred—not whether it would have been sought if something else had happened." *Murray*, 487 U.S. at 542 n.3.

---

[2] The government obtained *three* warrants in 2018: (1) the September 11, 2018, warrant for Abouammo's iCloud account, Chuang Dec., Ex. D; (2) the October 23, 2018, warrant (Home SW), *id*., Ex. F; and, (3) the November 7, 2018, warrant for Abouammo's Twitter account, *id*., Ex. G.

The government has also obtained (4) a search warrant for Abouammo's Twitter work emails on May 31, 2019, *id*., Ex. H.

Although this inquiry is subjective, focusing on the officer's intent, "proof 'should not be . . . by purely subjective means,' and the district court must assess 'the totality of the attendant circumstances' in determining the plausibility of the officers' 'assurances.'" *United States v. Siciliano*, 578 F.3d 61, 69 (1st Cir. 2009) (quoting *United States v. Dessesaure*, 429 F.3d 359, 368 (1st Cir. 2005); collecting cases holding that the district court's determination is a factual finding subject to clear error review).

When the tainted evidence is excised from the Home SW, the untainted evidence is insufficient to furnish probable cause for the home and electronics found therein. *See* MTS at 22-25; Reply at 14-16. Furthermore, the government cannot meet its burden of showing that, had it not obtained Abouammo's Google emails, they would have nonetheless applied for the Home SW.

The government applied for the Home SW more than two years after it applied for the Google SW, and only did so after it questioned Abouammo on October 20, 2018. During that questioning, the FBI confronted Abouammo with evidence obtained from his Google account: the January 17, 2015, email from "Foreign Official-1" and emails with Twitter Employee-1. *See* MTS at 18-22; Reply at 9-14. They also questioned him about matters that the government only learned from his Google emails: the watch he got in London and a Nokia Lumina phone he bought on Amazon. *See id*. Indeed, these emails and matters were critical aspects of the interview of Abouammo. The Home SW then relied heavily on Google emails and the information that the FBI learned as a result of their questioning of Abouammo, including his statements, information about the invoice and Cyrcl, LLC, and the direct message from "Foreign Official-1" showing a $100,000 wire transfer from "Foreign Official-1" to a bank account "held by Abouammo" in Lebanon. *See* MTS at 22-23; Reply at 15; Home SW ¶¶ 16-19, 53-64. Finally, the government primarily justified the Home SW on the need to seize and search for the watch (Abouammo said **during** the October 20, 2018, questioning that the watch was in his home), evidence of offenses committed **during** the questioning, and electronic devices that Abouammo used or referenced **during** the questioning. *See* Home SW ¶¶ 84-86, 89, 91-93; Attach. B.

This chain of events—showing that the government would not have questioned Abouammo but for the Google SW, *see infra* at 5-6; would not have effectively obtained any information from Abouammo but for the Google SW, *id*.; and would not have applied for the Home SW but for the

specific statements and actions of Abouammo during his questioning—defeat any potential averment from the government that they would have sought, let alone obtained, the Home SW on or about October 23, 2018, even had they not obtained the Google SW more than two years earlier.[3] Indeed, given this significant lapse of time and the intervening events, it is pure speculation to claim that the Home SW would have been sought and issued in October 2018 "even if what actually happened had not occurred." *Murray*, 487 U.S. at 542 n.3.[4] Therefore, any "rediscovered" Google emails must be suppressed along with the other emails obtained from Abouammo's Google account.

**II. Abouammo's statements and actions and the agents' observations on October 20, 2018, must be suppressed as the fruits of the Google SW.**

On October 20, 2018, the FBI questioned Aboouammo regarding matters they only learned from his Google account, such as the watch he got in London, and confronted him with emails from that account, including the January 17, 2015, email from Foreign Official-1. Accordingly, under *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011), the information the FBI learned during and as a result of their questioning of Abouammo is the fruit of the poisonous tree and must be suppressed. *See* MTS at 18-22; Reply at 9-14. The Court must do so even if the government later obtained some of Abouammo's emails from sources other than his Google account.

---

[3] *See, e.g.*, *United States v. Mowatt*, 513 F.3d 395, 404 (4th Cir. 2008) ("the government has never maintained that the officers would have sought a warrant absent their prior illegal discovery [of evidence;] [n]or does any evidence even suggest that they would have sought a warrant had they known only about the marijuana"), abrogated on other grounds, *Kentucky v. King*, 563 U.S. 452 (2011); *United States v. Riccio*, 2011 WL 4434855, *3 (S.D.Cal. 2011) ("the record conclusively establishes that the information derived from the hard drive, and suppressed as a direct constitutional violation, prompted the decision by [law enforcement] to seek a federal warrant to search [d]efendant's home"); *United States v. Green*, 2010 WL 4877872, *10 (N.D.Ga.) ("the decision to seek the search warrant here was the direct result of the observations the officers made inside the apartment after their unlawful entry, and not the result of the independent information [;] ... there is no evidence that [law enforcement] intended to seek a search warrant"), report and recommendation adopted, 2010 WL 4876898 (N.D.Ga. 2010); *United States v. Bergin*, 732 F.Supp.2d at 1235, 1257–58 (M.D. Fla. 2010) ("The Court finds that the motivation to obtain a search warrant was the direct result of the unlawfully obtained knowledge that the residence contained [evidence]"); *United States v. Ortega*, 2007 WL 3306612, *5 (M.D.Fla. 2007) ("the decision to seek the search warrant was the direct result of the observations and smells the officers made inside the residence after their unlawful entry ... was also in close proximity to the entry, and was motivated only by the contents of the house, not the initial smell of marijuana from the door step"); *United States v. Groce*, 255 F.Supp.2d 936, 944 (E.D.Wis. 2003) ("[i]t is also clear that the officers were motivated to seek the warrant because of [the officer's] search").

