STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney
HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division
COLIN C. SAMPSON (CABN 249784)
     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-7234
     Colin.Sampson@usdoj.gov

JOHN C. DEMERS
Assistant Attorney General
National Security Division
BENJAMIN J. HAWK (NJBN 030232007)
Trial Attorney, National Security Division
     950 Pennsylvania Avenue NW
     Washington, DC 20530-0001
     Telephone: (202) 307-5176
     Benjamin.Hawk@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>AHMAD ABOUAMMO,<br><br>    Defendant. | Case No. CR 19-621 EMC<br><br>UNITED STATES' SUPPLEMENTAL BRIEF ADDRESSING INEVITABLE DISCOVERY<br><br>Date: June 23, 2021<br>Time: 2:30 p.m.<br>Courtroom: 5, 17th Floor |

The Government respectfully submits its supplemental brief addressing the issue of inevitable discovery with respect to the evidence seized pursuant to the August 17, 2016, search warrant for Defendant Ahmad Abouammo's Google Account. On June 15, 2021, the Court granted Defendant's Motion to Suppress Evidence with respect to the 2016 search but denied his motion with respect to the later 2018 searches. *See* Dkt. No. 142, p. 4. At the June 9, 2021, hearing and as part of the Court's order, the Court asked the parties to address the following question: "whether the evidence from the 2016 [search] suppressed herein would otherwise have been discovered." *See* Dkt. 142, p. 5.

As discussed herein, the answer to that question is yes. Based on evidence developed

1   independent of the 2016 search of Defendant's Google account, the Government inevitably would have

2   sought a warrant for Defendant's Google account. Specifically, at a minimum, information obtained

3   from Twitter in October 2017 concerning Defendant's accesses of Twitter User-1's account, in addition

4   to the facts set forth in the affidavit supporting the August 2016 warrant, would have led FBI to request

5   a warrant to search the account. Accordingly, the Court should order that the evidence obtained pursuant

6   to the 2016 search is otherwise admissible under the inevitable discovery doctrine.  Indeed, the Court's

7   recent Order found that, by 2018, there was probable cause to search Defendant's account and residence.

8   **I.      FACTUAL SUMMARY**

9        The following facts are drawn from the attached declaration of FBI Special Agent Letitia Wu, as

10   well as the various search warrant affidavits attached to Defendant's motion to suppress:

11        At the end of 2015, the FBI initiated an investigation into allegations that Twitter employees

12   were accessing without authorization proprietary and confidential data from Twitter, Inc., on behalf of

13   the Kingdom of Saudi Arabia and the Saudi Royal Family (collectively, the "Saudi government"), and

14   effort that was headed by "Foreign Official-1", director of the private office of "Saudi Royal Family

15   Member-1." Declaration of Letitia Wu, ¶ 3 ("Wu Decl.").

16        Defendant and Foreign Official-1 were in communication during the relevant period beginning in

17   2014 and continuing until and after Defendant resigned from Twitter in or about May 2015. Wu Decl.,

18   ¶¶ 6(a), 9.  Specifically, records obtained prior to the 2016 search showed multiple calls between

19   Defendant and Foreign Official-1 beginning on June 14, 2014 and continuing through at least January

20   2015. Id.  Furthermore, according to information provided by Google prior to the 2016 search,

21   Defendant's personal Gmail account was in contact with Foreign Offical-1 on January 17, 2015. Id.

22   Additional telephone records for Defendant, obtained by late December 2017, revealed even more calls

23   between Defendant and Foreign Official-1 that extended into March 2016. Id., ¶ 9.  Among those calls

24   was one from Defendant to Foreign Official-1 eight days after Alzabarah fled the United States and on

25   the same day that Defendant was involved in an email exchange that included Twitter Employee-1 and

26   another Twitter employee.  Id.

