GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA CHUANG
CARMEN SMARANDOIU
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:         Angela_Chuang@fd.org

Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. AHMAD ABOUAMMO, Defendant. | **Case No.:** CR 19–00621 EMC <br><br> **DEFENDANT ABOUAMMO'S SECOND SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO SUPPRESS** <br><br> **Court:**  Courtroom 5, 17th Floor <br> **Hearing Date:** August 4, 2021 <br> **Hearing Time:** 2:30 p.m. |
|---|---|

I. **The inevitable discovery doctrine does not apply.**

The inevitable discovery doctrine cannot be used "to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant." *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995); *see United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016). Where the government obtained a warrant lacking probable cause, its "'assertion that it would have obtained a lawful search warrant based upon the information subsequently discovered would emasculate the [probable cause] requirement for a search warrant….'" Wayne R. LaFave, 6 *Search And Seizure* § 11.4(a) (6th ed. 2020) (quoting approvingly *State v. Handtmann*, 437 N.W.2d 830, 838 (N.D. 1989)). Application of the doctrine in this scenario "'would encourage law-enforcement shortcuts . . . [and] would also encourage incomplete police investigations in the hope that information subsequently discovered would cure a defective warrant. We cannot legitimize that type of investigatory practice.'" *Id.* As in the *Mejia* line of cases, the doctrine does not apply.

II. **Based on the state of its investigation in August 2016, the FBI would not have obtained a search warrant for Abouammo's Google emails in late 2017 or 2018**

The inevitable discovery doctrine "permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably'" through lawful means. *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). This showing cannot involve speculation, "but focuses on demonstrated historical facts…." *Nix*, 467 U.S. at 444 n.5. This Court must determine inevitability "'***prior*** to the unlawful conduct, based on the information possessed and investigations being pursued *at such time*.'" *United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir.), amended, 157 F.3d 1161 (9th Cir. 1998) (quoting *United States v. Drosten*, 819 F.2d 1067, 1070 (11th Cir. 1987)) (emphasis added). The doctrine "requires the district court to determine, viewing affairs as they existed ***at the instant before*** the unlawful search, what *would have happened* had the unlawful search never occurred." *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 102 (2d Cir. 2016) (emphasis in original and added; internal quotations omitted). The doctrine applies "only when the fact that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself." *Reilly*, 224 F.3d at 995.

To prove inevitable discovery, "the Government must make a detailed showing of ***each of the contingencies*** involved and the District Court must find each contingency satisfied ***with respect to***

*each item of seized evidence*." *In re 650 Fifth Ave. & Related Properties*, 830 F.3d at 106 (emphasis added; internal quotations omitted). Here, the government argues that the FBI would have obtained a warrant after it learned from Twitter, in late 2017, that Abouammo accessed Twitter User-1's account. *See* Dkt. No. 147 at 2, 3, 6; Dkt. 147-1 ("Wu Dec.") ¶ 10. But the government cannot demonstrate (and does not claim) that, based on its investigation status in August 2016 (before the Google SW), it would have requested that information from Twitter. Nor can the government prove (and it does not claim) that its 2017 request was not prompted by seeing Abouammo's emails, especially Foreign Official-1's January 17, 2015, email regarding Twitter User-1.[1]

The FBI investigated unauthorized access of Twitter user data from the beginning and focused on Twitter User-1 due to its prominence and Alzabarah's access. But until the Google SW, the FBI did not suspect Abouammo of improperly accessing accounts. Rather, he was of interest due to his prior Twitter employment and sporadic contact with Foreign Official-1, Twitter Employee-1, and others. *See* Google SW ¶¶ 69-78. Nor did the FBI suspect Twitter Employee-1 of improperly accessing Twitter User-1. *Compare* Google SW ¶ 70 *with* Google SW ¶ 33-34. Only after obtaining the January 17, 2015, email, did the FBI seek the list of all Twitter employees who accessed Twitter User-1 (September 2017), and details about Abouammo's access (October 2017). Wu Dec. ¶ 7(a). And only then did the FBI obtain some of Abouammo's Twitter emails (October 2017). *Id.* ¶ 7(c).

