Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. CR 19-00621-EMC |
| | ) | |
| AHMAD ABOUAMMO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Wednesday, September 29, 2021

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)

For Plaintiff:
        STEPHANIE M. HINDS
        Acting United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
    **BY:  BENJAMIN J. HAWK**
        **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
        OFFICE OF THE FEDERAL PUBLIC DEFENDER
        450 Golden Gate Avenue
        19th Floor
        San Francisco, California 94102
    **BY:  ANGELA CHUANG**
        **JODI LINKER**
        **ATTORNEYS AT LAW**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
         CSR No. 12219, Official Reporter

PROCEEDINGS

```
 1   Wednesday - September 29, 2021                    10:00 a.m.

 2                       P R O C E E D I N G S

 3                          ---o0o---

 4        THE CLERK:  Court is now in session.  The Honorable

 5   Edward M. Chen is presiding.

 6        Calling Criminal Action 19-621, United States of America

 7   versus Ahmad Abouammo.

 8        Counsel, please state your appearances for the record,

 9   beginning with counsel for the Government.

10        MR. HAWK:  Your Honor, Benjamin Hawk on behalf of the

11   United States.  I just wanted to note that Mr. Sampson and

12   Mr. Cheng, who recently entered his appearance, are unavailable

13   today, so I will be handling any of the Court's questions.

14        THE COURT:  All right.  Thank you, Mr. Hawk.

15        MS. CHUANG:  Good morning, Your Honor.  Angela Chuang

16   on behalf of Mr. Abouammo.  He is out of custody and appearing

17   over Zoom, and we consent to the use of video today.

18        THE COURT:  All right.  Thank you, Ms. Chuang.

19        And good morning, Mr. Abouammo.

20        THE DEFENDANT:  Good morning, Your Honor.

21        THE COURT:  Okay.  We set the trial date in this

22   matter back in August, and I -- because I would like to ask

23   you, Ms. Chuang, what has occurred since August that is a

24   surprise that could not have been contemplated that would

25   require and warrant a change in the trial date that we already
```

1  set?

2       **MS. CHUANG:**  Your Honor, a lot of that answer would go

3  to the ex parte filing that I'm happy to discuss with the Court

4  outside the Government's presence.

5       Other than the issues therein, I think that the expected

6  family matter for Mr. Sampson is absolutely relevant to

7  scheduling, as it would be any time that a lead attorney on a

8  case could potentially be called away for personal issues such

9  as that.

10      It's -- I understand that he does not wish to discuss that

11 publicly, but it is something that is often discussed publicly

12 on the record, and I believe --

13      **THE COURT:**  Well, let me ask -- what's odd is that he

14 is not asking or the Government is not asking for a

15 continuation here.  It seems to me, the Government will figure

16 out a way -- and I'll ask you that, Mr. Hawk.

17      Is there a problem?  Whatever happens with one counsel, is

18 this case going to be tried irregardless?

19      **MR. HAWK:**  That's my understanding, Your Honor.

20      Mr. Sampson, obviously, knows his own personal

21 circumstances and how that would impact his ability to do his

22 job.  And I trust that he is prepared for, you know, the

23 possibility that an event might happen earlier than expected.

24      And as the Court -- again, as I noted earlier, Mr. Cheng

25 has also joined the team here, so I believe the Government is

PROCEEDINGS

1    prepared to move forward.

2         **THE COURT:**  All right.  So I'm going to assume that

3    that's the case, because given all this, I expect

4    the Government to move forward.  If I decide not to continue

5    this trial, I'm not -- the Government is essentially going to

6    be estopped from arguing:  Oh, wait a minute we're not ready.

7         I mean, if I say we're going, we're going.  So I want to

8    make that clear.  So that need not be your concern at this

9    point, Ms. Chuang.

10        **MS. CHUANG:**  Okay.  And, Your Honor, there are other

11   issues that we did raise at the hearing in August when this

12   trial date was set because if the Court recalls, we had

13   originally asked for a trial date in the spring at that

14   hearing.  Part of the reason for that was that we were still

15   working through the discovery.

