GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA CHUANG
JODI LINKER
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Angela_Chuang@fd.org

Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD ABOUAMMO,<br><br>Defendant. | **Case No.:** CR 19–00621 EMC<br><br>**DEFENDANT ABOUAMMO'S SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO CONTINUE TRIAL DATE**<br><br>**Court:**          Courtroom 5, 17th Floor<br>**Hearing Date:**  October 13, 2021<br>**Hearing Time:**  10:30 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................i

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................1

I.     The Court may not order *sua sponte* a Rule 15 deposition over the defendant's objections and where the requirements are not met. ..........................................................1

II.    The Court may not order International Witness-1 to testify remotely over the defendant's objections. ....................................................................................4

     A.    The order would violate Rule 26. ....................................................4

     B.    The order would violate Mr. Abouammo's constitutional rights. ........................6

III.    The Court may not order that International Witness-1 testify out of order before the government concludes its case in chief. ........................................................11

IV.    There remain outstanding discovery, *Giglio*, and *Jencks* materials that have not been produced by the government. ....................................................................13

CONCLUSION ..............................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Brooks v. Tennessee,*
4
    406 U.S. 605 (1972) ............................................................................................... 13

5

*California v. Green,*
    399 U.S. 149 (1970) ........................................................................................... 7, 10
6

*Chambers v. Mississippi,*
7
    410 U.S. 284 (1973) ........................................................................................... 8, 11

8

*Crane v. Kentucky,*
9
    476 U.S. 683 (1986) ............................................................................................... 6

10

*Crawford v. Washington,*
    541 U.S. 36 (2004) ............................................................................................... 11
11

*Godinez v. Moran,*
12
    509 U.S. 389 (1993) ............................................................................................. 11

13

*Holmes v. South Carolina,*
14
    547 U.S. 319 (2006) ............................................................................................... 6

15

*Johnson v. Ashby,*
16
    808 F.2d 676 (8th Cir. 1987) .................................................................................. 3

17

*Johnson v. Lockhart,*
    921 F.2d 796 (8th Cir. 1990) ............................................................................ 11-12
18

*Lema v. United States,*
19
    987 F.2d 48 (1st Cir. 1993) ................................................................................... 13

20

*Maryland v. Craig,*
21
    497 U.S. 836 (1990) ............................................................................................... 8

22

*Mattox v. United States,*
23
    156 U.S. 237 (1895) ............................................................................................... 7

24

*MCI Communications Corp v. American Tel. & Tel. Co.,*
    708 F.2d 1081 (7th Cir. 1983) ................................................................................ 3
25

*Order of the Supreme Court,*
26
    207 F.R.D. 89 ......................................................................................................... 5

27

*Pennsylvania v. Ritchie,*
28
    480 U.S. 39 (1987) ................................................................................................. 6

*Strickland v. Washington*,
    466 U.S. 668 (1984) ................................................................................. 13

*Taylor v. Illinois*,
    484 U.S. 400 (1988) ................................................................................... 6

*United States v. Babichenko, No. 1:18-CR-00258-BLW*,
    2021 WL 1759851 (D. Idaho May 4, 2021) ......................................... 10

*United States v. Bordeaux*,
    400 F.3d 548 (8th Cir. 2005) ..................................................................... 9

*United States v. Carter*,
    907 F.3d 1199 (9th Cir. 2018) ......................................................... *passim*

*United States v. Daniels*,
    194 F.R.D. 700 (D. Kan. 2000) ................................................................ 3

*United States v. Fei Yi*,
    436 F.3d 1117 (9th Cir. 2006) ......................................................... 1, 2, 4

*United States v. Fuentes–Galindo*,
    929 F.2d 1507 (10th Cir. 1991) ............................................................... 2

*United States v. Gigante*,
    166 F.3d 75 (2d Cir. 1999) ...................................................................... 9

*United States v. Hernandez-Escarsega*,
    886 F.2d 1560 (9th Cir. 1989) ................................................................. 2

*United States v. Kassar*,
    572 F. Supp. 2d 375 (S.D.N.Y. 2008) .................................................... 3

*United States v. Lindsay*,
    931 F.3d 852 (9th Cir. 2019) ................................................................... 4

*United States v. Pham, No. 12-CR-423 (AJN)*,
    2015 WL 7871348 (S.D.N.Y. Dec. 4, 2015) ........................................ 3

*United States v. Sleugh*,
    896 F.3d 1007 (9th Cir. 2018) ................................................................. 3

*United States v. Yates*,
    438 F.3d 1307 (11th Cir. 2006) ................................................. 5-6, 9, 10-11

