UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD ABOUAMMO,<br><br>Defendant. | Case No. 19-cr-00621-EMC-1<br><br>**ORDER RE PENDING PRETRIAL ISSUES**<br><br>Docket Nos. 310-312, 314-315 |

On July 11, 2022, the Court held a supplemental pretrial conference with the parties. The Court ordered the parties to meet and confer regarding several pending disputes, and to provide a Court with an update by the end of day on July 14, 2022. *See* Docket No. 304 at 1-2. The parties timely filed their opposing positions on those issues. *See* Docket Nos. 310-12, 314-15. The Court's rulings on those pending pretrial disputes follow.

**I.     SUMMARY OF NEW YORK TIMES ARTICLE (EXH. 832)**

The parties report that they were unable to reach an agreement as to a summary that was published on October 20, 2018. *See* Docket Nos. 310, 311; Exh. 832. The Court previously stated "that given the limited purpose and marginal value of the article, to show that Mr. Abouammo was on notice of an investigation, the only parts of the article that should be summarized are those which have a clear nexus to the charges here." Docket No. 304 at 2. "The article itself will not be admitted into evidence." Consistent with the Court's analysis as to the limited purpose of the summary, the Court **ADOPTS** a combination of the parties respective proposed summaries:

> On Saturday, October 20, 2018, the New York Times published an article citing unidentified sources, alleging that advisors to Crown Prince Mohammed bin Salman of Saudi Arabia had mobilized

>against his critics on Twitter, which was a popular platform in Saudi Arabia for news, and that sources for the New York Times reported that Twitter was warned in late 2015 about Saudi Arabian operatives grooming Twitter employee Ali Alzabarah to look at personal information of certain Twitter accounts, including phone numbers, IP (internet protocol) addresses, and device information on KSA critics and other users, and that Alzabarah did so. The New York Times article alleged that Alzabarah was questioned and placed on leave by Twitter before moving to Saudi Arabia where he obtained a job with the Saudi Arabian government.

The Court finds that this summary accurately and sufficiently details the portions of the article which are relevant to putting Mr. Abouammo on notice of an investigation. The Court excludes portions of the government's proposal, Docket No. 310, which contained information unnecessary to the limited purpose of this summary, such as references to a critic of the Crown Prince living in Canada and the Crown Prince's tactic of harassing critics with pro-government messages.

## II. DESIGNATIONS OF ASSOCIATE-1'S GRAND JURY TESTIMONY

The Courts' rulings regarding the parties' disputes over the designation of Associate-1 grand jury testimony, Docket No. 312, are attached as Exhibit A.

## III. EXPERT TESTIMONY REGARDING KSA

The parties remain at odds about the scope of competing expert testimony regarding the Kingdom of Saudi Arabia. *See* Docket Nos. 314-15.

A. Government Expert: Dr. Diwan

The Court previously ordered the parties to meet and confer to narrow the scope of Dr. Diwan's testimony "consistent with the Court's stated views about the need to balance relevant context regarding the activities of the KSA against the risk of unfair prejudice." Docket No. 290 at 15. The Court reiterated these considerations at the July 11 hearing. *See* Docket No. 304 at 2. Since then, the government has narrowed the scope of Dr. Diwan's testimony, as indicated by deletions to the proposed timeline demonstrative. *See* Docket No. 315-2. However, the Defense contends that these changes are insufficient, as the demonstrative, and, thus, the associated testimony, still references irrelevant and potentially inflammatory information. *See* Docket No. 314 at 1. The Court **ORDERS** Dr. Diwan's testimony to be further narrowed by requiring the following changes to the updated proposed timeline at Docket No. 315-2:

- The March 2015 entry stating "Saudi-led coalition enters

1   Yemen war" must be removed.  Saudi war in Yemen is irrelevant to the charges here.

- The August 2017 entry stating "Al-Qahtani creates internet 'Black List'" must be removed.  This occurrence significantly post-dates the events and conspiracy alleged here.  Likewise, the entries dated September 2017 and November 2017 regarding arrest and detention of critics of the KSA must be removed, as they significantly post-date the allegations here.  So, too, should the entry regarding the March-April 2018 multi-city trip to the US by the Crown Prince.

