JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
JEROME MATTHEWS
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Angela_Chuang@fd.org


Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD ABOUAMMO,<br><br>Defendant. | **Case No.:** CR 19–621 EMC<br><br>**DEFENDANT ABOUAMMO'S MOTION FOR LEAVE TO INTRODUCE STATEMENT OF UNAVAILABLE WITNESS ANA CARMEN NEBOISA**<br><br>**Court:**          Courtroom 5, 17th  Floor<br>**Hearing Date:**   July 29, 2022<br>**Hearing Time:**   8:00 a.m. |

TO:    UNITED STATES OF AMERICA, PLAINTIFF; STEPHANIE HINDS, UNITED STATES ATTORNEY; COLIN SAMPSON AND ERIC CHENG, ASSISTANT UNITED STATES ATTORNEYS; AND CHRISTINE BONOMO, TRIAL ATTORNEY, NATIONAL SECURITY DIVISION:

PLEASE TAKE NOTICE that on July 29, 2022, or as soon thereafter as counsel may be heard, Defendant Ahmad Abouammo, by and through undersigned counsel, will move the Court for leave to introduce the statement of unavailable witness Ana Carmen Neboisa. This motion is based upon the United States Constitution, the Federal Rules or Evidence, the attached memorandum of points and authorities, all other applicable statutes and case law, and any further authority and evidence as may

be adduced at the hearing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Ahmad Abouammo hereby moves for leave to introduce exculpatory statements made by a prosecution witness who has been made unavailable by the government. The government planned to call Ana Carmen Nebiosa to testify on Monday, July 25, 2022. On July 24, 2022, Ms. Nebiosa was interviewed by the government in preparation for that testimony and made a series of material exculpatory statements. On the morning of July 25, 2022, rather than call Ms. Nebiosa to the stand, the government informed the Court and counsel that Ms. Nebiosa had a cough and that it will call her at a later time.

At 7:47 p.m. on Monday, July 25, the government disclosed Ms. Neboisa's statements to the defense. The next day, the defense tried unsuccessfully to get in touch with Ms. Neboisa to serve her with a subpoena. It was only on Wednesday, July 27, that the government informed the defense that it will no longer call Ms. Neboisa, that it had unilaterally released her from her subpoena, and she had returned home to Washington, DC. The government did not seek Mr. Abouammo's consent to release her from the subpoena, which he certainly would not have provided in light of the material exculpatory evidence. Given this, Mr. Abouammo is entitled to introduce her statement pursuant to Federal Rules of Evidence 804(b)(6), 807, and the Fifth and Sixth Amendment rights to present a defense and compulsory process.

**ARGUMENT**

I.    **After learning that Ms. Neboisa would testify favorably to the defense, the government unilaterally released her from the trial subpoena and allowed her to leave the district without notifying the defense or the Court.**

Ms. Neboisa is the Vice President of the United States–Saudi Business Council, for which she has worked since late 2005. *See* Declaration of Angela Chuang, Ex. A (FBI 302 report of June 30, 2022, interview). Through the Council, she arranged for a one-hour visit at Twitter in June 2014. *Id.* The Court has heard testimony during trial of the importance of this visit to the government's case against Mr. Abouammo.

As far as the defense is aware, the government first interviewed Ms. Neboisa on June 30, 2022. The FBI 302 of that interview was disclosed to the defense a week later, on July 13th, 2022. During

that first interview, Ms. Neboisa provided information about the Council and her work there; the Prince Salman Youth Center; MISK; and the June 2014-visit at Twitter by a delegation of the Council. *See id.*

The government noticed Ms. Neboisa as a witness for Monday, July 25, 2022. Chuang Dec. ¶ 3. On that day, the government informed the Court that Ms. Neboisa would not testify as scheduled ostensibly because Ms. Neboisa had a cough. *Id.* The government did *not* say that she tested positive for COVID-19 despite the Court's direct questions on the matter. *Id.* The government suggested that Ms. Neboisa would testify at a future date. *Id.*

On Monday, July 25th at 7:47pm., the government disclosed for the first time to the defense that it had interviewed her on July 24, 2022, and attached the FBI 302 for that interview. *Id.* ¶ 4. Unlike her previous interview, this time, Ms. Neboisa also told the prosecution team that, due to the Council's cooperation with MISK, she personally received gifts from Mr. Binasaker, including several bracelets, a purse, a pearl necklace, a "black leather Movato watch" (presumably, a Movado watch), and stud earrings, totaling "approximately several thousand dollars." Additionally, she stated that she received a bonus of $9,985 from MiSK for assisting with a forum and a gift of approximately $20,000 from Mr. Binasaker's account upon her U.S. naturalization in 2018. *See* Chuang Dec., Ex. B (FBI 302 report of June 30, 2022, interview).

