JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
JEROME MATTHEWS
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Angela_Chuang@fd.org


Counsel for Defendant Abouammo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMAD ABOUAMMO,<br><br>Defendant. | **Case No.:** CR 19–621 EMC<br><br>**DEFENDANT ABOUAMMO'S STATEMENT REGARDING UNAVAILABLE WITNESS ANA CARMEN NEBOISA** |

Mr. Abouammo hereby submits the following statement regarding developments with Ana Carmen Neboisa that have occurred since the Court's ruling on Friday admitting her exculpatory statements through cross-examination of Agent Wu.

**I.    Despite assurances that they did not know Ms. Neboisa's whereabouts, the government has produced her after the Court's ruling allowing Mr. Abouammo to introduce her exculpatory statements through FBI Special Agent Letitia Wu.**

On Thursday, July 28, 2022, Ahmad Abouammo moved for leave to introduce exculpatory statements made by Ms. Ana Carmen Neboisa, a prosecution witness who has been made unavailable by the government after she provided them with exculpatory information. The next day, the

government reassured the Court that they have committed no wrongdoing: that they released Ms. Neboisa from the subpoena because of her symptoms, that she requested to be flown back to Washington, D.C. and the government made the travel arrangements for her (despite her purported symptoms), and that they did not know where she was. The Court granted Mr. Abouammo's motion.

On Saturday morning, about 24 hours after their representations to the Court and the Court's subsequent ruling, the government informed undersigned counsel that they contacted Ms. Neboisa and "let her know that her testimony is needed for the trial, per your request." Declaration of Angela Chuang ("Chuang Dec."), Ex. A at 3.The government represented that they "asked her to arrive in SF on Sunday to be available on Monday morning, if you wish to serve her with your subpoena then." *Id*. The government then asked that Mr. Abouammo inform them "when you'd plan to call her on the current schedule, as well as your expected exhibits for her." *Id*.

Later that morning, in response to undersigned counsel's email, the government confirmed that they "contacted her and facilitated her travel to assist with your request to make her available, after she appeared ill last week." *Id*. at 2. The government represented that they will not call Ms. Neboisa, but asked again the defense to confirm "that you'll be serving her with your subpoena." *Id*. In a third email, the government provided the flight and hotel information for Ms. Neboisa and asked that the defense "let us know when you've served her with the subpoena, and let us know when you plan to call her on the current schedule with your expected exhibits for her…." *Id*. at 1–2. The government's position is that the Court's ruling regarding Ms. Neboisa's exculpatory statements is moot.

## II. The Court should not reward the government's gamesmanship by allowing them to circumvent the Court's ruling regarding Ms. Neboisa.

The above-described new developments make clear two things. *One*, the government had indeed procured (not merely acquiesced in) Ms. Neboisa's unavailability and, despite their representations to the Court, had ready access to her. That Ms. Neboisa would be responsive to the government's outreach but avoid responding to or returning repeated phone calls from the defense to both her personal and work phone numbers and avoid her residence in Washington, D.C., strongly suggests that she was acting on instructions – or, at the very least, "permission" – from the government that she avoid the defense. The government made much of the severity of Ms. Neboisa's

1    illness during the hearing on Friday morning, but had no compunction about putting her on a plane

2    back to DC, and now has no compunction about putting her on yet another plane.

3           *Second*, these developments demonstrate that the government continues to engage in

4    gamesmanship. The Court is already aware of the government's repeated violations of discovery

5    deadlines, including turning over *Jenks* material *after* witnesses have testified, and turning over notes

6    from Mr. Abouammo's October 2018 interview *after* the trial commenced, and almost three years

7    after they first charged him. And the Court is of course aware of the government's making Ms.

8    Neboisa unavailable after she provided exculpatory information and turning over that information to

9    Mr. Abouammo more than 24 hours later, after the government informed the Court that they will call

10   her at a later time only to later reveal that they unilaterally released her from their subpoena and sent

11   her back to Washington, D.C.

12          Now that the Court has granted Mr. Abouammo's motion for leave to introduce Ms. Neboisa's

13   exculpatory statements, the government has suddenly produced Ms. Neboisa, and has strongly and

14   repeatedly suggested that the defense must call her. The sequence of events reveals the government's

15   relentless pursuit of tactical advantage. The government clearly had no intention of bringing Ms.

16   Neboisa back to the Bay Area prior to the Court's ruling on Friday, likely because it believed that it

17   would benefit from her unavailability in that her exculpatory statements would not be admitted at

18   trial. It is only after the Court ruled against the government that it sought to produce her again. In

19   other words, the government attempts to circumvent the Court's ruling—and even turn it to their

20   advantage—by attempting to force the defense to put Ms. Neboisa on the stand in lieu of introducing

21   her statements through Agent Wu. At that point, the government will presumably try to impeach Ms.

22   Neboisa on cross examination, therefore giving the jury the impression that Mr. Abouammo's own

23   witness and/or her exculpatory statements lack credibility, and attempt to introduce inculpatory

24   statements that it would not have been permitted to introduce under the Court's current ruling.

