UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AHMAD ABOUAMMO,<br>Defendant. | Case No. 19-cr-00621-EMC-1<br><br>**ORDER MEMORIALIZING THE COURT'S RULING ON LOSS CALCULATION** |

On December 14, 2022, this Court sentenced Ahmad Abouammo ("Defendant") to forty-two (42) months incarceration for (1) violation of 18 U.S.C. § 951 (Count 1); (2) conspiracy to commit wire fraud and honest services fraud (Count 4); (3) wire fraud and honest services fraud (Count 11); (4) money laundering (Counts 20 and 21); and (5) falsification of records (Count 23). *See* Docket No. 422 ("Sentencing Minutes"). The Court, for reasons stated on the record, overruled Defendant's objection to using gain to defendant to measure loss under Sentencing Guideline 2B1.1. *See* U.S.S.G § 2B1.1. The Court enters this order to memorialize its ruling and analysis.

As a preliminary matter, the Court's sentence of 42 months is based on both offense groups set forth the in the PSR, including the second group which is comprised of Defendant's violation of 18 U.S.C. § 951 for which there is no guidelines range. The Court found the 42 month sentence was independently warranted under the 3553(a) factors on that violation. The sentence is also concurrently warranted based on the first group for which there is a guideline calculation. It is in the context of that calculation that the Court addressed the issue of loss calculation.

1    In general, a defendant convicted of wire fraud is subject to sentencing enhancements
2    based on the amount of loss the victim incurred.  *See* U.S.S.G § 2B1.1.  However, where the loss
3    to the victim cannot reasonably be calculated, U.S.S.G § 2B1.1, cmt. n.3(B) instructs Courts to
4    "use the gain that resulted from the offense as an alternative measure of loss[.]"  *Id.*  Here,
5    Defendant was convicted of wire fraud for turning over Twitter's data to the Kingdom of Saudi
6    Arabia ("KSA") in exchange for two payments of $100,000 and a watch valued at $42,000.  *See*
7    Docket No. 411 ¶ 45 (Presentence Investigation Report ("PSR")).  In its PSR, the United States
8    Probation Office explained that the loss Twitter incurred from the disclosure of its confidential
9    user data was not reasonably calculable, and therefore, pursuant to Note 3(B), calculated the
10   enhancement using the $242,000 gain to defendant.  *See id.*

11   Defendant objected to the use of gain to calculate loss, relying on the Supreme Court's
12   decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).  *See* Docket No. 413 at 5 (Opp.).  In *Kisor*, the
13   Supreme Court held that an agency interpretation of an agency rule is only authoritative if the rule
14   itself is genuinely ambiguous.  139 S. Ct at 2414.  According to Defendant, *Kisor* applies to the
15   Sentencing Guidelines, and it is inappropriate to follow Note 3(B) because loss is not genuinely
16   ambiguous.  *Id.*  The Court disagrees.

17   For decades, federal courts have looked to *Stinson v. United States*, 508 U.S. 36 (1993)
18   when determining whether commentary to the Sentencing Guidelines is binding.  *Stinson* instructs
19   courts to follow commentary "that interprets or explains a Guideline…unless it violates the
20   Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that
21   Guideline."  *Id.* at 38.  However, some circuits courts have determined that *Kisor* impliedly
22   overruled *Stinson*, and therefore apply *Kisor*'s "genuinely ambiguous" standard to the
23   commentary to the Sentencing Guidelines.  *See United States v. Lewis*, 963 F.3d 16 (1st Cir.
24   2020); *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc); *United States v. Riccardi*,
25   989 F.3d 476 (6th Cir. 2021); *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018).  Other
26   circuits have continued to follow *Stinson* despite the *Kisor* decision.  *United States v. Moses*, 23
27   F.4th 347 (4th Cir. 2022).

28   The Ninth Circuit has explicitly left open the question of whether *Kisor* overrules *Stinson*.

1  *See United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022).  "Instead, the Ninth Circuit continues

2  to apply the standard stated in *Stinson*…" *United States v. Suris*, No. 2:17-CR-00420-MCS-1,

3  2022 WL 17580678, at *3 (C.D. Cal. Sept. 6, 2022) (citing *Kirilyuk*, 29 F.4th at 1136).

4  "Accordingly, whether the term 'loss' is unambiguous is immaterial under the law of this circuit."

