CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

COLIN SAMPSON (CABN 249784)
ERIC CHENG (CABN 274118)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7009
    Colin.Sampson@usdoj.gov
    Eric.Cheng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-621 EMC-1 |
| Plaintiff, | GOVERNMENT'S MEMORANDUM RE: RESENTENCING |
| v. | |
| AHMAD ABOUAMMO, | |
| Defendant. | |

## TABLE OF CONTENTS

I. PROCEDURAL POSTURE ..................................................................................................1

II. DISCUSSION OF THE PRESENTENCE INVESTIGATION REPORT ("PSIR")..........................................................................................................................2

    A. Conviction for 18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General ..........................................2

    B. Conspiracy to Commit Wire Fraud and Honest Services Fraud ........................2

III. CRIMINAL MONETARY PENALTIES.............................................................................5

    A. Restitution: The Government's Restitution Calculation....................................5

    B. Forfeiture.............................................................................................................6

IV. DISCUSSION REGARDING 18 U.S.C. § 3553(a) FACTORS .......................................6

    A. Nature and Circumstances of the Offense ..........................................................7

    B. Defendant's History and Characteristics ............................................................7

    C. General and Specific Deterrence – Respect for the Law ....................................8

    D. Supervised Release .............................................................................................9

V. CONCLUSION....................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

Cases

450 F.3d 352 (8th Cir. 2006) .................................................................................................. 10
Opinion,
    122 F.4th  (9th Cir. 2024) ..................................................................................................... 1
*United States v. Boler*,
    115 F.4th 316 (4th Cir. 2024) ............................................................................................... 5
*United States v. Pugh*,
    515 F.3d 1179 (11th Cir. 2008) ........................................................................................... 9
*United States v. Yafa*,
    136 F.4th 1194 (9th Cir. 2025) ............................................................................................ 5

Statutes

18 U.S.C. § 1349 ......................................................................................................................... 1
18 U.S.C. § 1519 ......................................................................................................................... 1
18 U.S.C. § 3553(a) ............................................................................................................ 4, 7, 8
18 U.S.C. § 3663A(a) ................................................................................................................. 6
18 U.S.C. § 3663A(c) ................................................................................................................. 6
18 U.S.C. § 951 ....................................................................................................................... 1, 2
18 U.S.C. § 1343 ......................................................................................................................... 6
U.S.C. § 3553(a)(1) ................................................................................................................. 8, 9

Rules

U.S.S.G. § 2B1.1 .................................................................................................................... 4, 6
U.S.S.G. § 2B1.1(b)(1) ............................................................................................................... 5
U.S.S.G. § 2B1.1(b)(2)(A)(i) ...................................................................................................... 3

## I. PROCEDURAL POSTURE

Defendant, Ahmad Abouammo ("Abouammo" or "Defendant"), was convicted by a federal jury on August 9, 2022 of seven criminal counts: Acting as an Agent of a Foreign Government Without Notice to the Attorney General (18 U.S.C. §§ 951 and 2, Count 1); Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud (18 U.S.C. § 1349, Count 4); Wire Fraud and Honest Services Wire Fraud (18 U.S.C. §§ 1343, 1346, and 2, Count 11); two counts of Money Laundering (18 U.S.C. § 1956(a)(2)(B)(i), Counts 20 and 21); and Falsification of Records to Obstruct Investigation (18 U.S.C. § 1519, Count 23). See Dkt. No. 391.[1] As shown at trial, Defendant's convictions are the result of his agreement to assist representatives of the Kingdom of Saudi Arabia ("KSA") and its Royal Family in accessing private information, including personal identifying information, of anonymous Twitter users critical of the KSA and its Royal Family.

At sentencing, the government requested a sentence of 87 months, a $30,000 fine, a forfeiture money judgment of $242,000, and three years of supervised release. The Court ultimately imposed a 42-month concurrent sentence "on each of Counts One, Four, Eleven, Twenty, Twenty-One, and Twenty-Three." Judgment, Dkt. No. 426, p. 2. The Court ordered the sentence as to the counts of conviction to be served concurrently, followed by a three-year period of supervised release, waived a fine and did not order restitution to Twitter. Dkt. No. 426. As of June 5, 2025, Defendant was no longer in the custody of the Bureau of Prisons.