[4] Because of the speculation involved in such a claim, the government would also not be able to make an inevitable discovery showing. *See infra* at 5.

First, the FBI's questioning of Abouammo was **not** an independent source: while the FBI claimed to want to question Abouammo regarding Alzabarah, that was clearly a pretext given that the questioning focused almost exclusively on Abouammo's own job at Twitter, his own relationship with "Foreign Official-1" both during and after his employment with Twitter, and his own access of account confidential data. And the FBI came prepared to confront Abouammo with his Google emails and question him about matters they learned from his Google emails. Because the FBI's questioning regarding Abouammo's own actions and confrontation with his emails only occurred because the FBI obtained his emails via the Google SW, the interview was not an independent source. *See United States v. Gorman*, 859 F.3d 706, 718 (9th Cir.), order corrected, 870 F.3d 963 (9th Cir. 2017) (second traffic stop was not an independent source where the evidence "was discovered only because [second police officer] followed up on [first police officer]'s request, which derived directly from [first police officer]'s unlawfully prolonged stop.").

Nor can the government claim that Abouammo's statements and actions would have inevitably been discovered. The inevitable discovery doctrine "permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably'" through lawful means. *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000) (quoting *Nix*, 467 U.S. at 444). The government's showing typically involves proof "that evidence would have been uncovered by officers in carrying out routine procedures." *Id*. Significantly, the government's showing cannot involve any speculation. *See Nix*, 467 U.S. at 444 n.5 ("[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment . . . ."); *United States v. Young*, 573 F.3d 711, 722 (9th Cir. 2009) (rejecting inevitable discovery because record contained "nothing more than speculation—not the 'demonstrated historical facts capable of ready verification' required by *Nix*").

The government cannot possibly prove, through demonstrated historical facts, that had they not obtained the Google SW: 1) they would still have sought to question Abouammo during the investigation; 2) that Abouammo would have agreed to be questioned without the presence of an attorney; 3) that the government would have asked him the same questions; and 4) that Abouammo would have given the same answers and acted the same way he did during the October 20, 2018,

questioning. Indeed, such an argument would involve multiple levels of speculation and would have to be rejected. *See, e.g., United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1400 (9th Cir. 1989) (government did not meet its burden under the inevitable discovery where it could not demonstrate that, had the police officer not searched a van unlawfully, he would still have questioned the van passengers or that he would have questioned them "in such a way to elicit the relevant information.").

**III. The evidence obtained from the subsequent search warrants must be suppressed as the fruits of the Google SW.**

In his briefing, Abouammo has challenged the three search warrants issued in 2018 and the May 31, 2019 search warrant as the fruits of the Google SW. *See supra* at 2 n.2.

So far, the Court has indicated that, even after excising the tainted information, the "2018 search warrant" was supported by probable cause. Order at 4. The Court, however, may have conflated the 2018 warrants. *See id*. (discussing untainted allegations in the September 11, 2018, Apple iCloud search warrant, and staleness and overbreadth arguments regarding the October 23, 2018, Home SW). Additionally, the Court has not yet addressed whether the October 23, 2018, Home SW; the November 7, 2018, warrant for Abouammo's Twitter account; and the May 31, 2019, warrant for his Twitter email, are supported by probable cause once the tainted evidence is excised.

Even assuming that the untainted evidence furnishes probable cause for each of the search warrants, the government has "a further hurdle to surmount." *United States v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir. 1999), as amended (Nov. 2, 1999). The government must prove that the agents would have applied for the search warrants even if they had not first obtained the Google SW. *See id*. (reversing and remanding for the district court to "determine what [the agents] would have done," and "[i]f the district court determines that the agents would not have sought the warrant, the evidence obtained under its authority must be suppressed . . . "); *United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995) (reversing and remanding for court to determine whether the agents would have sought the warrant "if they had not earlier entered [defendant's house]," during which they saw a sawed-off shotgun in his bedroom).[5]

[5] Although these cases rest on *Murray*, they do not appear to be limited to "rediscovered" evidence.

Abouammo has already explained why the government cannot meet its burden that the government would not have sought the Home SW had they not first obtained Abouammo's Google emails. *See supra* at 3-4. For similar reasons, the government cannot meet its burden as to any of the other search warrants.

**CONCLUSION**

For the abovementioned reasons, as well as the reasons set forth in Abouammo's initial briefing, the Court should suppress all evidence derived from the Google SW, including Abouammo's Google emails and his statements and actions during the October 20, 2018, questioning.

Dated: June 21, 2021

Respectfully submitted,

/S

ANGELA CHUANG
CARMEN SMARANDOIU
Assistant Federal Public Defenders