27        Evidence obtained prior to the 2016 search showed that Defendant was also in communication

28   during the relevant period with others under investigation, including co-defendant Almuitari and

1   "Twitter Employee-1," and he was on email threads with other Twitter employees and Saudi

2   government email addresses.  Kingsley Affidavit, Exhibit A, ¶¶ 75-78 ("2016 Aff.").  Notably, as

3   described in the August 2016 search warrant application, co-defendant Ali Alzabarah, who was also in

4   communication with Foreign Official-1, and "Twitter Employee-1," who was in communication with

5   Defendant, also accessed the Twitter User-1 account.  Id., ¶¶ 33, 70.

6        In October 2017, the Government requested that Twitter provide information about all Twitter

7   employees who had accessed the Twitter User-1 account.  Wu Decl., ¶ 7(a).  Information provided by

8   Twitter in response to that request included Defendant' accesses of that account on six separate dates.  Id.

9   Defendant's accesses of Twitter User-1's account coincided with his communications with Foreign

10  Official-1 and at least one financial transaction and occurred shortly after Defendant traveled to the

11  United Kingdom, where he met Foreign Official-1.  Id., ¶¶ 7(d), 9.

12       Additionally, the FBI developed other evidence from searches of Almutairi and Alzabarah's

13  Google accounts, Defendant's residence and computer, and other independent investigatory steps. For

14  example, an email dated November 15, 2014, which was seized from Almutairi's email account,

15  reflected a message from Almutairi to Defendant's Twitter email address requesting an urgent meeting

16  on behalf of "VVIP 1ˢᵗ degree Member of the Saudi Royal Family." Wu Decl., ¶ 7(b).  Subpoenaed

17  emails obtained from Twitter on October 13, 2017 included the following: emails sent from Foreign

18  Official-1 to Defendant's Twitter email address with photos of them together at Twitter on June 13,

19  2014; an email from another individual employed by a Saudi Royal Family-related organization, who

20  was also present at Twitter on June 13, 2014, to Defendant referencing "the arrangement between you

21  and [Foreign Official-1] for many things"; and an email from Defendant to Foreign Official-1 in early

22  December 2014 about arranging a meeting in London. Id., ¶ 7(c).

23       As described in Special Agent Wu's declaration, assuming that a search warrant was not

24  authorized as to Defendant's Google account in August 2016, the FBI would have sought a warrant to

25  search that account based on, at a minimum, the facts set forth in the affidavit supporting the August

26  2016 warrant, information provided by Twitter by the end of  2017 indicating that Defendant had

27  accessed Twitter User-1's account, and the pattern and timing of Defendant's telephone and email

28  contacts with Foreign Official-1, Almutairi, and Twitter Employee-1.  Wu Decl., ¶ 10.

## II.     LEGAL STANDARD

The inevitable discovery doctrine acts as an exception to the exclusionary rule. *See Nix v. Williams*, 467 U.S. 431, 446 (1984). The Supreme Court has explained that the "[e]xclusion of . . . evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Id*. The doctrine generally requires that "the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." *United States v. Boatwright*, 822 F.2d 862, 864-65 (9th Cir. 1987) *see also Murray v. United States*, 487 U.S. 533, 539 (1988) (holding that inevitable discovery "is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."). The government bears the burden of showing by a preponderance of the evidence that "the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix*, 467 U.S. at 447; *see also United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989) ("following routine procedures, the police would inevitably have uncovered the evidence.").

## III.     ARGUMENT

### a.     FBI Would Have Sought a Later Warrant Independent of the 2016 Search

Although the Government disagrees with the Court's analysis of the facts and application of the law contained in the Order suppressing certain evidence,[1] there are sufficient facts independent from the 2016 search for the Court to conclude that the evidence would have been inevitably discovered had Judge Spero not approved the August 2016 warrant. As described above and in the attached affidavit from FBI Special Agent Letitia Wu, prior to August 2016, there was reason to believe that Defendant, a Twitter employee, was involved, or was being recruited to be involved, in the Saudi government's

---

[1] Unlike the affidavit in *United States v. Underwood*, 725 F.3d 1076, 1081, 1984 (9th Cir. 2013), which "include[d only two facts, foundationless expert opinion, and conclusory allegations," that required "either blind trust in [the affiant's] conclusory statements or the drawing of too many inferences," the affidavit underlying the 2016 search warrant described numerous communications between Defendant and others under investigation, including Foreign Official-1, co-defendant Almutairi, and another Twitter employee who also accessed Twitter User-1's account.  *See United States v. Shi*, 525 F.3d 709, 931 (9th Cir. 2008) (finding good faith where the affidavit "established at least a colorable argument for probable cause, and the agents relied on the search warrant[s] in an objectively reasonable manner.") (internal quotations omitted).