The "demonstrated historical facts" thus show that the FBI had no reason to suspect that any employees besides Alzabarah had improperly accessed Twitter User-1, and therefore would not have subpoenaed that information from Twitter. Importantly, Wu does not claim otherwise. *See* Wu Dec. ¶ 7. And any such claim would be contradicted by the FBI's pursuing these investigatory steps only in late 2017, *after* it learned of the January 17, 2015, email from the Google SW. At a minimum, the government cannot demonstrate that the information from Twitter was "born of circumstances other than those brought to light by the illegal search itself" – that is, the January 17, 2015, email. *Reilly*, 224 F.3d at 995. Because the Court "cannot say with any certainty that the [FBI] would have discovered the evidence if the illegal search had not occurred," the doctrine does not apply. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1400 (9th Cir. 1989).

---

[1] Critically, the *only* source for the January 17, 2015, email is the Google SW.

SEC. SUPP. BR. ISO MOTION TO SUPPRESS
*ABOUAMMO*, CR 19–00621 EMC

### III. The emails would not have been inevitably discovered at a later time

The government also cannot meet its burden of proving that all emails would have been found at the time of a later search. The government assumes that such a search would have happened in late 2017. Dkt. No. 147 at 6 n.2. That is pure speculation, unsupported by evidence, and belied by the FBI waiting years to seek search warrants for Foreign Official-1's email (September 11, 2018) and for Abouammo's Twitter work email (May 31, 2019). Even assuming *arguendo* that a search would have happened in late 2017, it cannot be assumed that ***all*** emails would still have been found simply because the government later discovered the January 17, 2015, email on Abouammo's computer in 2018. *Id*. Discovery of one email in 2018 does not demonstrate that all other emails still existed in late 2017 or later, given the ease of deleting emails.[2] For instance, ***the Craigslist emails (regarding the watch) were not discovered on Abouammo's computer in 2018***.

Because emails are easily deleted and some were indeed not found in 2018, the government cannot meet its burden of showing that all Google emails would have inevitably been found in late 2017 or later. *See, e.g., United States v. Young*, 573 F.3d 711, 721-22 (9th Cir. 2009) (government did not demonstrate that defendant would not have gone to his hotel room, "decided to store the firearm, or, alternatively, take his belongings with him and vacate the room"); *United States v. United States v. Boatwright*, 822 F.2d 862, 864-65 (9th Cir. 1987) ("Rickie would not have waited patiently beside his weapons for an agent to arrive with a warrant."); *United States v. Baires-Reyes*, 750 F. App'x 548, 550 n.3 (9th Cir. 2018) (not "inevitable" that officers would have found the same evidence and made the same observations if they came back to defendant's residence with a warrant).[3]

At a minimum, the government has not met its burden regarding the Craigslist emails, which must be suppressed. The government should also be ordered to specifically identify any other Google emails that it intends to use at trial, and demonstrate with specificity that those emails would inevitably been found in late 2017 or at a later time.

---

[2] Complete deletion of data in a Google account from all Google systems takes at most 6 months. *See* https://policies.google.com/technologies/retention; https://cloud.google.com/security/deletion#deletion_timeline.

[3] The government's reliance on *Segura v. United States*, 468 U.S. 796 (1984), to avoid its burden of proving that the emails *would have* been inevitably found at a later time is unavailing. *Segura* involved the independent source doctrine, which means that the evidence *actually* was discovered. *See Lundin*, 817 F.3d at 1162. The government's burden is not the same under the two doctrines.

SEC. SUPP. BR. ISO MOTION TO SUPPRESS
*ABOUAMMO*, CR 19–00621 EMC

Dated:   July 14, 2021

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California

/S
ANGELA CHUANG
CARMEN SMARANDOIU
Assistant Federal Public Defenders