16        We have gotten through a large part of it, but there is

17   still a substantial amount for us to review.  Our efforts to

18   finish up the discovery review are also somewhat hampered by

19   our own staffing resources.  The paralegal who has been

20   responsible for organizing, maintaining, and helping to review

21   the discovery is also now -- has been working on a case that is

22   set for trial earlier, in early November, and that's been

23   taking a lot of her attention.

24        I would also note that there are still some pending

25   outstanding discovery requests that the Government has not

**PROCEEDINGS**

1    produced, there are -- there is some records from an agency

2    that they -- that the Government contends are not voluminous.

3    That's not really the issue that I brought up in the motion.

4        The main discovery request that's outstanding has to do

5    with materials related to an expected witness that we have

6    discussed in -- in previous hearings on this matter, who is

7    expected to testify.

8        We have made this request multiple times to

9    the Government.  They are not saying that they will not turn

10   over the materials.  But they've just been working on it and

11   have not turned it over as of yet.

12       **THE COURT:**  Well, let's talk about any outstanding

13   discovery at this point from the Government.

14       What do you know, Mr. Hawk?

15       **MR. HAWK:**  Sure, Your Honor.  First, I'll just note

16   that I'm not quite sure of the witness that the defense is

17   referring to.  I believe there was prior discussions about

18   Foreign Official Number 1 who, at least to my understanding,

19   will not be a government witness in this case.  I can't speak,

20   obviously, for the defense case.

21       In terms of outstanding discovery, as Your Honor knows,

22   I believe, discovery has been discussed at numerous hearings.

23   The majority, if not all, of it has been produced for a long

24   time now.

25       What the defense has requested, or at least my

1    understanding is, records from other agencies related to

2    Foreign Official Number 1, in particular, records from the

3    State Department that I understand are -- involve travel

4    records and some diplomatic notes.  And I understand that

5    Mr. Sampson has addressed those with the defense in terms of

6    the Government's efforts to obtain those.

7        And I would just also note for the record, Your Honor,

8    these are also documents that the defense can obtain, that are

9    not immediately in the possession of the prosecution team, but

10    nonetheless, you know, we made the offer and agreed that we

11    will help the defense attempt to obtain them.  So I understand

12    that this may be a total of three or so pages that are

13    outstanding from the State Department.

14        If there is anything else that I'm missing, you know, I

15    would defer to Ms. Chuang to correct me if I'm wrong with any

16    of that.

17        **THE COURT:**  All right.  Is that accurate or is there

18    something he's missing?

19        **MS. CHUANG:**  Well, given what the Government's

20    position has been on before about stating identities on the

21    record, I won't name the witness that our discovery request

22    pertains to.  I will just say that he has been described

23    previously in this case as an unindicted co-conspirator.  I

24    think he has been referred to as "Associate 1" in

25    the Government's own filings.  And none of those materials

**PROCEEDINGS**

1    are -- are able to be obtained by defense counsel

2    independently.  Much of it would go toward *Giglio* or *Brady*

3    material, I believe, if that's specific enough to jog

4    Mr. Hawk's memory about what person I'm speaking about.

5              **THE COURT:**  All right.  So it's Associate 1, not

6    Official Number 1?

7              **MS. CHUANG:**  Correct.

8              **THE COURT:**  Any update on --

9              **MS. CHUANG:**  And I can -- I'm happy to use initials if

10   that --

11             **MR. HAWK:**  Yeah.  Your Honor, I think, with that

12   description and referring to him as "Associate 1," I think I

13   understand.  I think, unfortunately, at least my recollection

14   is not clear on that particular part of the discussion with --

15   perhaps Mr. Sampson might have had separately with Ms. Chuang.

16   But my understanding, again, is that all discovery is

17   outstanding and -- and with respect to -- I guess, apologies

18   for having these discussions with Ms. Chuang on the record

19   here, Your Honor.

20        But if I may, are we referring to Associate 1 travel

21   records from the State Department?

22        If Ms. Chuang could please specify exactly the discovery

23   that she believes is outstanding, perhaps I could better

24   address it that way.