*United States v. Yida*,
    498 F.3d 945 (9th Cir. 2007) ................................................................... 7

*United States v. Zuno-Arce,*
    44 F.3d 1420 (9th Cir. 1995) ..................................................................... 2

*Washington v. Texas,*
    388 U.S. 14 (1967) ...................................................................................... 6

### Federal Statutes

18 U.S.C. § 3144 ............................................................................................ 2

18 U.S.C. § 3509 ................................................................................. 5, 8-9, 9

28 U.S.C. §§ 2072-2077 ................................................................................. 4

### State Cases

*State v. Brady,*
    122 Ariz. 228, 594 P.2d 94 (1979) ........................................................... 8

*State v. Goode,*
    300 N.C. 726, 268 S.E.2d 82 (1980) ...................................................... 12

### Other Authorities

CARES Act, 116 P.L. 136,
    134 Stat. 281, 527–30 (March 27, 2020) .................................................. 5

F. Lee Bailey & K. Fishman, *1 Criminal Trial Techniques,*
    § 34:1 (May 2021 update) ........................................................................ 12

Fed. R. Civ. P. 43 ........................................................................................... 4

Fed. R. Crim. P. 15 ............................................................................... *passim*

Fed. R. Crim. P. 26 .............................................................................. 4, 4-5, 5

Fed. R. Evid. 611 ................................................................................... 11, 13

Fed. R. Evid. 804 ............................................................................... 2, 3, 4, 5

Peter Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,*
    91 Harv. L. Rev. 567 (1978) ...................................................................... 7

Peter Westen, *The Compulsory Process Clause,*
    73 Mich. L. Rev. 71 (1974) ......................................................... 6-7, 8, 10

**INTRODUCTION**

At a hearing on August 4, 2021, over Mr. Abouammo's objection, the Court set a trial date in this matter for December 6, with jury selection to take place on December 1. On September 22, 2021, Mr. Abouammo filed a motion to continue the trial date until March 2022 or as soon thereafter as the Court is available for trial. One of the bases for his motion included logistical difficulties with and scheduling of potential international witnesses, including International Witness-1. At a hearing on September 29, 2021, Mr. Abouammo objected to the substitution of video testimony or a Rule 15 deposition by International Witness-1 in lieu of in-person testimony. The Court requested briefing as to these issues and how they impact Mr. Abouammo's constitutional rights, as well as an update on outstanding discovery, *Giglio*, and *Jencks* material that had not yet been produced. The government additionally reiterated on the record that it expects its case to take 7–8 trial days, which would mean that the defense would not start its case until Friday, December 17, at the earliest, and that under the current schedule, the trial (including deliberations) will very likely spill into the Christmas holiday.

As a trial pursuant to the current schedule would violate Mr. Abouammo's constitutional right to fairly and adequately present a defense, he respectfully requests that the Court continue the trial date.

**ARGUMENT**

**I.    The Court may not order *sua sponte* a Rule 15 deposition over the defendant's objections and where the requirements are not met.**

Rule 15 of the Federal Rules of Criminal Procedure permits the taking of a deposition whenever, due to the exceptional circumstances of the case, it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial. *See* Fed. R. Crim. P. 15(a)(1) ("A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice."). In criminal cases, however, unlike civil cases, depositions are not allowed merely for the purpose of discovery. *United States v. Fei Yi*, 436 F.3d 1117, 1123 (9th Cir. 2006).

Consistent with its purpose of preserving testimony, Rule 15 "contemplates a party taking the deposition of *only his own witness*," and "*only if the witness may be unable* to attend trial." *Id*. (internal quotations omitted; emphasis added). The burden is on the movant to demonstrate that the

1  requirements of Rule 15 are met. *United States v. Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir. 1995);

2  *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1569–70 (9th Cir. 1989). If granted, "[t]he

3  scope and manner of the deposition examination and cross-examination must be the same as would

4  be allowed during trial." Fed. R. Crim. P. 15(e)(2). Generally, a defendant has the right to attend the

5  deposition, even if taken outside the United States. Fed. R. Crim. P. 15(c).