- Dr. Diwan may offer testimony summarizing the KSA's continued interest in silencing dissent even after the dates of the charges alleged here, as such testimony is relevant in showing the motive and probability that the crimes occurred as alleged.  However, reference to *specific* events, such as the creation of an internet blacklist and the arrest of particular individuals in 2017 carries a high risk of prejudice by insinuating that Defendant is responsible for, linked to or otherwise involved in those *particular* acts by the KSA; a risk that substantially outweighs its probative value.

B.  <u>Defense Expert: Dr. Bartu</u>

The Court previously ordered the Defense to supplement its disclosures as to the testimony and bases for the proffered opinions of its expert, Dr. Bartu.  Docket No. 287.  After further hearing, the Court again instructed that the "Defense must identify the opinions Dr. Bartu will offer and the bases for those opinions."  Docket No. 304 at 2.  The Defense provided the government with a supplemental disclosure on July 12.  *See* Docket No. 314-1.  The government maintains its objection that the disclosure of one category of Dr. Bartu's proffered testimony remains inadequate:

> Middle-Eastern culture in general and the cultural components of Arab governance, including how the cultural aspects of Arab countries influence and guide political behavior and policy and its intersection with the role of gift-giving, especially as it pertains to consolidating social and political relationships, expanding one's network of influence, and cementing reciprocal obligations between countries:
>
> Dr. Bartu would testify that gift-giving, even expensive gifts, is culturally consistent with how persons in Arab countries will show appreciation for a relationship and/or how they may seek to expand a network of influence.  Dr. Bartu bases these opinions upon views widely held in anthropology and political science, as well as his diplomatic training and experiences in the Gulf States.

3

*Id.* at 3. The government, further, maintains its objections that Dr. Bartu is not qualified to offer such testimony, does not provide a reliable basis for his testimony, and that such testimony raises a danger of unfair prejudice because it is irrelevant and will confuse the issues. *See* Docket No. 273 at 9-11.

At this juncture, the Court finds that the Defense's supplemental disclosure sufficiently describes the opinion that Dr. Bartu will offer on this topic. However, the Defense *still* fails to adequately disclose the basis for Dr. Bartu's opinions. *See United States v. Skates*, No. 15-CR-00285-LHK, 2019 WL 634649, at *4 (N.D. Cal. Feb. 14, 2019) ("The purpose of the [Rule 16(b)(1)(C)] is 'to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony.'" (citation omitted)). Indeed, Dr. Bartu's general reference to "views widely held in anthropology and political science" do not suffice to put the government on notice of the specific bases for Dr. Bartu's testimony to "frame a *Daubert* challenge." *Id.* This gap is particularly relevant here where Dr. Bartu's academic training is in history and literature, not in "anthropology and political science." Dr. Bartu's general reference to his "diplomatic training and experiences in the Gulf States," sheds no further light on the bases for his opinions on *this* topic. If the Court were to evaluate the government's *Daubert* argument on this record, the Court would agree with the government that Dr. Bartu has not established a reliable basis upon which to provide the proffered testimony. *See* Fed. R. Evid. 702.

The Court has already provided the Defense with two opportunities to supplement its disclosures with respect to Dr. Bartu's testimony. *See* Docket Nos. 287, 304. At each juncture, the Court warned that the Defense bears the risk of having this evidence excluded if it fails to satisfy its disclosure obligations. *Id.* That risk only grows as trial approaches. With this principle in mind, the Court exercises its discretion to afford the Defense with a *third* opportunity to supplement its disclosure to provide a basis for Dr. Bartu's opinions on this topic. The Defense shall provide a

///

///

///

further disclosure as to the bases of this opinion and Dr. Bartu's qualifications to do so. The specificity must be sufficient to inform a *Daubert* analysis. The disclosure shall be filed Monday, July 18. Any objection to be filed by July 19.

This order disposes of Docket Nos. 310-12, and 314-15.

**IT IS SO ORDERED**.

Dated: July 15, 2022

_____
EDWARD M. CHEN
United States District Judge