Mr. Neboisa's statements about the valuable gifts she received from Mr. Binasaker – including a luxury watch and a significant amount of money – are materially exculpatory as they contradict the government's theory that Mr. Abouammo was given money and a watch by Mr. Binasaker in direct exchange for confidential information from Twitter. These statements tend to show that Mr. Binasaker gave cash bonuses, cash gifts, and valuable tangible gifts to people with whom he had a business relationship, with no quid pro quo necessary. Ms. Neboisa's statements on this topic would directly undercut the government's theory and argument that Mr. Binasaker's money transfers and gift of a watch to Mr. Abouammo came with "strings attached," as the government put it in its opening statement.

Upon receiving this exculpatory FBI 302, the defense immediately realized the importance of Ms. Neboisa's testimony and intended to elicit this information  on cross-examination or, if

necessary, to call her as a defense witness. *See* Declaration of Catherine Goulet ¶ 2. Accordingly, on Tuesday, July 26, defense investigator Catherine Goulet attempted to locate Ms. Neboisa to serve her with a defense trial subpoena. *Id.* ¶ 3. Ms. Goulet repeatedly called telephonically to the numbers available and left her voice messages. *Id*. Ms. Goulet also contacted over thirty hotels in close proximity to the courthouse in an effort to locate Ms. Neboisa. *Id*.

On Wednesday, July 26, 2022, undersigned counsel learned from the government that they would not be calling Ms. Neboisa as a witness and that they already sent her back to Washington, D.C. Chuang Dec. ¶ 6. The government was clearly aware of the import of Ms. Neboisa's testimony to the defense, but did not consult with Mr. Abouammo's defense team or the Court about releasing her from the subpoena, as has been the practice with every other witness at trial; the government instead unilaterally made the decision that she go back to Washington, DC., without informing the defense or the Court.

Since the government stated that Ms. Neboisa had returned home to Washington, D.C., the defense has made multiple efforts to serve her with a subpoena at her residence on July 27 and July 28, but Ms. Neboisa did not answer the door. *See* Goulet Dec. ¶¶ 4. 5. She has also continued to ignore calls and voice messages left by the defense. On July 28, 2022, defense counsel emailed the government asking that they make Ms. Neboisa available to testify early next week and requesting production of all communications between Ms. Neboisa and the government, or between government employees, pertaining to Ms. Neboisa's travel to San Francisco for trial and subsequent return to D.C. *See* Chuang Dec. Ex. C (7/28/22 email). As of the filing of this motion, the government has not responded.

## II.   Mr. Abouammo seeks to offer Ms. Neboisa's statements against the government, who at the least acquiesced in wrongfully causing her unavailability.

Although hearsay evidence is generally inadmissible, Fed. R. Evid. 802, Rule 804 provides for certain exceptions from this rule when the declarant is unavailable as a witness. A witness is unavailable under Fed. R. Evid. 804, *inter alia*, if they are "absent from the trial . . . and the statement's proponent has not been able, by process or other reasonable means to procure . . . declarant's attendance." Fed. R. Evid. 804(a)(5)(A). Mere absence from the hearing or trial alone is

1  not sufficient to find a witness unavailable for the purposes of Fed. R. Evid. 804. *Barber v. Page*, 390

2  U.S. 719, 723 (1968). Rather it is the combination of absence and the inability to procure attendance

3  through reasonable means. *Id.*; *see also United States v. Pena-Gutierrez*, 222 F.3d 1080, 1088 (9th

4  Cir. 2000) (finding that a deported witness was not unavailable because the government made no

5  attempt to contact him despite having his contact information and address). The reasonable means to

6  procure must be "genuine and bona fide." *United States v. Yida*, 498 F.3d 945, 952 (9th Cir. 2007)

7  (internal citations omitted).

8       As explained above, as soon as the defense learned of Ms. Neboisa's exculpatory statements on

9  the evening of Monday, July 25, 2022, the defense made sustained efforts to secure her presence,

10  including by making repeated phone calls and leaving repeated voice messages; and multiple efforts

11  to serve the subpoena. These efforts continue at the time of this motion. It is indisputable that, given

12  the strong motivation for Mr. Abouammo's desire to have her testify in his defense and the quantity

13  and quality of these efforts, the defense has been unable to obtain her presence by process or other

14  reasonable means.