25          The Court should not allow such gamesmanship. Under its supervisory powers, the Court has

26   discretion to impose appropriate remedies for government misconduct in order to further three

27   objectives: (1) "to implement a remedy for the violation of a recognized statutory or constitutional

28   right," (2) "to preserve judicial integrity by ensuring that a conviction rests on appropriate

1   considerations validly before a jury," or (3) "to deter future illegal conduct." *United States v.*

2   *Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008).

3          When deciding whether to exercise its supervisory powers, courts must do it with "a view

4   toward balancing the interests involved," and seek to impose remedies "tailored to deter

5   objectionable prosecutorial conduct." *United States v. Hasting*, 461 U.S. 499, 506 (1983). Courts

6   have "various options," but may dismiss a case with prejudice "only if there is (1) flagrant

7   misbehavior and (2) substantial prejudice." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir.

8   2020) (internal quotations omitted). The Court "may dismiss the case without prejudice, which

9   requires dismissing the jury and forces the government to begin anew." *Id.* The court may also, *inter*

10  *alia*, "limit the witnesses or testimony offered by the government, or it may sanction the attorneys."

11  *Id.*; *see also id.* at 1044 (discussing "[o]ther remedies such as recalling witnesses or granting a

12  continuance").

13         Cognizant that the Court must approach the remedy of dismissal with caution, Mr. Abouammo

14  does not request, at this time, that the Court dismiss the charges. Instead, he requests that the Court

15  exercise its supervisory powers to sanction the government's gamesmanship and preserve judicial

16  integrity, as well as deter future misconduct, by a most straightforward remedy: maintaining its ruling

17  that Mr. Abouammo be allowed to introduce Ms. Neboisa's exculpatory statements through Agent

18  Wu. Any other approach would essentially reward the government for its misconduct and allow it to

19  proceed as if it had done nothing untoward.

20         For essentially these reasons, the Ninth Circuit has upheld a district court's dismissal of an

21  indictment with prejudice where the government argued that mistrial was an appropriate remedy for

22  its misconduct. *See Chapman*, 524 F.3d at 1987. The Ninth Circuit explained that "[t]he district court

23  considered and properly rejected that argument, because the mistrial remedy would advantage the

24  government, probably allowing it to salvage what the district court viewed as a poorly conducted

25  prosecution." *Id.* There were "myriad weaknesses in the government's presentation during the three-

26  week trial," such as "many of the witnesses presented by the government had primarily implicated

27  individuals other than the defendants, including two government witnesses who had already

28  testified…" *Id.*  And "one of the government's main witnesses, had been substantially impeached

with inconsistent prior statements on cross-examination." Therefore, "'[[i]f this case were to be retried, the government and its witness will not make that mistake again, and tha''s the advantage that the government gains by its actions here. It gets a chance to try out its case[,] identify[ ] any problem area[s], and then correct those problems in a retrial, and that's an advantage the government should not be permitted to enjoy.'" *Id.*; *see also Bundy*, 968 F.3d at 1042-44 (similar analysis).

Here, too, the government attempts to circumvent the Court's ruling regarding Ms. Neboisa and turn the situation they have created to their advantage by attempting to force the defense to put Ms. Neboisa on the stand, only to impeach her credibility or exculpatory statements on cross-examination and then argue that Mr. Abouammo's witness lacks credibility. In other words, faced with the Court's ruling, the government would like to dictate Mr. Abouammo's defense in order to undermine it, not only escaping responsibility for its misconduct but turning it to its advantage. The Court should follow the reasoning of *Chapman* and *Bundy* and not countenance the government's choice of remedy for its misconduct.

The Court should refuse to do so especially given the government's "failure to acknowledge and confess any wrongdoing during the course of this case." *Bundy*, 968 F.3d at 1044; *see also Chapman*, 524 F.3d at 1088 ("[W]e made clear that '[i]n determining the proper remedy [for prosecutorial misconduct], we must consider the government's willfulness in committing the misconduct and its willingness to own up to it.'"). Here, the government repeatedly assured the Court that they were aware of their constitutional and other discovery obligations and that they indeed have exceeded them, only to repeatedly violate those obligations. And it has disclaimed any wrongdoing connected with Ms. Neboisa's unavailability to the defense, only to confirm that she was uniquely in their control – and, indeed, made her available only to circumvent the Court's ruling and turn it to their advantage. Meanwhile, the Court and the defense have spent considerable time and resources addressing the government's actions—including days of investigative efforts on both the East and West Coasts—all of which detracted from the defense team's trial preparation for cross-examinations and for its defense.

Given the government's unwillingness to take responsibility for their conduct throughout this case and particularly in connection with Ms. Neboisa's situation, the Court should exercise its

supervisory powers and stay by its ruling regrading her. That ruling is the only appropriate remedy

for the government's misconduct in this case and the only ruling consistent with judicial efficiency.

## CONCLUSION

For the reasons stated, the Court should decline to reconsider its ruling that Mr. Abouammo

may introduce Ns. Neboisa's exculpatory statements at trial through Agent Wu.


Dated:      July 31, 2022                                    Respectfully submitted,

                                                             JODI LINKER
                                                             Federal Public Defender
                                                             Northern District of California


                                                             _____/S_____
                                                             ANGELA CHUANG
                                                             JEROME MATTHEWS
                                                             Assistant Federal Public Defenders

DEF'S STMT RE: NEBOISA
*ABOUAMMO*, CR 19–621 EMC

6