5  *Id.*  Under *Stinson*, the commentary permitting use of defendant's gain as a measure of loss is

6  valid; it is not inconsistent with or a plainly erroneous reading of the Guideline.  But even if the

7  more restrictive level of deference to the commentary under *Kisor* applied, the Court concludes

8  that the term "loss" in the Guideline is genuinely ambiguous in this context because the loss

9  Twitter incurred as a result of the compromise of its subscriber information is incalculable.

        The cases relied on by Defendant where the court refused to defer to a Guideline commentary are distinguishable.  In *Kirilyuk*, the commentary at issue mandated that "loss" for use of "[c]ounterfeit [c]redit [c]ards" be calculated at "not less than $500" per credit card used.  *See* U.S.S.G. § 2B1.1 cmt. n.3(F)(i).  "In other words, Note 3(F)(i) creates a rigid, fictional $500 minimum loss amount per credit card—no matter the facts of the particular case." *Kirilyuk*, 29 F.4th at 1137.  Importantly, the defendant's conduct in *Kirilyuk* resulted in an actual loss of $1.4 million.  *Id.*  Thus, the Ninth Circuit declined to follow Note 3(F)(i) because it determined "[n]o reasonable person would define the 'loss' from a stolen [credit] card as an automatic $500" when there existed a fact specific amount of $1.4 million.  *Id.*  This case is distinguishable from *Kirilyuk*.  Unlike the $1.4 million actual loss in *Kirilyuk*, here there is no readily calculable actual loss to accord the plain meaning of "loss."  Unlike the commentary which displaces a measurable loss which is expressly covered by the Guideline, here the commentary addresses a situation not expressly addressed (and is thus left ambiguous) by the Guideline.

        Defendant also relied on *United States v. Banks*, No. 19-3812, 2022 WL 17333797 (3d Cir. Nov. 30, 2022).  In *Banks*, the Third Circuit assessed whether a "District Court erroneously applied the intended-loss enhancement to [the defendant's] sentence when the victim suffered $0 in actual losses."  *Id.* at *5.  Importantly, only the commentary to the Guidelines explains whether a court should apply actual loss or intended loss—the Guidelines themselves only describe "loss." *Id.* at *6.  The Third Circuit, applying *Kisor*, looked to common dictionary definitions of loss and

3

determined that the commentary was not binding because the ordinary meaning of "loss" is "actual loss," and not "intended loss." *Id.* at *7. However, *Banks*, like *Kirilyuk*, is distinguishable because the victim's *actual* loss was readily calculable. Again, in contrast to *Banks*, the case at bar involves a situation where the loss is incalculable and thus involves an ambiguity left by the Guideline.

The Ninth Circuit has used gain to measure loss in the context of fraud. *See United States v. Anwar*, No. 20-30205, 2022 WL 777212 (9th Cir. Mar. 14, 2022) (loss calculation based on the total revenue received by the defendant's illegitimate companies); *United States v. Mirando*, No. 19-50384, 2021 WL 4947330 (9th Cir. Oct. 25, 2021) (loss calculation based on total revenue obtained from overbilling insurance companies). The use of gain to the defendant as a measure of loss or damages to the plaintiff is a familiar principle. It applies in the contexts of copyright and patent infringement. *See* 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover…any profits of the infringer that are attributable to the infringement…"); 35 U.S.C § 289 ("Whoever during the term of a patent for a design, without license of the owner, [] applies the patented design…to any article of manufacture for the purpose of sale…shall be liable to the owner to the extent of his total profit…"). It applies in the context of securities violations. *See*, *e.g.*, *Liu v. SEC*, S. Ct. 1936 (2020) (explaining that disgorgement, or the return of a defendant's ill-gotten gains, is a common tool for remedying loss incurred due to securities violations). The common law also permits recover based on defendant's wrongful gain. *See* Restatement (Third) of Restitution and Unjust Enrichment § 51(2) (2010) ("Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets."); Restatement (Third) Of Agency § 8.02, Comment *e*, (2006) ("The principal may recover any material benefit received by the agent through the agent's breach, the value of the benefit, or proceeds of the benefit retained by the agent.").

In this case, there is a logical reason to value the loss based on what Mr. Abouammo was paid by the KSA to obtain the private information. Value of property may be indicated by what a buyer is willing to pay for it. Here, it appears that the KSA was willing, in essence, to pay $242,000 to obtain Twitter's confidential user data.

Accordingly, because the actual loss in this case is not calculable, it was appropriate for the Court to follow Note 3(B) and determine loss by using Defendant's gain.

**IT IS SO ORDEREED.**

Dated: December 16, 2022

_____
EDWARD M. CHEN
United States District Judge