Abouammo appealed, and the Ninth Circuit Court of Appeals ("Ninth Circuit") issued a published Opinion on December 4, 2024, affirming the trial convictions. See Opinion, 122 F.4th 172 (9th Cir. 2024). The Ninth Circuit simultaneously issued an unpublished Memorandum vacating the sentence and remanding the matter for the purpose of resentencing, finding the "relationship between Abouammo's profit and Twitter's loss . . . too tenuous to justify Abouammo's loss enhancement." Memorandum, Case No. 22-10348, Dkt. No. 46-1 (9th Cir. Dec. 4, 2024).

The Court is familiar with the detailed the factual background of this matter, and the government does not repeat them here. The government elects not to request modification of the fine or to seek more

---

[1] The counts here appear in the order returned by the Grand Jury in the Superseding Indictment, and were subsequently renumbered for trial. See Dkt. No. 53.

incarceration than Defendant has now served. However, for the reasons that follow, the government requests a resentencing to 42 months, three years of supervised release, and mandatory restitution to Twitter of $156,606.

## II. DISCUSSION OF THE PRESENTENCE INVESTIGATION REPORT ("PSIR")

### A. Conviction for 18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General

Defendant was convicted by the jury of acting in the United States as an agent of a foreign government without providing notice to the Attorney General, in violation of 18 U.S.C. § 951. The offense carries a maximum sentence of 10 years and is not referenced by any applicable Sentencing Guideline provision. The Ninth Circuit recently observed that, in this case, "it is possible that Abouammo's total imprisonment time will remain the same upon re-sentencing." Memorandum at p. 5. The Court previously entered a 42-month sentence for Count 1, and the government respectfully requests that the Court impose the same sentence, separate from the grouped fraud, money laundering, and obstruction conduct discussed below.

### B. Conspiracy to Commit Wire Fraud and Honest Services Fraud

The Court, at the December 2022 sentencing hearing, adopted Probation's calculation of a Total Offense Level of 27 points for the grouping of fraud, money laundering, and obstruction counts of conviction, which included a $242,000 loss calculation and enhancements for risk of bodily injury, sophisticated money laundering, and abuse of trust. Dkt. No. 422. This calculation resulted in a Sentencing Guidelines range of 70 to 87 months of imprisonment.

The United States Probation Office now calculates the Sentencing Guidelines in the Revised PSIR as Total Offense Level of 20, resulting in a guidelines range of 33 to 41 months of imprisonment. Revised PSIR p. 3. The government objects to the Revised PSIR's calculation for this grouping of counts as follows:

- The government respectfully disagrees with the PSIR's and the Court's prior exclusion of an enhancement for 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). The scheme Defendant joined involved accessing, monitoring, and conveying Twitter users' information of interest to the Kingdom of Saudi Arabia and the Saudi Royal Family, and Defendant

introduced Alzabarah to Binasaker to do the same. Indeed, Binasaker had a shopping list of eight dissidents on April 12, 2015 whose personal information KSA wanted, including @mujtahidd, as well as the accounts of Abdulrahman Al Sadhan and Omar Abdulaziz. Ex. 521T, p. 2. Defendant also received a dossier on @HSANATT from Binasaker, which he accessed in February 2015. Ex. 450T; Ex. 951. The two-level enhancement for the number of victims of the scheme to infiltrate Twitter should be applied here, bringing the Adjusted Offense Level to **27**. The government recognizes, however, that the Court did not agree with this enhancement at the prior sentencing, but did observe that Defendant "had an active hand in providing and facilitating a potential act that could have had serious consequences to the account holder" but was "singularly focused on one or two" accounts. <u>Sentencing Transcript</u>, Dkt. No. 439 (Dec. 14, 2022).

- The government objects to Probation now excluding the enhancement for a loss amount of more than $150,000 under § 2B1.1(b)(1)(F), as detailed below.