1  efforts – and more specifically Foreign Official-1's efforts – to unlawfully obtain Twitter's confidential

2  data. *See* Wu Decl., ¶¶ 6, 9.  Furthermore, as the investigation continued, the FBI developed additional

3  evidence, such as Defendant's accesses of Twitter User-1 account, that further indicated that Defendant

4  was involved in the scheme. *See* Wu Decl., ¶¶ 7, 9.

5        Among other things, records obtained prior to August 2016 indicated that Foreign Official-1 was

6  in communication with Defendant's personal cellphone beginning on June 14, 2014, and those

7  communications continued until at least January 2015. *See* Exhibit A, ¶ 76. Foreign Official-1 was also

8  in contact with Defendant's personal Gmail account on January 17, 2015. *See id.* Information provided

9  by Twitter in October 2017 independent from the 2016 search showed that Defendant accessed the

10  account of Twitter User-1 – a high-profile critic of the Saudi government whose account allegedly was

11  hacked in late 2018 – on six days between January and February 2015 and those accesses coincided with

12  Defendant's communications with Foreign Official-1 (as well as a meeting in London discussed below).

13  Notably, co-defendant Alzabarah (a Twitter employee) and Twitter Employee-1 *also* accessed the same

14  account; Alzabarah was *also* in communication with Foreign Official-1; and Defendant was *also* in

15  communication with Twitter Employee-1.  *See* Wu Decl., ¶¶ 7(a), 9.

16        Furthermore, the results of the 2016 search of Almutairi's Google account revealed his

17  communications with Defendant in November 2014 regarding an urgent meeting with Foreign Official-

18  1. *See* Wu Decl., ¶ 7(b).  Routine legal process issued after August 2016, including subpoenas for

19  telephone records and 18 U.S.C. § 2703(d) email information, continued to reveal communications

20  between Defendant and Foreign Official-1, Almutairi, and others.  *Id.* at ¶ 9.  Defendant's work emails,

21  obtained from Twitter on October 13, 2017, also revealed pictures of Defendant meeting with Foreign

22  Official-1 on June 13, 2014 at Twitter, an email from an associate of Foreign Official-1 about an

23  account purporting to be Saudi Royal Family Member that referred to "the arrangement between you

24  and [FO-1] for many things," and emails between Defendant and Foreign Official-1 arranging a meeting

25  in London on December 5, 2014.  *See* Wu Decl., ¶ 7(c).

26        Given Defendant's meeting in London with Foreign Official-1 on December 5, 2014, his

27  numerous telephone calls with Foreign Official-1 in January and February 2015, the email from Foreign

28  Official-1 to Defendant's personal Google account on January 17, 2015, and Defendant's accesses of

1  Twitter User-1's account in January and February 2015 (before Alzabarah and Twitter Employee-1 had

2  accessed it), FBI would have sought a search warrant for Defendant's Google account by the end of

3  2017 (assuming Judge Spero had not approve the original warrant). *See* Wu Decl., ¶ 10.

4        That warrant would have been supported by ample probable cause. Simply put, it was reasonable

5  for the FBI to conclude that Foreign Official-1 had recruited or was attempting to recruit multiple

6  Twitter employees, not just Alzabarah, and that Foreign Official-1's communications and meeting with

7  Defendant fit the pattern of the same scheme. At a minimum, there should be no question that FBI

8  would have sought the warrant after receiving information from Twitter in October 2017 about

9  Defendant's accesses of Twitter User-1's account (coupled with the facts set forth in the August 2016

10  search warrant).[2] *See United States v. Ockenfels*, No. C 05-00067 SI, 2006 WL 2038281, at *1-2 (N.D.