25             **MS. CHUANG:**  Not travel records specifically.  I'm

**PROCEEDINGS**

1  happy to forward an e-mail with the request to Mr. Hawk.  I

2  don't know if this is something that needs to be done on the

3  record.  But, generally, there is materials that would be

4  relevant to potential impeachment issues and, as I said, *Giglio*

5  issues, anything of that nature.

6      My understanding from Mr. Sampson, is that he is working

7  on the request -- he has been saying that for several months

8  now, that they will be forthcoming.  The Government noted that

9  they might ask for a specific type of protective order with

10 respect to these materials, which we have indicated we would

11 have no problem with once we review a draft; but we haven't

12 gotten anything.

13     **THE COURT:**  All right.  And are these records from

14 other agencies or some --

15     **MS. CHUANG:**  No.  No, Your Honor.

16     **THE COURT:**  Okay.

17     **MR. HAWK:**  Your Honor, if I'm thinking of what

18 Ms. Chuang is referring to with respect to Associate 1, I would

19 fully expect any discovery obligations in that regard to be

20 fulfilled in short order, before trial.  And I also don't

21 understand how that would be a cause for delay of the trial in

22 terms of any *Jencks* materials or, you know, *Giglio* materials,

23 as the Government is continuing to prepare for trial and

24 prepare its witnesses.

25     **THE COURT:**  Well, to the extent there is outstanding

1   discovery, I would like to be updated as to that and when

2   that's going to be resolved or when those materials will be

3   produced, because it's hard for me to understand how impactful

4   it would be.  But that could all be obviated if I knew, for

5   instance, it's going to be produced in the next couple of

6   weeks -- right -- or something like that.

7        MR. HAWK:  Your Honor, I have been -- since been

8   informed -- at least it's my understanding that this is all

9   *Jencks* material with respect to Associate Number 1.  But the

10  Government is working on it.  And I will confer with

11  Mr. Sampson after the hearing in terms of determining how

12  quickly we can get that to Ms. Chuang.

13       THE COURT:  Okay.  Well, let me ask this -- and we're

14  going to go into I have some in-camera questions for

15  Ms. Chuang.  But, I think I can reveal this much, and that is

16  to the extent that there are potential witnesses who may have

17  travel difficulties in view of the pandemic restrictions -- I

18  don't know, with the recent change, whether that changes things

19  or not in the U.S., allowing some international travel -- but

20  there -- is it anticipated on either side and is there an

21  impediment to having witnesses appear remotely by video,

22  satellite, or Zoom, or whatever?

23       MS. CHUANG:  Your Honor, I -- we would object to that.

24  I think there is no substitute -- as we've seen in the past

25  year and a half, that there is no substitute for live,

1    in-person testimony.

2        Certainly, hearings that don't involve witnesses

3    testifying, I think, can easily be substituted via Zoom, as

4    demonstrated by today's hearing.  But, when we're talking about

5    a trial where juries need the ability to see a witness on the

6    stand, to assess their body language and demeanor, I don't

7    think there is any substitute.  So we would object to using any

8    type of remote testimony.

9        I think there could be an issue with having witnesses

10   testify remotely.  They -- there is no controlling or really

11   even being able to tell what -- if they are looking at

12   something else on their screen while they're testifying, which

13   could certainly impact what they testify to, if they are able

14   to covertly or otherwise look things up on their computer while

15   they're supposed to be testifying.

16       **THE COURT:**  What's the Government's view to the extent

17   that one side or the other wants to call a witness who can't be

18   here and the alternative is to have to postpone the trial until

19   travel conditions permit?

20       **MR. HAWK:**  Your Honor, it's, of course, difficult to

21   offer a view without knowing the witness or whom we're

22   referring to here in terms of somebody that would be

23   testifying.  I think understanding who the witness, you know,

24   would be would help inform the Government's view.  And I also

25   would like to have the opportunity to confer with Mr. Sampson.