6        Mr. Abouammo has not moved for a Rule 15 deposition of International Witness-1; to the

7  contrary, he objects to the use of a Rule 15 deposition here. The constraints on Rule 15 depositions

8  and the allocation of the burden of proof to the moving party necessarily mean that a court may *not*

9  grant the government's request for deposition of defense witnesses, and it may *not* order *sua sponte*

10 that a defendant undertake deposition of his witnesses over his objections. *See Fei Yi*, 436 F.3d at

11 1123–24 (granting the government's petition for a writ of mandamus and ordering district court to

12 rescind its order granting defendant's motion to depose the government's expert witnesses prior to

13 trial because, *inter alia*, "the prospective deponents are adverse witnesses"); *United States v.*

14 *Fuentes–Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991) (holding court without authority under Rule

15 15(a) to order *sua sponte* deposition of Mexican detainees without either party or material witness[1]

16 requesting it). That is true even if the district court believed that the deposition was necessary to

17 "ensur[e] 'fairness and efficiency of the trial process.'" *Fei Ye*, 436 F.3d at 1123. "While the district

18 court's belief that it would be more convenient and efficient to allow pretrial depositions may be

19 well-founded, Rule 15 makes no exception for convenience and efficiency." *Id*. at 1123–24. Under

20 binding Ninth Circuit precedent, then, the Court may not order the deposition of International

21 Witness-1 over Mr. Abouammo's objections.

22        Even assuming *arguendo* that the Court has the authority to order the deposition of

23 International Witness-1 *sua sponte*, exceptional circumstances justifying a deposition plainly do *not*

24 exist. International Witness-1 is not unavailable for trial. *See* Fed. R. Evid. 804(a), Criteria for Being

25 Unavailable. They are willing to attend the trial in person and will present evidence that is critical to

26

27  ───────────────

28  [1] *See* Fed. R. Cr. P. 15(a)(2) ("Detained Material Witness. A witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties . . . .").

1    the defense.[2] Furthermore, there is no legal impediment to their travelling to the United States. *Cf.*

2    *United States v. Pham*, No. 12-CR-423 (AJN), 2015 WL 7871348, at *2–3 (S.D.N.Y. Dec. 4, 2015)

3    (witness who had visa revoked was unavailable for trial, but witness who believed she will be unable

4    to obtain a visa, but made no efforts to secure one, was not unavailable). And although the witness

5    has prior commitments creating a conflict for part of the trial schedule, they are otherwise available to

6    attend the trial,[3] and certainly not "unavailable" as that term is defined in Rule 804(a). *See United*

7    *States v. Kassar*, 572 F. Supp. 2d 375, 376–77 (S.D.N.Y. 2008) (witness available for Rule 15

8    purposes where, even if he "were unavailable on any given date, . . . it is exceedingly unlikely, on its

9    face, that he would be unavailable throughout the approximately three weeks estimated for this

10   trial"); *United States v. Daniels*, 194 F.R.D. 700, 702 (D. Kan. 2000) (witness scheduled to undergo

11   brain surgery on the first day of a six-week trial available where she "may" lose her ability to testify

12   later in the trial).

13          Such an order would deny Mr. Abouammo's constitutional rights. The order would compel him

14   to reveal his trial strategy and expose his witness to cross-examination before trial, therefore allowing

15   the government the opportunity to adjust its case-in-chief based on the information it learns from the

16   deposition. *Cf. United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018) (a defendant may file a

17   Rule 17(c) subpoena ex parte when exercise of his Sixth Amendment right to compulsory process

18   would reveal trial strategy). It would also deny him his Fifth Amendment Due Process right to

19   present a complete defense, and his Sixth Amendment Compulsory Process right to have his

20   witnesses provide live, in-person testimony before the jury. *See infra* at Parts II.B., III.

21   _____

22   [2] A supporting document regarding this will be filed ex parte and under seal.

23   [3] The Court has estimated that the trial will last two weeks. As previously noted, the government has
     stated that it expects to take 7–8 trial days to present its case, which means that the government's case
     would conclude on December 15 or December 17 (December 16 is a Thursday, which is dark under

24   the trial schedule). It is likely, then, that International Witness-1 will have to testify outside the two
     weeks the Court has reserved for Mr. Abouammo's trial. *See Johnson v. Ashby*, 808 F.2d 676, 678

25   (8th Cir. 1987) ("[I]t may be an abuse of the trial court's discretion to exclude probative, non-
     cumulative evidence simply because its introduction will cause delay, and any time limits formulated

26   in advance of trial must be fashioned with this in mind. Such limits should be 'sufficiently flexible to
     accommodate adjustment if it appears during trial that the court's initial assessment was too

27   restrictive.'") (quoting *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081,

28   1171 (7th Cir. 1983)). This is more so in the criminal context, where time limits may interfere with a
     defendant's constitutional right to a complete defense. *See infra* at Part II.B.