15       Because Ms. Neboisa is unavailable, her statements are admissible against the government if

16  the government "wrongfully caused –or acquiesced in wrongfully causing—the declarant's

17  unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). Mr. Abouammo

18  bears the burden on this matter by a preponderance of the evidence. *United States v. Johnson*, 767

19  F.3d 815, 820–23 (9th Cir. 2014). The rule indisputably applies against the government, and does not

20  require a criminal act. Fed. R. Evid. 804, Advisory Committee Notes, 1997 Amendments; *see also*

21  *United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012) (videotape of transcript of

22  witness interview was admissible against the government under Rule 804(b)(6) where the

23  government deported the witness). Nor does the rule require that the other party's "sole purpose was

24  to silence the declarant." *United States v. Cazares*, 788 F.3d 956, 975 (9th Cir. 2015).

25       It is black-letter law that "[t]he responsibility of a public prosecutor differs from that of the

26  usual advocate; his duty is to seek justice, not merely to convict." *Young v. United States ex rel.*

27  *Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987). "The prosecuting attorney['s] ... obligation is to

28  govern impartially[,] ... to do justice[,] ... [and] ... to assure that the defendant has a fair and impartial

1    trial." *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005). Among the special responsibilities of the

2    prosecution – dictated by the Due Process Clause -- is to disclose exculpatory evidence to a defendant

3    in a timely manner, such that it is useful in his defense. *See United States v. Gordon*, 844 F.2d 1397,

4    1403 (9th Cir. 1985) (holding that a due process violation does not occur where disclosure is "made

5    at a time when disclosure would be of value to the accused"). One way for a defendant to "use"

6    exculpatory information is to call the declarant as a witness if the prosecution does not do so,

7    consistent with a defendant's Due Process right to present a complete defense and Sixth Amendment

8    "right to obtain the testimony of witnesses and compel their attendance." *Washington v. Texas*, 388

9    U.S. 14, 19 (1967).

10       The government's conduct here amounts to violations of these constitutional protections. As

11   noted above, Ms. Neboisa's statements about the very pricey gifts and cash she has received from Mr.

12   Binasaker are exculpatory and material to Mr. Abouammo's defense.

13       Critically, although the government learned of Mr. Neboisa's exculpatory statements on

14   Sunday, July 24, it did not disclose them until the evening of July 25 and did not inform the defense

15   that it would not call her as a witness until July 27, *after* it had released Ms. Neboisa from the trial

16   subpoena and she had taken a flight out of the Bay Area. While undersigned counsel has no way of

17   knowing whether the government instructed or encouraged Ms. Neboisa to leave the Bay Area or just

18   acquiesced in her doing so, it is of no matter, as acquiescence is sufficient under the rule. But it is

19   plain that the government only informed the defense that they would not call her as a witness after

20   they had already made her unavailable to the defense. Not only that, but these developments only

21   occurred following late-breaking revelations of exculpatory information that the government must

22   have known the defense would raise at trial.

23       In the related context of Due Process claims based on the government's deportation of defense-

24   favorable witnesses, the Ninth Circuit has emphasized that "[w]hen the government doesn't know

25   what a witness will say, it doesn't act in bad faith by deporting him." *Leal-Del Carmen*, 697 F.3d at

26   970.  "But if the government interviews the witness or has other information suggesting that he could

27   offer exculpatory evidence, the government may not deport him without first giving defense counsel

28   a chance to interview him." *Id*. In that context,

1

2      [o]nce the government is aware that an alien has potentially exculpatory
       evidence, it must treat that person as a material witness and give defense
3      counsel the opportunity to interview him and make a reasoned
       determination whether to seek his retention pending trial. This means the
4      witness may not be deported before defense counsel has been retained or
       appointed and has had a fair opportunity to interview him. If defense
5      counsel advises the government that the witness may be useful to the
       defense, he may not be deported until defense counsel indicates he is no
6      longer needed. If the government wants to deport the witness
       notwithstanding defense counsel's wishes, it must obtain permission from
7      the district court on a showing of good cause, which defense counsel must
       have the opportunity to oppose; it must also afford defense counsel the
8      opportunity to cross-examine the witness and preserve the testimony for
       trial.

9      *Id.*

10         Although Ms. Neboisa is not a non-citizen subject to deportation, she was uniquely within the

11     government's control, as she had flown into the San Francisco to testify pursuant to a government

12     subpoena. Yet the government intentionally relinquished their control after it learned on July 24 that

13     Ms. Neboisa would provide testimony helpful to the defense *and* before the defense had a chance to

14     contact her and serve her, thus making sure that she was unavailable to the defense. Under *Leal-Del*

15     *Carmen*'s logic, the government's actions here suggest bad faith. *Cf. United States v. Juan*, 704 F.3d

16     1137, 1141-42 (9th Cir. 2013) (holding that government interference in testimony of its own

17     witnesses can violate the Due Process Clause; "bullying a prosecution witness away from testimony

18     that could undermine the government's case is no less distortive of the judicial fact-finding process

19     than improperly meddling with the testimony of a defense witness.").