Probation's calculation therefore misses the enhancement for the amount of loss as properly calculated and the enhancement for the number of victims exceeding 10, resulting in a seven-point higher Total Offense level of 27 following application of the Zero-Point offender adjustment:

| Offense Level Computation | # | Calculation in PSIR |
|---|---|---|
| Base Offense Level, § 2B1.1(a)(1) | 7 | Probation Agrees |
| Loss Amount (more than $150,000) | +10 | *Government's Position* |
| Conscious or Reckless Risk of Death or Serious Injury, § 2B1.1(b)(16)(A) | +2 | Probation Agrees to Level 14 |
| More than 10 Victims, § 2B1.1(b)(2)(A)(i) | +2 | *Government's Position* |
| Sophisticated Money Laundering, § 2S1.1(b)(2)(B) | +2 | Probation Agrees |
| Sophisticated Means, § 2S1.1(b)(3) | +2 | Probation Agrees |
| Abuse of position of trust, § 3B1.3 | +2 | Probation Agrees |
| Obstruction of Justice, § 3C1.1 | +2 | Probation Agrees |
| Zero-Point Offender Reduction, § 4C1.1 | -2 | Probation Agrees |
| **Total Offense Level for Fraud Grouping** | **27** | |

At **Offense Level 27**, the applicable range for incarceration on the grouping of fraud, money laundering, and obstruction counts is the same as calculated at the prior sentencing—**70 to 87 months of imprisonment**. As explained below, there is no basis for a further departure or variance here.

Moreover, Defendant's conduct was not simply economic in nature, as it implicated the safety and privacy of users of a global social media platform from powerful foreign government officials.[2] Absent consideration of factors discussed in 18 U.S.C. § 3553(a), which the government separately addresses below, the Guidelines calculation submitted by the government captures the scope of the fraudulent and obstructive conduct underlying Defendant's convictions. The sentence of no less than time served of 42 months previously imposed by the Court represents a downward departure from the Guidelines range calculated by the government above.

### 1. Loss and Gain Calculations Post-*Yafa*

The government asserts that the Guidelines level applied at the December 2022 sentencing hearing (less a two point reduction for the Zero-Point offender adjustment) remains appropriate based upon either the Court's prior gain calculation or by a loss figure provided below, either of which is supported by Ninth Circuit precedent and either of which result in the same Guideline loss calculation.

### (i) Prior Gain Calculation

Subsequent to the unpublished Memorandum issued by the Ninth Circuit in this case, the Ninth Circuit issued a published opinion in *United States v. Yafa*, 136 F.4th 1194, 1198 (9th Cir. 2025), holding that loss is generally ambiguous . There, the Ninth Circuit held that the Guidelines' requirement in § 1B1.3 that the Court consider "all harm that resulted from" the criminal activity "at the very least, strongly suggests that 'loss' is not limited to only that loss which is identifiable and clearly calculable." *Yafa*, 136 F.4th at 1198, *citing United States v. Boler*, 115 F.4th 316, 325–26 (4th Cir. 2024). The Ninth Circuit then held that "gain is a reasonable interpretation of 'loss.'" *Id.* (citing U.S.S.G. § 2B1.1, App. Note 3(B), "The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.") The Ninth Circuit's directive by Memorandum in this case appears to potentially conflict with its subsequent holding in *Yafa*, which

---

[2] Although the government does not request an upward variance here, the Guidelines provide for consideration of a variance where "[a] primary objective of the offense was an aggravating, non-monetary objective;" and where "[t]he offense caused or risked substantial non-monetary harm.[. . .f]or example, the offense caused physical harm, psychological harm, or severe emotional trauma, or resulted in a substantial invasion of a privacy interest." U.S.S.G. § 2B1.1, App. N. 21(A)(i) and (ii).

GOVERNMENT'S RESENTENCING MEMO.,
CR-19-00621 EMC-1                               4

would support the use of the $242,000 gain figure based on the amount Defendant's handler in the KSA was willing to and did pay for access to Twitter information of its dissidents.

As discussed at the December 2022 sentencing hearing, an identifiable and clearly calculable loss figure was not determined at the time, as such a figure would constitute potential lost business and user revenues and sunk costs of employee time spent investigating the fraud and instituting controls to prevent future misconduct. Moreover, the monetary losses to the Twitter users whose data was accessed by Defendant and codefendant Alzabarah – while undeniably significant – were also impossible to quantify despite recent work conducted by counsel at X.

### (ii) Subsequent Loss Figures from X Corp. f/k/a Twitter

Subsequent to the Memorandum, and prior to the holding in *Yafa*, the government consulted with victim X Corporation f/k/a Twitter and obtained a "conservative" estimate of losses resulting from Twitter's investigation by outside counsel and a forensic examiner, totaling **$156,606**. *See* Ex. A (May 20, 2025 Email from X Corp. Counsel to DOJ). This figure did not include internal resources at Twitter that spent time and effort working on the response and remediation after Alzabarah and Abouammo's conduct was uncovered, nor did it include nearly $700,00 in resultant civil litigation fees. *See id.* However, because this conservative loss figure would result in the same Sentencing Guidelines range ($150,000 to $250,000, resulting in +10 under U.S.S.G. § 2B1.1(b)(1)(F)) as under the prior gain calculation, the government respectfully requests that the Court find the loss figure to be **$156,606** as provided by provided by counsel for X Corp., rather than apply the gain calculation from the prior sentencing.