11  Cal. July 19, 2006) (concluding that otherwise suppressed evidence would have been inevitably

12  discovered). FBI certainly would have sought a warrant after developing additional evidence implicating

13  Defendant, including the London meeting email and photos related to financial transfers that coincided

14  with Defendant's contacts with Foreign Official-1 and his accesses of the Twitter User-1 account.

15        Finally, in connection with the 2018 searches, the Government's Opposition (Dkt. No. 133, pp.

16  13-15) discussed at length the evidence collected by FBI independent of the suppressed evidence seized

17  from Defendant's Google account. The Court found that evidence sufficient to support the later 2018

18  search warrants. The same independent evidence also would have supported a later search of

19  Defendant's Google account.

20        **b.  The Government Did Not Forfeit Its Inevitable Discovery Argument**

21        At the June 9, 2015, hearing, the Court raised the question of inevitable discovery. Counsel for

22  Defendant asserted a waiver argument. The Government, however, did not waive or forfeit its reliance

23  on the inevitable discovery doctrine. *See United States v. Scott*, 705 F.3d 410, 415-16 (9th Cir. 2012)

24

25      [2] The fact that the January 17, 2015 email was discovered on Defendant's computer in 2018
demonstrates that the Court would be engaging in speculation to assume that the evidence would not

26  have existed by late 2017 when Twitter provided information about Defendant's accesses of Twitter
User-1's account, and the FBI inevitably would have sought a warrant for his Google account. *See*

27  *Segura v. United States*, 468 U.S. 796 (1984) (in an independent-source challenge, rejecting as "pure
speculation" courts' consideration of arguments that evidence would have been removed or destroyed

28  between an illegal search and a later valid search); *see also Murray*, 487 U.S. at 539 ("[T]he inevitable
discovery doctrine . . . is in reality an extrapolation from the independent source doctrine.").

1  (finding that government's theory was not forfeited when it was raised during the evidentiary hearing but

2  not included in the government's opposition).

3  While not explicitly included in the Government's opposition, the Court raised the issue at the

4  hearing on June 9, which the parties briefly discussed, before then directing the parties to provide

5  supplemental briefing in advance of the June 23rd hearing. *See id*. at 415 (raising a theory orally at an

6  evidentiary hearing on a motion to suppress preserves the theory for appeal). Thus, Defendant has

7  sufficient notice and opportunity to address the issue, and the Court is able to decide the issue on a

8  complete record. *Id*.

9  Several district courts have addressed this exact scenario and concluded that the government did

10  not waive its reliance on the inevitable discovery doctrine. *See United States v. Brooks*, 358 F. Supp. 3d

11  440, 462 (W.D. Pa. 2018) (rejecting defendant's waiver argument, where "the court . . . [gave] defendant

12  an opportunity to present evidence and argument on the doctrine of inevitable discovery . .  without

13  offending defendant's due process rights.") (citing *United States v. Sinkler*, 267 F. App'x 171, 175-76

14  (3d Cir. 2008) (considering the doctrine of inevitable discovery and ruling in the government's favor

15  even though the court of appeals, and not the government, first raised the issue)); *United States v.*

16  *Blackburn*, No. CR-14-00129 WJ, 2015 WL 13651021 (D.N.M. Dec. 17, 2015) (rejecting defendant's

17  waiver argument, where "the Court inquired into the issue at the hearing, and allowed the parties to

18  address it in the supplemental hearing") (citing *United States v. Sitlington*, 527 Fed. Appx. 788, 792 n.1

19  (10th Cir. 2013) (holding that inevitable discovery was not waived where neither party raised it in the

20  district court but both parties argued it on appeal)), aff'd, 785 F. App'x 539 (10th Cir. 2019).

21  **IV.   CONCLUSION**

22  For the reasons addressed above, the Court should order that the evidence obtained from the

23  2016 search is otherwise admissible pursuant to the inevitable discovery doctrine.

24  DATED:  June 21, 2021.

STEPHANIE M. HINDS
Acting United States Attorney

26  */s/ Colin Sampson*
COLIN C. SAMPSON
27  Assistant United States Attorney
BENJAMIN J. HAWK
28  Trial Attorney, National Security Division