1       But what I would offer the Court -- it's been at least my

2   experience recently in other matters -- you know, there is a

3   solution if this is a witness who would satisfy the Rule 15

4   criteria, and a witness that could be deposed prior to trial

5   that would be unavailable because of travel conditions.

6       I think postponing a trial that's two years since

7   indictment at this stage, you know, we're just further delaying

8   it, and travel conditions might not actually improve by the

9   time the case is reset for trial.

10          **THE COURT:**  So you're proposing a Rule 15 solution?

11          **MR. HAWK:**  I'm simply just -- Your Honor, without

12  knowing who the witness is or the circumstances, I think it

13  would be Ms. Chuang's motion to make in order to satisfy the

14  elements under Rule 15 that the individual has -- I'm trying to

15  go off memory here, Your Honor, but I believe there is two

16  prongs in terms of materiality and unavailability for Rule 15.

17          And I would also just note, Your Honor, that to the extent

18  there are witnesses outside the United States, both parties are

19  similarly situated.  There are some potential government

20  witnesses that are outside of the United States, that

21  the Government cannot necessarily call due to travel

22  restrictions, but -- and, Your Honor, I'm just pointing out

23  that Rule 15 is a possible solution if this witness has

24  material information for the defense.

25          **THE COURT:**  Well, let me ask you, Ms. Chuang, I

1  understand that you would assert an interest in not revealing,

2  you know, defense strategy and this sort of thing.  But if you

3  were asking for continuing a trial, and we have to debate, for

4  instance, the feasibility of Rule 15, the materiality of this

5  witness, whether a Rule 15 depo or some kind of remote hearing

6  will work, it's a little hard to make those decisions without

7  input from both sides.  And I'm wondering whether at some point

8  the interests of an accurate adjudication is going to outweigh

9  your strategic desire to withhold your witness list far in

10 advance of trial.

11      What's your view on that?

12      **MS. CHUANG:**  Well, I think the Court is exactly right,

13 that my main issue with that is that it would reveal a

14 significant part of Mr. Abouammo's defense trial strategy well

15 in advance of trial.  I think that clearly impacts his right to

16 mount his own defense and to mount an effective defense if we

17 were to be forced to show our hand to the Government.

18      Your Honor, a Rule 15 deposition, I don't think it's a

19 viable alternative here.  Travel restrictions remain for us

20 even.  If we were to try to travel internationally to obtain

21 depositions, that would likely require significant quarantining

22 time, which I'm just not sure is doable within this time

23 period.

24      And, additionally, again, I would just reiterate that it's

25 not that this -- you know, it's not that witnesses are refusing

**PROCEEDINGS**

1    to come or are unable to come out of -- because they don't want

2    to.  It is just the fact of the timing right now, with the

3    travel conditions and the public health concerns.

4        So there really is, again, no substitute for live,

5    in-person testimony.  I think Mr. Abouammo's right to present

6    his defense would be seriously negatively impacted if he were

7    forced to not only reveal his strategy, but to substitute a

8    deposition in lieu of actual witness testimony when the jury

9    would be able to --

10       **THE COURT:**  Do you have case law on this point?  Do

11   you have case law saying it's a violation of a Sixth Amendment

12   right, for instance, to -- if a person can't be there and

13   the Court were to order remote video deposition or video

14   testimony?

15       **MS. CHUANG:**  Not at the moment, Your Honor, but I

16   think it's -- it makes sense when you think about it.

17       There is a reason why trials are in person.  There is a

18   reason why people physically take the stand.  And a lot of it

19   has to do with the fact that the jurors -- the jurors need an

20   opportunity to accurately assess each witness's testimony.

21       **THE COURT:**  Well, on the other hand, it's not

22   uncommon.  It's not uncommon to have a videotaped -- obviously,

23   that's what Rule 15 contemplates.  That's not a live person.

24   You're going to see somebody giving a deposition on the screen.

25   In the old days, you didn't even have video.  It would be, you

1   know, reading the transcript.

2       It is not unoften that we see witnesses testify remotely.

3   So I'm not sure I agree with your supposition that videotaped

4   or video testimony is somehow absolutely essential in every

5   case.  I don't know if I buy that, because Rule 15 doesn't

6   contemplate that.