1     In fact, because the primary witness discussed is not "unavailable" for trial, the deposition

2 would not be admissible at trial because it would constitute inadmissible hearsay. An order

3 authorizing a Rule 15(a) deposition "does not determine its admissibility. A party may use all or part

4 of a deposition as provided by the Federal Rules of Evidence." Fed. R. Crim. P. 15(f). And under

5 Fed. R. Evid. 804(a), (b)(1), a deposition in current proceedings is only admissible if the declarant is

6 unavailable as a witness, and the opposing party had an opportunity and similar motive to develop the

7 testimony by direct, cross-, or redirect examination. Because International Witness-1 is not

8 "unavailable" to testify in person at trial, their deposition would be inadmissible hearsay. *United

9 States v. Lindsay*, 931 F.3d 852, 866–87 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 1288 (2020)

10 (deposition of foreign witness not admissible at trial under Fed. R. Evid. 804(a), (b)(1) where

11 defendant did not make reasonable efforts to obtain their attendance at trial).

12     In short, because the witness is not unavailable to testify at trial, any order ordering their

13 deposition over Mr. Abouammo's objections "would violate[s] the well-established principles

14 governing Rule 15 depositions," *Fei Ye*, 436 F.3d at 1123, and violate his constitutional rights. The

15 Court should not order such a deposition of International Witness-1.

16 **II.    The Court may not order International Witness-1 to testify remotely over the defendant's objections.**

17

18     Nor should the Court order that the witness testify remotely via video over Mr. Abouammo's

19 objection. Such an order would violate Federal Rule of Criminal Procedure 26 and Mr. Abouammo's

20 Fifth Amendment Due Process right to present a complete defense and his Sixth Amendment

21 Compulsory Process right to have his witness testify in person at his trial.

22     **A.    The order would violate Rule 26.**

23     Fed. R. of Crim. P. 26 provides that"[i]n every trial the testimony of witnesses must be taken in

24 open court, unless otherwise provided by a statute or by rules adopted under 28 U.S.C. §§ 2072-

25 2077." Unlike the Federal Rules of Civil Procedure, Rule 26 does not provide for video testimony.

26 *Compare* Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate

27 safeguards, the court may permit testimony in open court by contemporaneous transmission from a

28 different location."). Indeed, in 2002, the Supreme Court declined to transmit to Congress a proposed

amendment to Rule 26 that would have allowed two-way video presentation of testimony in criminal trials under certain limited circumstances. *See* Order of the Supreme Court, 207 F.R.D. 89, 99 (proposing addition of section (b), which would have allowed that "[i]n the interest of justice, the court may authorize contemporaneous, two-way video presentation in open court of testimony from a witness who is at a different location if: (1) the requesting party establishes exceptional circumstances for such transmission; (2) appropriate safeguards for the transmission are used; and (3) the witness is unavailable within the meaning of Federal Rule of Evidence 804(a)(4)–(5)."). Justice Scalia filed a statement in support of the majority's view that the proposed rule was "of dubious validity under the Confrontation Clause of the Sixth Amendment to the United States Constitution." *See id*. at 93–96.

Mr. Abouammo is aware of no federal statute or rule that authorizes the video testimony of an adult witness who is capable and willing to testify in person at a criminal felony trial, over the defendant's objections. *Compare*, *e.g.*, 18 U.S.C. § 3509(b) (allowing for the live testimony by two-way closed circuit television of a child under 18 under strict circumstances); CARES Act, 116 P.L. 136, 134 Stat. 281, 527–30 (March 27, 2020). Indeed, even under the CARES Act, which permits video conferencing in certain criminal proceedings, it does not provide for such procedures in felony trials, and it may only be done with the consent of the defendant. Therefore, an order compelling International Witness-1 to testify remotely at trial, over Mr. Abouammo's objections, would violate Rule 26. *See United States v. Carter*, 907 F.3d 1199, 1207 (9th Cir. 2018) (explaining that "no procedural mechanism exists [under Rule 26] for employing a video procedure in the manner it was employed" in that case, where court allowed adult witness for the government to testify via two-way video conference because she was unable to travel due to pregnancy complications); *United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (rejecting argument that district courts have the inherent authority to order video testimony because "[t]o do so would require that we disregard the history of the proposed amendments to Rule 26" and "ignore the carefully-crafted provisions of Rule 15 that were designed to protect defendants' rights to physical face-to-face confrontation and instead approve

1  a procedure not contemplated by the Federal Rules of Criminal Procedure.").[4]

2  **B.    The order would violate Mr. Abouammo's constitutional rights.**

3  Even assuming *arguendo* that the Court has the authority to order that International Witness-1

4  testimony via videoconference, the order would violate Mr. Abouammo's constitutional rights.