20         The government's wrongful conduct is even more apparent when one considers its ostensible

21     reason for its change of heart: Ms. Neboisa's cough. The FBI 302 notes that Mr. Neboisa had

22     contracted COVID-19 in June, but was feeling sick after flying into San Francisco on June 24. But,

23     despite the Court's direct question whether Ms. Neboisa was suffering Covid-19 symptoms, the

24     government studiously avoided saying yes, instead saying something to the effect that her symptom

25     was consistent with it. Of course, in this era of rapid testing, it strains credulity that the government

26     would not have asked Ms. Neboisa to submit to a Covid-19 test and would have not known whether

27     she tested positive or not -- had it actually wanted to know. Indeed, had Ms. Neboisa actually

28     suffered of COVID-19 (or even had symptoms consistent with Covid-19), she would not have been

1  allowed to board a plane and fly out of the Bay Area. *See* https://www.cdc.gov/coronavirus/2019-

2  ncov/travelers/index.html (last visited July 28, 2022). At its worst, it appears the government used

3  Ms. Neboisa's cough as a pretext to conceal its real reason for not calling her as a witness anymore:

4  the fact that she would have given testimony helpful to Mr. Abouammo. At its best, the government

5  acquiesced in making an exculpatory witness available. Either way, the remedy requires admission of

6  Ms. Nebiosa's statements by the defense.[1] *See* Fed. R. Evid. 804(a)(5)(A), (b)(6); *cf.* James F.

7  Flanagan, Forfeiture by Wrongdoing and Those Who Acquiesce in Witness Intimidation: A Reach

8  Exceeding Its Grasp and Other Problems with Federal Rule of Evidence 804(b)(6), 51 Drake L. Rev.

9  459, 541 (2003) ("Rule 804(b)(6) also has significant ramifications for Due Process violations under

10 *Webb v. Texas*, [409 U.S. 95 (1972)]. The Rule and the admission of the hearsay may become an

11 alternate remedy to a Due Process violation, and the remedy of a new trial now required by case law.

12 Despite possible prosecutorial intimidation, the trial may continue and pass constitutional muster if

13 the fundamental equivalent of live testimony is admitted through the absent witness's hearsay.");

14 *United States v. Capozzi*, 883 F.2d 608, 614 (8th Cir. 1989) (finding no prosecutorial misconduct in

15 naming potential defense witnesses as unindicted coconspirators shortly before trial in part because

16 the civil depositions of those witnesses were admitted in the defendant's trial). The government's

17 obfuscations before the Court, its belated disclosure of Ms. Neboisa's exculpatory statements, and its

18 failure to inform the defense that they released her from the trial subpoena until she had left the Bay

19 Area, all demonstrate that the government "wrongfully caused" her unavailability to Mr. Abouammo.

20 The Court should therefore hold that, under Rule 804(a)(5)(A), (b)(6), Mr. Abouammo may introduce

21 her July 24, 2022, statements at trial.

22 **III.   In the alternative, the Court should admit the statements under the residual exception, Rule 807, and general principles of Due Process.**

23

24     If, for whatever reason, the Court finds Rule 804(b)(6) in applicable, it should admit Ms.

25 Nebiosa's statements under the residual exception, Rule 807. The statement is supported by sufficient

---

[1] The defense would seek to elicit Ms. Neboisa's statements about receiving gifts and money from Binasaker and MiSK by cross-examining Agent Wu, who was present at the July 24, 2022 interview. Importantly, the government would not be permitted to introduce Ms. Neboisa's other statements for two reasons: (1) it would violate Mr. Abouammo's Confrontation Clause rights; and (2) a party who wrongfully caused a witness' unavailability cannot avail itself of hearsay exceptions under Rule 804.

guarantees of trustworthiness as it was made by a witness on the government's witness list to the government and is more probative than any other evidence that Mr. Abouammo can obtained through reasonable efforts. It would be a violation of Mr. Abouammo's constitutional rights to deny him the ability to present this material exculpatory evidence.

## CONCLUSION

For the reasons stated, the Court should grant Mr. Abouammo's motion.


Dated:      July 28, 2022                          Respectfully submitted,

                                                   JODI LINKER
                                                   Federal Public Defender
                                                   Northern District of California

                                                            /S
                                                   ANGELA CHUANG
                                                   JEROME MATTHEWS

                                                   Assistant Federal Public Defenders