## III. CRIMINAL MONETARY PENALTIES

### A. Restitution: The Government's Restitution Calculation

Defendant was found guilty of violating, among other offenses, 18 U.S.C. §§ 1343, 1346, and 1349, which are covered by the Mandatory Victim Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A(b)(1)(B)(ii). This statute provides that restitution is mandatory when a defendant has been convicted of certain enumerated offenses. 18 U.S.C. § 3663A(a). The enumerated offenses include any Title 18 offense against property, including any offense committed by fraud or deceit. 18 U.S.C. § 3663A(c). Defendant's conspiracy, wire, and honest services fraud convictions are Title 18 offenses

against property, and were committed by fraud or deceit.

Subsequent to the Ninth Circuit's Memorandum, the government has been in contact with X Corp. new internal counsel, regarding quantifying reasonably foreseeable pecuniary losses to Twitter resulting from the Defendants' offenses, but which did not involve "costs incurred by victims primarily to aid the government in . . . the prosecution and criminal investigation of an offense." *See* U.S.S.G. 2B1.1, App. N. 3(D)(ii). As discussed above, counsel for X Corp. reported using a "relatively conservative" approach that identified at least **$156,606** in spending on outside counsel and a forensic examiner in responding to the Defendants' scheme. *See* Ex. A.

At Defendant's sentencing, the Court declined to order restitution, perhaps because the loss was measured by the gain to the Defendant from his KSA handler. However, the government has since received a loss figure from Twitter's internal investigation of Alzabarah's and Abouammo's access of Twitter user data while they were employed there, which excludes costs incurred from the government's subpoenas and warrants as well as litigation costs from related civil actions. The government respectfully asks the Court to revisit its prior decision not to order restitution to victim X under the MVRA.

### B. Forfeiture

The Court's Forfeiture Money Judgment of $242,000, representing the two $100,000 deposits to Defendant's father's Bank Audi account and Defendant's claimed value of the Hublot Unico King Gold Ceramic watch given to him by Bader Binasaker on December 5, 2014, remains appropriate and should not be disturbed at resentencing. *See* Dkt. No. 426.

### IV. DISCUSSION REGARDING 18 U.S.C. § 3553(a) FACTORS

The Court should impose a sentence of no less than time served (42 months), which is below the applicable Guideline Range under the correctly-calculated Adjusted Offense Level of 27 (and within the range of the Revised PSIR when corrected for the missing "sophisticated means" enhancement previously found by this Court and the Amended PSR for an Offense Level of 22). Section 3553(a)'s factors also strongly support the government's recommended sentence of no less than time served because Defendant accepted hundreds of thousands of dollars in bribes while he accessed users' data for the benefit of KSA and its Royal Family at the cost of Twitter's users' safety and privacy. Title 18,

U.S.C. § 3553(a)(1), requires that "the nature and circumstances of the offense" be considered in sentencing. As detailed below, the nature and circumstances of Defendant's offenses demonstrate that his scheme to defraud his employer was not out of financial distress but purely for enrichment and to ingratiate himself with powerful foreign officials. A sentence of no less than time served (42 months) reaffirms the seriousness of the offense while taking into account the sentence Defendant has served to date and his lack of prior criminal history.

District courts are to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the Sentencing Reform Act. *See* 18 U.S.C. § 3553(a). In so doing, the courts are to consider, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* While all of the Section 3553(a) factors should be considered, the government highlights a few that are particularly important in this case.

### A. Nature and Circumstances of the Offense

Title 18, U.S.C. § 3553(a)(1), requires that "the nature and circumstances of the offense" be considered in sentencing. As discussed at length above, the offenses at issue here involve the Defendant's violation of his duty of loyalty to Twitter by accessing private user data at the request of a foreign government. The conduct poses a severe risk of harm to the users and many of them were targeted for their speech and dissent, and the value of the information is reflected in the amounts paid to the Defendant, which far exceeded his salary at the time. The sentence imposed upon Defendant should reflect the seriousness of the crime as reflected through loss to Twitter, gain to Defendant, and the potential harm that could be caused when the users' information was not protected.