7       So we're going to reach a point where I'm going to ask for

8   a briefing.  But I think I wanted to go into the in camera

9   portion to talk about the specifics of your declaration, and

10  then we'll re- -- resume in this courtroom.

11      Angie, you've set up a --

12          **THE CLERK:**  I have, Your Honor.  I have an e-mail

13  prepared to go out for the Zoom meeting invitation.

14          **THE COURT:**  Okay.  So we just then click on that and

15  then we'll automatically leave this one or do we --

16          **THE CLERK:**  Yes, I will --

17          **THE COURT:**  Do I have to leave this room first?

18          **THE CLERK:**  Yes.  Yes.  We have to terminate this --

19  the Zoom webinar.

20          **THE COURT:**  So all of us, except Mr. Hawk, will leave

21  this room to go into the Zoom room, and then we'll have an

22  in camera hearing and then return.  Okay?

23          **MR. HAWK:**  Your Honor, may I just clarify?  Should I

24  stay on this Zoom call here?

25          **THE COURT:**  I think so.  Right, Angie?  Or would it

```
 1   close --

 2          THE CLERK:  I'm going to have to close the webinar

 3   completely.  So I will e-mail you, Mr. Hawk, right prior to

 4   when we return to the webinar.

 5          MR. HAWK:  Understood.  I'll be here.  Thank you.

 6          THE COURT:  Okay.  Thank you.

 7          THE CLERK:  Ms. Chuang, if you could send the

 8   invitation also to the defendant if he is going to participate

 9   in the ex parte hearing.

10          MS. CHUANG:  Yes.  And I did e-mail you his e-mail

11   address.  I don't know if you received it yet, but I am happy

12   to forward it if not.

13          THE CLERK:  Okay.  I did not receive it yet.

14          MS. CHUANG:  I just also resent Mr. Abouammo's e-mail

15   address to you.

16      I got the e-mail with the new link.  Should we switch over

17   now?

18          THE CLERK:  Okay.  I'm going to close and reopen the

19   Zoom meeting.

20          THE COURT:  Okay.  See you in the room.

21    (The following proceedings were conducted in camera and under

22              seal and are bound separately.)

23

24

25
```

**PROCEEDINGS**

1        (The following proceedings were held in open court.)

2        **THE CLERK:**  Court is now back in session.

3    Counsel, please restate your appearances for the record.

4        **MR. HAWK:**  Benjamin Hawk on behalf of the United

5    States.

6        **THE COURT:**  All right.  Thank you, Mr. Hawk.

7        **MS. CHUANG:**  Angela Chuang and Jodi Linker on behalf

8    of Mr. Abouammo.

9        **THE COURT:**  All right.  Thank you, Ms. Chuang,

10   Ms. Linker.  And welcome back, Mr. Abouammo.

11       All right.  We're back on the record in open court.

12   The Court has conducted an in camera proceeding with the

13   defendant and counsel regarding Ms. Chuang's declaration

14   explaining in some detail the justification for seeking a

15   continuance.

16       I have indicated to counsel, defense counsel, that I want

17   some additional information by way of declaration from

18   prospective witnesses to assure that, number one, they would,

19   in fact, be willing to testify here in court; two, the

20   substance of what would be said so we can be assured that it is

21   material and relevant and helpful to the defense; and, three,

22   verification of any travel restrictions or unavailability and

23   the reasons therefor, why our trial schedule cannot be

24   accommodated.

25       I've also indicated a willingness to take witnesses out of

1  order, if necessary, even if it's during the Government's case.

2  I understand there are reasons to object to that on the part of

3  the defense; but on the other hand, there is reasons to do it,

4  and I'm willing to consider that as a possibility.

5      I would like the parties to provide -- while we wait for

6  that material to come in, I would like the parties to brief the

7  question about -- I raised about remote:  Is there a problem if

8  I were to authorize witnesses to appear by satellite, Zoom, or

9  some other remote mechanism, what's the legal analysis about

10 whether or not that, for instance, violates the Fifth or Sixth

11 Amendment rights of the defendant under the circumstances that

12 we're looking at here?  So I would like to see what the cases

13 say about that, what the standards are.