5  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the

6  Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees

7  criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South*

8  *Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This

9  right includes "the right to present the defendant's version of the facts," *Washington v. Texas,* 388

10  U.S. 14, 19 (1967), and to "put before a jury evidence that might influence the determination of

11  guilt," *Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987), including witness testimony. Indeed, "[t]he

12  right to compel a witness' presence in the courtroom could not protect the integrity of the adversary

13  process if it did not embrace the right to have the witness' testimony heard by the trier of fact."

14  *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Therefore,

15
16
17
18
> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

19  *Washington*, 388 U.S. at 19, 23 (holding that state statute prohibiting an alleged accomplice from

20  testifying on behalf of a defendant "denied his right to have compulsory process for obtaining

21  witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness

22  who was physically and mentally capable of testifying to events that he had personally observed, and

23  whose testimony would have been relevant and material to the defense.").

24  "The compulsory process clause of the sixth amendment is a companion and counterpart to the

25  confrontation clause." *See* Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 182

26
27
28
---
[4] In both cases, the defendants did not make a Rule 26 argument, and argued only that the witnesses' video testimony violated their Confrontation Clause rights. By contrast, Mr. Abouammo makes an independent Rule 26 argument.

(1974). The Confrontation Clause "governs the manner by which the state presents its case against the accused, requiring the prosecution to bring the defendant face to face with the witnesses against him and make them available for cross-examination." *Id*. The Compulsory Process Clause "governs the presentation of the defendant's case, empowering him to produce and examine witnesses in his favor." *Id*. "Both guarantee a defendant the right to insist that the state make a good faith effort to produce witnesses for his use at trial, yet neither requires that the state produce witnesses who are no longer available, provided the state is not responsible for their being unavailable." Peter Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv. L. Rev. 567, 625 (1978). "Both guarantee a defendant the right to insist that trial witnesses testify in his presence, and both insure that he may examine witnesses and introduce their testimony into evidence." *Id*. What distinguishes them is who has "the burden of initiating the production of witnesses": the government in the case of witnesses "against" the defendant, and the defendant in the case of "witnesses in his favor." *Id*.

In the Confrontation Clause context, courts have long recognized that the witness's testimony in front of a jury ensures the integrity of the fact-finding process by "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but *of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief*." *Mattox v. United States*, 156 U.S. 237, 242–43 (1895) (emphasis added); *see also, e.g.*, *California v. Green*, 399 U.S. 149, 158 (1970) (confrontation, inter alia, "permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."); *United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) ("Live testimony gives the jury (or other trier of fact) the opportunity to observe the demeanor of the witness while testifying. William Blackstone long ago recognized this virtue of the right to confrontation, stressing that through live testimony, 'and this [procedure] only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations of the witness.' 3 William Blackstone, Commentaries on the Laws of England 373–74 (1768).").

In-person testimony of a defense witness similarly allows the jury to assess a witness's credibility and helps them decide whether he is worthy of belief. *See* Peter Westen, *Compulsory Process II*, 74 Mich. L. Rev. 191, 301 (1974) ("In the great majority of cases, . . . the weight of the evidence depends in part on the jury's evaluation of the witness's credibility."). But "[t]he effect of a substitute form of testimony is to deny a defendant the opportunity to present evidence of his witness' demeanor and credibility," and therefore, to violate his Compulsory Process rights:

> In most cases, therefore, it violates the defendant's sixth amendment right to compulsory process to force him to use a substitute form of testimony in place of an otherwise available witness—whether the substitute is in the form of a transcript of previous trials, deposition testimony, or a stipulated statement of facts—just as it would violate his sixth amendment right of confrontation to force him to accept adverse testimony in a substitute form where the adverse witness if available to testify in person.

*Id*. at 300-01[5]; *see also State v. Brady*, 122 Ariz. 228, 230, 594 P.2d 94, 96 (1979) (trial court violated the defendant's Compulsory Process right by forcing defendant on rely on the witness's written interrogatories, because "the jury was deprived of the opportunity to weigh the demeanor of this most important defense witness" and "[t]he live testimony of the proposed witness as opposed to the written interrogatories could have been the difference between conviction and acquittal").

Mr. Abouammo acknowledges that video testimony is superior to other "substitute form[s] of testimony." Nonetheless, two-way video testimony is a substitute to face-to-face confrontation "only upon a 'case-specific finding' that (1) the denial of physical confrontation 'is necessary to further an important public policy,' and (2) 'the reliability of the testimony is otherwise assured.'" *Carter*, 907 F.3d at 1208 (quoting *Maryland v. Craig*, 497 U.S. 836, 850 (1990)).