### B. Defendant's History and Characteristics

Title 18, U.S.C. § 3553(a)(1), requires that "the nature and circumstances of the offense" be considered in sentencing. Defendant reported no major childhood trauma or other family characteristics which would have impacted his decision to accept the bribes in exchange for defrauding his employer, which paid him a $180,000 per year including stock options. PSIR § 84. He has strong family support. Moreover, Defendant is a naturalized United States citizen and the Kingdom of Saudi Arabia did not otherwise appear to have any particular power over him or any family members that might affect his decision to join in the scheme. In other words, Defendant did it for the money. However, the government's recommendation, despite several aggravating factors supported in the record that might call for a more significant sentence, reflects Defendant's lack of other criminal history and his support for his immediate family (including care for his sister and her child) during the period of the offenses.

### C.     General and Specific Deterrence – Respect for the Law

Section 3553(a) requires that the sentence imposed provide "adequate deterrence." *Id.* The government's recommendation remains appropriate for both general and specific deterrence. General deterrence is one of the prescribed goals of every sentencing, *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008), but it occupies an especially important role in sentencing for fraud offenses, because prosecutions of high-level executives are rare and are afforded great attention by others in positions of power. Nowhere is that need higher than in Silicon Valley, where the opportunity to abuse power with the promise of assistance to startup companies is a constant, temptation for executives looking to line their pockets with kickbacks and bribes. The government's recommendation would be sufficient, but not more than necessary to accomplish this goal. Industry executives and venture capitalists, who pay attention to cases like these, are likely to have an appropriate respect for the law with such a sentence, and would help underscore that the potential losses in such cases would far outweigh the gains.

A further departure or variance for Defendant's crimes could send the wrong public message and certainly would not fulfill the need for deterrence. Instead, it would foster a belief that certain white-collar crimes are not serious, and when caught are not punished like other crimes. The admonition of the Court of Appeals in *United States v. Ture* applies aptly: "the goal of deterrence rings hollow if a prison sentence is not imposed in this case." 450 F.3d 352, 358 (8th Cir. 2006). Along those lines, there is a

GOVERNMENT'S RESENTENCING MEMO.,
CR-19-00621 EMC-1                           8

public perception in cases like this of defendants being charged and getting away with probation or a sentence significantly below the Guidelines, while other defendants in different sorts of cases are not so fortunate. That should not be the case here, especially in a case with such serious and pervasive criminal activity. This case is not unusual in any way that warrants a downward departure from the Guidelines.

In addition to serving as adequate general deterrence, a meaningful sentence of imprisonment also affords sufficient specific deterrence.  Without a significant sentence of imprisonment, Defendant may make a calculated decision in the future that the risks of being caught again by his employer or by law enforcement and punished are outweighed by the substantial financial rewards of cheating. Accordingly, a Guidelines sentence is warranted to adequately deter Defendant from future criminal conduct, which appears particularly important given that – at least to date – Defendant has not acknowledged any wrongdoing here.

    **D.**    **Supervised Release**

The Court should reimpose the three-year period of supervised release entered at the 2022 sentencing.  Defendant was released from a halfway house earlier this month, and therefore there is insufficient information to evaluate his performance on supervised release.  The convictions are serious ones involving a foreign power.  As a result, Defendant's sentence should include the same three-year period of supervised release as before for deterrence and rehabilitation.

**V.**    **CONCLUSION**

By accepting undisclosed bribes from the head of the private office of KSA's de facto ruler to access, monitor, and convey information about dissidents of interest to the Saudi Royal Family and the government they controlled, Defendant exposed vulnerable users exercising speech on a global social media platform.  Resentencing Defendant to no less than time served (42 months) followed by three years of supervised release, forfeiture of $242,000, and restitution of $156,606, is sufficient but no greater than necessary to address the conduct at the core of this case: the offering and taking bribes to sell out the private information about a company's users to foreign government officials interested in quelling dissident views.

///

GOVERNMENT'S RESENTENCING MEMO.,
CR-19-00621 EMC-1         9

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | CRAIG H. MISSAKIAN<br>United States Attorney |
| Dated: June 16, 2025. | */s/ Colin Sampson*<br>COLIN SAMPSON<br>ERIC CHENG<br>Assistant United States Attorneys |