14     And, two, whether a Rule 15 deposition is a viable

15 solution here, and what do the cases say about that.  And that

16 could be a live deposition at a convenient place and time that

17 could be met.  Or, again, I've seen remote depositions.  It

18 sort of saves -- it sort of opens up that same question about

19 remote versus live witnesses, and what the rights of the

20 defendants are in that regard in a criminal case.

21     But those are the two questions, because those seem to me

22 to be obvious alternates to consider, where you have

23 international witnesses, especially during a time of pandemic

24 restrictions.

25     And so I want to resolve this soon.  And I would think if

1    we had two weeks to get the information from the witnesses, as

2    well as to file something with me on these legal questions, and

3    then we reconvene in two weeks.  Maybe -- I need something a

4    couple of days in advance of that, but if we were to reconvene

5    on the 13th?

6              **THE CLERK:**  Yes.  Your Honor, the afternoon is a

7    pretty busy calendar.  Maybe the morning?

8              **THE COURT:**  Yeah.  Do it at 10:30 in the morning?

9              **THE CLERK:**  Yes.

10             **THE COURT:**  And I will need the materials by midday

11   the 11th.  And I would like to have it two days in advance, so

12   by noon on the 11th, briefing on the question on the legal

13   questions I've asked, and then the -- and filing under seal,

14   for in camera review, the declarations of the witnesses about

15   their availability and willingness to appear and give testimony

16   in this case, so I know exactly who we're talking about.

17        I'll also indicate the defendant has raised some concern

18   about this trial extending and dragging on into the holiday

19   period where if -- we might start to lose jurors or start

20   thinking about having to take a recess, which I'm not going --

21   I don't want to do.

22        And I want to reiterate that the Government has indicated

23   that they could try this case in four court days; correct?

24        I think you're muted, Mr. Hawk, so --

25             **MR. HAWK:**  I am.  Apologies, Your Honor.

1    I believe, if memory serves, it was 14 of the Court's

2  calendar days, expecting Thursdays to be dark.

3          **THE COURT:**  Well, 14 days?

4          **MR. HAWK:**  I'm sorry, Your Honor.  Seven to eight

5  court days.

6          **THE COURT:**  For just the Government's case?

7          **MR. HAWK:**  Yes, Your Honor.  My understanding -- and

8  perhaps I'm wrong or my recollection is wrong -- and apologies

9  for that -- but Your Honor has short trial days, and then

10  Thursdays are dark days.  We may have discussed about opening

11  up the --

12          **THE COURT:**  Yeah, it's about a four-and-a-half-hour

13  court day, five -- you get about four and a half hours of

14  testimony.

15          **MR. HAWK:**  Yeah, I think at the outer bounds, seven to

16  eight days, Your Honor.

17          **THE COURT:**  All right.  Well, I may challenge you on

18  that because that -- we're going to have jury selection on the

19  1st, I believe, that's what we're scheduled for, 1st of

20  December.  Trial will start in earnest on the 6th.  And I would

21  like the Government to be complete by -- towards the beginning

22  of the second week so that the defense, presumably, would take

23  the rest of that week if they need to, and we could get it to

24  the jury by either the end of that week or the beginning of the

25  next week.  I don't want to leak too close into that third week

1    because then it's a holiday problem and we're going to lose

2    jurors and that sort of thing, so --

3              **MR. HAWK:**  Understood.

4         And, Your Honor, am I right to understand that

5    the Court's -- I can't remember why we had jury selection on

6    the 1st of December with trial commencing on the 6th.  Does

7    the Court have any availability to start the trial or would the

8    defense have availability to start the trial prior to the 6th,

9    closer to time of jury selection to accommodate, you know, the

10   concern about the holidays?

11             **THE COURT:**  The problem is -- I've got meetings the

12   2nd and 3rd, is the problem.  And I wanted to do jury

13   selection, get a head start and -- so we could hit the ground

14   running on the 6th.  That's the reason.