*Craig* was a case involving one-way video testimony by a child witness under 18 U.S.C. § 3509, while *Carter* involved two-way video testimony by an adult witness. Critically, the Ninth

---

[5] Indeed, the line between adverse and favorable testimony is not a neat, clear one. A defendant may put on the stand a hostile witness, or a purported friendly witness may end up giving unfavorable testimony either on direct or upon cross-examination. A defendant may therefore have to "confront" its own witness. *See Chambers v. Mississippi*, 410 U.S. 284, 297–98 (1973) ("The availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State.").

1    Circuit rejected the argument that *Craig* was inapposite, explaining that "the important components

2    of confrontation are lost when the witness is not testifying in court, regardless of the witness's age or

3    ability to see the defendant on a screen from a distant location." *Carter*, 907 F.3d at 1207. Other

4    courts agree. "[C]onfrontation through a video monitor is not the same as physical face-to-face

5    confrontation." *United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (adopting *Craig*

6    standard for two-way video testimony of adult witnesses). "[T]he touchstone for deciding whether a

7    'confrontation' satisfies the Constitution is whether it is likely to lead a witness to tell the truth to the

8    same degree that a face-to-face confrontation does, and in this respect two-way systems are like one-

9    way systems: they both fall short." *United States v. Bordeaux*, 400 F.3d 548, 554 (8th Cir. 2005)

10   (adopting *Craig* standard for two-way video testimony of child witness under § 3509).[6]

11         In so holding, these courts all rejected the Second Circuit's approach in *United States v.*

12   *Gigante*, 166 F.3d 75 (2d Cir. 1999). *Carter*, 907 F.3d at 1208 n.4. The Second Circuit thought the

13   "more profitable comparison" was to Rule 15(a) depositions and therefore permits testimony by two-

14   way videoconference "[u]pon a finding of exceptional circumstances, . . . when this furthers the

15   interest of justice." *Gigante*, 166 F.3d at 81. The Ninth Circuit explained that "*Gigante* is an outlier

16   and that the proper test is *Craig*," and reasoned that "equating a two-way video procedure with face-

17   to-face confrontation necessarily neglects the 'intangible elements' of confrontation that, as even the

18   *Gigante* court admits, may be 'reduced or even eliminated by remote testimony.'" *Carter*, 907 F.3d at

19   1208 n.4 (quoting *Gigante*, 166 F.3d at 81).

20         Because the Confrontation Clause and the Compulsory Process Clauses are animated largely by

21   the same concerns—including the defendant's right to have the jury assess the credibility of both

22   witness against and in his favor by observing their demeanor while on the stand before deciding what

23

24   ───────────────

25   [6] As the Ninth Circuit noted, there are also "practical differences" between face-to-face and video
     testimony. "From the remote witness's point of view, the courtroom will necessarily be defined by the

26   angle and quality of the courtroom camera as well as the size and quality of the screen on which the
     video is projected. These variables can distort any effort to approximate in-person testimony."

27   *Carter*, 907 F.3d at 1207. "Moreover, unless [the opposing party] has multiple attorneys, such that
     one could travel to the witness's remote location while the other remains in the courtroom, the

28   [opposing party] would be unable to ensure that, for example, the witness is not being coached or
     influenced during testimony, and that the witness is not improperly referring to documents." *Id.*

1  weight to give their testimony—*Craig*'s two-part test should also apply when a defendant is ordered

2  to have his witnesses testify via video over his objections. *See* Westen, *Compulsory Process II*, 74

3  Mich. L. Rev. at 300-01 ("In most cases, therefore, it violates the defendant's sixth amendment right

4  to compulsory process to force him to use a substitute form of testimony in place of an otherwise

5  available witness . . . ."); *United States v. Babichenko*, No. 1:18-CR-00258-BLW, 2021 WL 1759851,

6  at *1-2 (D. Idaho May 4, 2021) (holding that *Craig*'s two-part test governs the defendant's request to

7  have defense witnesses testify by videoconference).[7]

8        Here, video testimony of International Witness-1 is not "necessary to further an important

9  public policy." *Craig*, 497 U.S at 857. In *Carter*, the Ninth Circuit held that the adult witness's

10  temporary unavailability due to her pregnancy (approximately two months) did not satisfy the

11  "necessity" requirement under *Craig*, and pointed out that [t]he most obvious alternative would have

12  been to continue the trial in anticipation of [the witness's] recovery." *Carter*, 907 F.3d at 1208. The