15             **MR. HAWK:**  Understood, Your Honor.

16             **THE COURT:**  So in these days, it would probably take

17   the better part of the day, so I want to be able to set aside

18   the entire day, if we need it, on the 1st to select the jury.

19        So please keep that in mind.  You know, I'm pressing

20   everybody in civil and criminal cases to move these things

21   along because the risk of losing a jury is greater than it used

22   to be because of these conditions.

23        So let's -- we'll reconvene in two weeks.  If you could do

24   your filings Monday before the next -- I guess two Mondays from

25   now, addressing the matters that I've asked for.

1        And, obviously, the defense can file the things I asked

2    for under seal for in camera review.

3        And I'll continue this hearing until then.

4            **MR. HAWK:**  Your Honor, if I may?

5            **THE COURT:**  Yeah.

6            **MR. HAWK:**  Two brief things.

7        First, just with the additional briefing, I believe,

8    Your Honor had set some deadlines for Monday in expectation of

9    trial.  Is it possible to have some of those deadlines

10   postponed by a week to allow sufficient time to brief these

11   issues for the Court?

12       And I guess, what I'm asking is, not having been a part of

13   the in camera proceedings, is Your Honor's inclination to -- I

14   guess, is the information Your Honor is obtaining in reference

15   to potential Rule 15 depositions, or is it ultimately still

16   taken under consideration with respect to a continuance?

17       Because -- the reason I am asking is the Government is

18   preparing in earnest for a trial date.

19           **THE COURT:**  Well, I need this information before I

20   make a final decision on the motion to continue.  I have

21   indicated that, you know, from my perspective, I'm setting a

22   bar.  You know, it's going to -- I'm going to have to be

23   convinced that there is good cause to continue this trial.  And

24   so I, you know, obviously I need to consider this before I make

25   a final decision.

1    So at this point, the trial is still on.  I have not

2    granted or denied the motion.  I know you would like to know

3    earlier rather than later, but since it's a serious matter, I

4    need to get the information.

5             **MR. HAWK:**  Understood.

6        And the last thing, Your Honor, I just wanted to clarify

7    the discovery conversation we were having earlier.  I did speak

8    to Mr. Sampson while the defense and Your Honor were in the in

9    camera proceedings, and I just wanted to clarify, the defense's

10   recent request related to Foreign Official Number 1, which is

11   where my confusion came from, and I understand that that was

12   not the topic of discussion earlier.

13       With respect to Associate Number 1, it's my understanding

14   that all that's outstanding is *Jencks*, which consists of an

15   immunity agreement -- which is not technically *Jencks*, but a

16   grand jury transcript in connection with an immunity agreement.

17   The defense has the witness's FBI 302 and has had it for some

18   time.  So there is really is just a small amount that remains

19   in terms of Associate Number 1's discovery.

20            **THE COURT:**  All right.  Well, as part of your

21   filings -- I'm glad you brought that up.  As part of your

22   filings two Mondays from now, I would like just a brief update

23   on whether there is any outstanding discovery that's still a

24   problem.  I'm hoping that all gets resolved because that makes

25   my decision a little easier, and it removes one matter off the

PROCEEDINGS

1    plate.

2        So I would urge the parties to work together to resolve

3    any outstanding discovery, and let me know when you make your

4    filing on two Mondays from now, whether there is still

5    outstanding problems in that regard.

6        All right?

7            **MR. HAWK:**  Understood.  Thank you, Your Honor.

8            **THE COURT:**  Great.  Thank you.

9            **THE CLERK:**  Court is adjourned.

10           (Proceedings adjourned at 11:06 a.m.)

11                       ---o0o---

12

13                 **CERTIFICATE OF REPORTER**

14        I certify that the foregoing is a correct transcript

15   from the record of proceedings in the above-entitled matter.

16

17   DATE:   Sunday, October 3, 2021

18

19

20

21

22   _____
        Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
23              Official Reporter, U.S. District Court

24

25