13  Ninth Circuit was "mindful that having to make these adjustments on the eve of trial is not ideal," but

14  held that "a criminal defendant's constitutional rights cannot be neglected merely to avoid 'added

15  expense or inconvenience.'" *Id*. (quoting *Green*, 399 U.S. at 189 n.22); *see also Yates*, 438 F.3d at

16  1315–16 (holding that, by itself, the prosecution's need for the overseas witnesses' testimony to make

17  its case and expeditiously resolve it "are not the type of public policies that are important enough to

18  outweigh the Defendants' rights to confront their accusers face-to-face," and that "[t]he district court

19  made no case-specific findings of fact that would support a conclusion that this case is different from

20  any other criminal prosecution in which the Government would find it convenient to present

21   

      [7] Despite holding that *Craig*'s test applied, the *Babichenko* court inexplicably analyzed whether the video testimony was in the interests of justice, as opposed to whether it was "necessary to further an important public policy," as *Craig* requires. *See Carter*, 907 F.3d at 1208 n.4 (rejecting "interest of justice" test). Applying this incorrect test, the district court held that allowing several witnesses in Brazil to testify via videoconference was in the interest of justice because the COVID-19 situation in Brazil was still very serious and "[t]he President of the United States has implemented travel restrictions against persons who have been physically present in the Federative Republic of Brazil 14 days prior to attempted entry in the United States." *Babichenko*, 2021 WL 1759851, at *2. Crucially, the video testimony in *Babichenko* was at the defendant's request, not in the face of his opposition. In any event, no similar circumstances exist here and International Witness-1 is willing to travel to the United States to testify at trial. *Cf.* COVID-19 Travel Restrictions and Exceptions (last updated Sept. 15, 2021), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/covid-19-travel-restrictions-and-exceptions.html#ExternalPopup.

testimony by two-way video conference").

If the two-month unavailability of the witness in *Carter* did not meet *Craig*'s necessity requirement, International Witness-1's much shorter, one-week unavailability does not meet the requirement either. Thus, while video testimony of International Witness-1 might be convenient and expeditious from the Court's perspective, it is not necessary to further any important public policy, and cannot justify the denial of Mr. Abouammo's constitutional right to have the witness testify in person at trial. The Court should not order that International Witness-1 testify via teleconference over Mr. Abouammo's objection.

### III.    The Court may not order that International Witness-1 testify out of order before the government concludes its case in chief.

As a general matter, the Court has broad authority over "the mode and order of examining witnesses and presenting evidence," so as to "(1) make [the presentation] effective for the ascertainment of the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). But this rule, like any other rule of evidence, yields to constitutional commands and guarantees. *See*, *e.g.*, *Crawford v. Washington*, 541 U.S. 36 (2004) (hearsay rules must yield to the Confrontation Clause); *Chambers v. Mississippi*, 410 U.S. 284 (1973) (rule barring a defendant from impeaching his own witness violated Due Process).

If interpreted to allow the Court to order a defense witness to testify out of order, before the government concludes its case in chief, Rule 611 would violate a defendant's Sixth Amendment right to effective assistance of counsel and his right to a meaningful opportunity to present a complete defense.

Whether to put on a defense at all is one of the most important strategic decisions that a defendant and his counsel have to make during a trial. *See Godinez v. Moran*, 509 U.S. 389, 398 (1993) ("A defendant who pleads not guilty, moreover, faces still other strategic choices: In consultation with his attorney, he may be called upon to decide, among other things, whether (and how) to put on a defense and whether to raise one or more affirmative defenses."); *Johnson v. Lockhart*, 921 F.2d 796, 800 (8th Cir. 1990) ("since the government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the

constitutional requirement of effective representation."). Indeed, "[i]t is generally recognized, by Bench and Bar alike, that the decision whether a defendant in a criminal case will present evidence or will testify in his own behalf is a matter of paramount importance." *State v. Goode*, 300 N.C. 726, 730, 268 S.E.2d 82, 84 (1980).

As importantly, the actual decision whether to put on a defense "cannot intelligently be made until the close of the State's evidence." *Id*. At that point, "[i]f the State's case is weak, he may decide to rest and rely on that weakness for a verdict of acquittal." *Id*. (holding that the trial court abused its discretion in denying the defendant's request for a recess at the end of the prosecution's case to decide whether to put on a defense); *see also* F. Lee Bailey & K. Fishman, 1 Criminal Trial Techniques § 34:1 (May 2021 update) ("If the prosecution has put in a weak case and there is an excellent chance that the jury will disregard the flimsy evidence presented, you should rest and rely upon this lack of evidence. Argue that the prosecution has failed to meet its burden of proof and has not established the guilt of the accused beyond a reasonable doubt.").

Unquestionably, ordering a defense witness to testify before the government concludes its case in chief would place the defendant between a rock and a hard place. The defendant may forgo the witness's testimony altogether in order to preserve the right not to put on a defense and also to avoid disclosing his defense prematurely (and thus giving the government the opportunity to adjust its strategy and/or present additional evidence in response to the witness's testimony). Or he may put on the witness and forgo the possibility of not putting on a defense. Either way, he would make this choice before his counsel has all the information necessary to make an intelligent decision on this matter, and his right to effective assistance of counsel would be compromised.

Even assuming *arguendo* that the attorney can confidently anticipate the need to put on a defense, competent counsel must know the entirety of the government's case in chief before deciding which of all potential defense evidence to present, the order in which that evidence will be presented, and the lines of questioning for defense witnesses. "In most trials, some flexibility is necessary with regard to the order of proof. Neither [the defense attorney] nor the prosecutor knows in advance the precise nature of each witness' testimony on both direct and cross-examination. New lines of inquiry may be developed which will require recalling witnesses who have already testified or calling

additional witnesses to rebut new or different assertions." 1 Criminal Trial Techniques § 34:11. That flexibility also means that, "[w]here the prosecution's case is less than compelling, . . . the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony." *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993). Similarly, it may warrant a decision to have a witness testify only regarding certain matters, which would limit cross-examination accordingly. *See* Fed. R. Evid. 611(b). In turn, these strategic decisions will inform the defendant's decision whether and when to testify. Undersigned counsel cannot adequately determine precisely what testimony would be elicited from International Witness-1 or any other defense witness until after the government has presented its case in chief, because they will not know until then what the government witnesses' testimony will be and what assertions need or need not be rebutted.

In short, requiring that a defense witness testify before the government concludes its case in chief denies the defendant the right to effective assistance of counsel and may also compromise his right to present a complete defense. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."); *Brooks v. Tennessee*, 406 U.S. 605, 612–13 (1972) (rule requiring defendant to testify first violates Due Process because it deprives him of "the opportunity to evaluate the actual worth of their evidence" before deciding whether to testify and the penalty is "to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later at trial," therefore denying him " the 'guiding hand of counsel' in the timing of this critical element of his defense"). This cannot be. The Court should therefore not order International Witness-1 to testify out of turn, before the government concludes its case in chief, over Mr. Abouammo's objection.

## IV.   There remain outstanding discovery, *Giglio*, and *Jencks* materials that have not been produced by the government.

Despite the Court's discovery cut-off date of October 4, 2021, there still remain outstanding requests for documents that the government has not turned over. At the September 29, 2021 hearing, defense counsel noted that the government still had not produced discovery, *Giglio*, and *Jencks*

1    materials that had been requested long ago. One specific such request was for materials related to an

2    expected witness, who the government has referred to as Associate-1. As the government indicated at

3    the hearing, these materials include an immunity agreement and prior statements. The government

4    has yet to produce the requested documents. Just days ago after the last hearing before this Court, the

5    government asked the defense to agree to an overly restrictive protective order prior to disclosure of

6    this information despite the fact that a protective order is already in place. Any additional protective

7    order is thus unnecessary and redundant and appears to be part of the government's efforts to delay

8    disclosure of this important information. Furthermore, as the case is now approaching trial, it is the

9    defense's position that any protective order would no longer apply, given that criminal trials are

10    public proceedings.

11       In addition, the government has also not yet produced the records from a federal government

12    agency that it discussed in its opposition and at the hearing. The government has described these

13    records as "approximately three pages of documents," Opp. at 4, which begs the question of why it is

14    taking so long to produce them.

15       As opposed to the great volume of discovery and exhibits in this case, which the defense is still

16    diligently working through, the concern with the failure of the government to timely disclose this

17    remaining discovery is not the volume, but its contents. The contents of these materials may affect

18    trial strategy and the government's failure to timely produce these material may harm Mr.

19    Abouammo's ability to fairly present a defense.

20                              **CONCLUSION**

21       For the abovementioned reasons, the Court should grant Mr. Abouammo's motion to continue

22    the trial date. It should not order a Rule 15 deposition or video testimony over Mr. Abouammo's

23    objection, nor should the Court order Mr. Abouammo to present International Witness-1's testimony

24    prior to the government's conclusion of its own case.

Dated:    October 11, 2021             Respectfully submitted,

25

26                                _____/s_____

27                                ANGELA CHUANG

                                  JODI LINKER

28                                Assistant Federal Public Defenders